## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

INTERNATIONAL ALLIANCE OF
THEATER STAGE EMPLOYEES
LOCAL 927,

*Plaintiff,*

v.

MATTHEW MASHBURN, in his
official capacity as member of the
Georgia State Election Board, *et al.*,

*Defendants.*

Civil Action No.:
1:23-CV-04929-AT

## STATE DEFENDANTS' BRIEF IN SUPPORT OF
## MOTION TO DISMISS COMPLAINT

# TABLE OF CONTENTS

Introduction ........................................................................................................ 1

Argument ............................................................................................................ 3

I.      Plaintiff Lacks Standing .......................................................................... 3

      A.     Plaintiff Fails to Adequately Allege an Injury. ............................ 4

      B.     Plaintiff's Allegations do not Demonstrate Traceability or
            Redressability. ............................................................................. 11

II.     Plaintiff Has No Right To Sue. .............................................................. 14

Conclusion ....................................................................................................... 19

# TABLE OF AUTHORITIES

## Cases

*Alexander v. Sandoval,*
    532 U.S. 275 (2001) ................................................................... 15, 16, 17

*Allen v. Milligan,*
    599 U.S. 1 (2023) ................................................................................. 18

*Allen v. State Bd. of Elections,*
    393 U.S. 544 (1969) ............................................................................ 17

*Alpha Phi Alpha Fraternity, Inc. v. Raffensperger,*
    No. 1:21-cv-05337-SCJ, 2022 WL 20690354 (N.D. Ga. Jan. 28, 2022) ........ 18

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment,*
    586 F. Supp. 3d 893 (E.D. Ark. 2023) ............................................. 19

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment,*
    86 F.4th 1204 (8th Cir. 2023) ..................................................... 16, 18

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................. 4

*Brnovich v. Democratic Nat'l Comm.,*
    141 S. Ct. 2321 (2021) ................................................................... 6, 17

*Bush v. Gore,*
    531 U.S. 98 (2000) .............................................................................. 14

*City of S. Mia. v. Governor of Fla.,*
    65 F.4th 631 (11th Cir. 2023) .................................................... *passim*

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ............................................................ 4

*Egbert v. Boule,*
  596 U.S. 482 (2022) .......................................................... 18

*Fla. State Conf. of NAACP v. Browning,*
  522 F.3d 1153 (11th Cir. 2008) ................................... 3, 5

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,*
  528 U.S. 167 (2000) ............................................................ 5

*Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty.*
  *Bd. of Registration & Elections,*
  36 F.4th 1100 (11th Cir. 2022) .................................... 11

*Ga. Republican Party, Inc. v. Sec'y of State for Ga.,*
  No. 20-14741-RR, 2020 WL 7488181 (11th Cir. Dec. 21, 2020) ................. 12

*Ga. Shift v. Gwinnett County,*
  No. 1:19-cv-01135-AT, 2020 WL 864938 (N.D. Ga. Feb. 12, 2020) ............. 11

*Ga. State Conf. of NAACP v. Georgia,*
  No. 1:21-cv-5338-ELB-SCJ-SDG, 2022 WL 18780945
  (N.D. Ga. Sept. 26, 2022) .............................................. 18

*Gonzaga Univ. v. Doe,*
  536 U.S. 273 (2002) .......................................................... 18

*In re Georgia Senate Bill 202,*
  No. 1:21-mi-55555-JPB, 2023 WL 5334582
  (N.D. Ga. Aug. 18, 2023) ................................................ 13

*In re Wild,*
  994 F.3d 1244 (11th Cir. 2021) .................................... 15

*Jacobson v. Fla. Sec'y of State,*
  974 F.3d 1236 (11th Cir. 2020) .......................... 12, 13, 14

*Knox v. Serv. Emps. Int'l Union,*
  567 U.S. 298 (2012) ............................................................ 5

*McDonald v. Bd. of Election Comm'rs of Chi.,*
  394 U.S. 802 (1969) ............................................................ 6

*McDonald v. So. Farm Bureau Life Ins. Co.,*
  291 F.3d 718 (11th Cir. 2002) ........................... 14, 15, 16

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*
  453 U.S. 1 (1981) ............................................................ 19

*Morse v. Republican Party of Va.*,
   517 U.S. 186 (1996) ........................................................................ 17

*Muransky v. Godiva Chocolatier, Inc.*,
   979 F.3d 917 (11th Cir. 2020) .......................................... 3, 4, 8, 10

*New Ga. Project v. Raffensperger*,
   976 F.3d 1278 (11th Cir. 2020) ........................................................ 6

*Ohio Coal. for Homeless & Serv. Emps. Int'l Union v. Blackwell*,
   467 F.3d 999 (6th Cir. 2006) ............................................................ 5

*Prigmore v. Renfro*,
   356 F. Supp. 427 (N.D. Ala. 1972) .................................................. 6

*Raines v. Byrd*,
   521 U.S. 811 (1997) ........................................................................ 3

*Shelby Cnty. v. Holder*,
   570 U.S. 529 (2013) ...................................................................... 17

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ..................................................................... 3, 4

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017) ...................................................................... 17

**Statutes**

42 U.S.C. § 1983 .............................................................. 2, 18, 19

52 U.S.C. § 10308 .................................................................... 16

52 U.S.C. § 10502 ........................................................... 9, 14, 15

O.C.G.A. § 21-2-381 ............................................................ 2, 7, 9

O.C.G.A. § 21-2-383 .................................................................... 7

O.C.G.A. § 21-2-384 ............................................................... 11, 12

O.C.G.A. § 21-2-385 ................................................................. 7, 9

O.C.G.A. § 21-2-385.1 ................................................................. 7

O.C.G.A. § 21-2-386 ................................................................... 12

**Regulations**

Ga. Comp. R. & Regs. 183-1-12-.01 ................................................ 7

Ga. Comp. R. & Regs. 183-1-14-.02 ................................................ 7

**Rules**

Fed. R. Civ. P. 12 ..................................................................... 3

**Other Authorities**

Ga. Sec'y of State, *Election List, Election Night Reporting* ............................ 8

Ga. Sec'y of State, *Georgians Embrace Early Voting; Here's
    What You Need to Know* (Oct. 18, 2022) ........................................ 7

Nat'l Conf. of State Legislatures, *Table 5: Applying for an Absentee
    Ballot, Including Third-Party Registration Drives*, Nat'l Conf. of
    State Legislatures (July 12, 2022) ............................................ 14

Off. of Inspector Gen., U.S. Postal Serv., *No. 20-225-R20, Processing
    Readiness of Election and Political Mail During the 2020
    General Elections* 2(2020) ..................................................... 10

## INTRODUCTION

Plaintiff, the International Alliance of Theater Stage Employees Local 927, asks this Court to invalidate the deadline for returning absentee-ballot applications that the General Assembly established in Georgia's recent omnibus election law—Senate Bill 202 ("SB 202").  But Plaintiff's sole claim against State Defendants should be dismissed because Plaintiff has neither Article III standing nor a private right of action.

Through SB 202, the General Assembly expanded voter access and increased the efficiency and integrity of Georgia's elections.  Indeed, elections in Georgia conducted after SB 202's enactment have seen continued improvement in voter experiences.

Those successes notwithstanding, Plaintiff seeks to eliminate SB 202's common-sense updates to the deadline for voters to return absentee-ballot applications.  Before SB 202, Georgia voters could submit applications for absentee ballots as late as four days before Election Day.  But that late deadline required counties to expend substantial resources processing applications and mailing absentee ballots that would never be voted—when those same limited resources could have been better used on other important election processes.

Through SB 202, the General Assembly remedied these significant concerns by requiring that voters wishing to submit an absentee ballot by mail

submit an application at least eleven days before Election Day.  *See* O.C.G.A. § 21-2-381(a)(1)(A).  In addition to better aligning limited resources with election priorities, this update brought Georgia into parity with many other states that have similar or even earlier deadlines for returning absentee-ballot applications.

Despite this sensible change, Plaintiff advances the novel and unsupported claim that the updated deadline violates the Voting Rights Act ("VRA") because, according to Plaintiff, the VRA requires Georgia to accept absentee-ballot applications in Presidential elections that are submitted seven days before Election Day.  Compl. ¶ 3 [Doc. 1].  But Plaintiff's claim should be dismissed for at least two reasons.  First, Plaintiff has not come close to satisfying its burden of establishing standing, but instead relies only on threadbare allegations of injury that are insufficient even at this stage.  And even if Plaintiff had shown an injury, that injury is not traceable to State Defendants, nor is it redressable by an order directed to State Defendants.  Second, even if Plaintiff had standing, the Court should still dismiss the complaint because Plaintiff has no private right of action under the VRA or 42 U.S.C. § 1983.

## ARGUMENT

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the Court should dismiss the complaint because of Plaintiff's lack of standing and because Plaintiff has no private right of action for the claim it brings.

## I.   Plaintiff Lacks Standing.

Because Plaintiff's allegations do not adequately establish standing, the Court must dismiss the complaint.   As the Supreme Court has explained, "Art[icle] III standing is built on a single basic idea—the idea of separation of powers." *Raines v. Byrd*, 521 U.S. 811, 820 (1997) (quotation marks and citation omitted).   And in this Circuit, "[t]he constitutionally minimum requirements for standing are three-fold." *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1159 (11th Cir. 2008).   Plaintiff "must have '(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).   As the Eleventh Circuit explains: "In plainer language, the plaintiff needs to show that the defendant harmed him, and that a court decision can either eliminate the harm or compensate for it." *Id.*   Here, Plaintiff lacks standing because it insufficiently alleged both injury and redressability by State Defendants.

## A.     Plaintiff Fails to Adequately Allege an Injury.

Under Eleventh Circuit caselaw, Plaintiff must establish a distinct injury that is "concrete, particularized, and actual or imminent, rather than conjectural or hypothetical*." Id.* at 925. For this, the Eleventh Circuit does not permit "[m]ere conclusory statements[.]" *Id.* at 924 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). And, although intangible harm can sometimes evidence concrete injury, "*fears* of hypothetical future harm" do not suffice. *Id.* at 926 (cleaned up and emphasis added). In fact, for claims based on possible future harms, the Eleventh Circuit requires plaintiffs to "prove that their threatened injuries are '*certainly* impending.'" *City of S. Mia. v. Governor of Fla.*, 65 F.4th 631, 638 (11th Cir. 2023) (emphasis added; citation omitted). Moreover, where, as here, a plaintiff attempts to "establish an injury in fact by showing that a statutory violation created a 'risk of real harm,'" *Muransky*, 979 F.3d at 927 (quoting *Spokeo*, 578 U.S. at 341), the plaintiff must satisfy "a more demanding standard" by showing "'a *substantial* risk that the harm will occur,'" *id.* (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 414 n.5 (2013)) (cleaned up and emphasis added). As demonstrated below, Plaintiff fails to satisfy these requirements.

1.     Plaintiff's standing allegations fail out of the gate because it does not claim that it will *itself* suffer any harm from SB 202's absentee-ballot

application deadline.[1]   Rather, Plaintiff relies exclusively on its members'
alleged harm.   *See* Compl. ¶ 5.   Accordingly, Plaintiff may only establish
standing by showing that "'its members would otherwise have standing to sue
in their own right[.]'"   *Browning*, 522 F.3d at 1160 (quoting *Friends of the
Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000)).   But
Plaintiff has not done so here.

2.   Plaintiff is a local union of backstage professionals, such as
lighting and sound technicians for television and stage productions.   Compl.
¶ 12.   But Plaintiff hardly makes any effort to explain how such professionals—
much less its own organization—are affected by a four-day difference in the
eleven-day deadline for submitting absentee-ballot applications, compared to
the seven-day deadline Plaintiff suggests federal law requires.   Instead,

---

[1] Even if Plaintiff had intended also to claim harm itself, Plaintiff would still
lack standing.   *See Browning*, 522 F.3d at 1160 (an organization has
associational standing when "members would otherwise have standing to sue
in their own right, the interests at stake are germane to the organization's
purpose, and neither the claim asserted nor the relief requested requires the
participation of individual members in the lawsuit" (quotation marks and
citation omitted)).   Plaintiff's purpose is "clearly ... not primarily related to
election or voters' rights issues."   *Ne. Ohio Coal. for Homeless & Serv. Emps.
Int'l Union v. Blackwell*, 467 F.3d 999, 1010 (6th Cir. 2006) (labor union of
service employees insufficiently alleged organizational purpose germane to
election law); *accord Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 320 (2012)
(efforts to encourage members to vote for pro-union policies and candidates are
not germane to union's function as a bargaining representative); *see also id.* at
323–24 (Sotomayor, J., concurring).   And Plaintiff's complaint does not include
any allegation that it is harmed by the challenged provision of SB 202.

Plaintiff relies only on the passing suggestion that its members perform jobs that "require[] them to frequently travel around and outside of Georgia, often on short notice." *Id.* ¶ 5. Without explaining why, Plaintiff then surmises that this travel *might* fall "during the period between Georgia's absentee-ballot application deadline and the [alleged] federally mandated seven-day period." *Id.* Such speculation will not do.

First, Plaintiff assumes all voters have a right to vote absentee. But that is not true. *Prigmore v. Renfro*, 356 F. Supp. 427, 432 (N.D. Ala. 1972), *aff'd*, 410 U.S. 919 (1973) ("The right to vote is unquestionably basic to a democracy, but the right to an absentee ballot is not."); *see also Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2339 (2021) (fact that when VRA was passed, States typically "allowed only narrow and tightly defined categories of voters to cast absentee ballots," was "relevant" to whether election law burdened right to vote); *McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807–08 (1969); *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1288 (11th Cir. 2020) (Lagoa, J., concurring). And there is no *individual* right to submit an absentee-ballot application seven days before Election Day. *See infra*, Part II.

Second, Plaintiff ignores that Georgia law defines absentee voting to include either by-mail or in-person advance voting. *See* O.C.G.A. §§ 21-2-

381(a)(1)(A), 21-2-385(c)-(d).[2]  And, because Georgia allows in-person absentee voting until the Friday before Election Day, *see* O.C.G.A. § 21-2-385(d)(1), any of Plaintiff's members may still vote absentee until four days before Election Day.

Thus, Plaintiff's failure to include any allegations about whether its members can still vote by other means—like voting during the three weeks of in-person absentee voting offered in Georgia—is fatal to the allegation that Plaintiff's members are harmed.

Third, even if the Court looks beyond that shortcoming, the alleged injury here is far too speculative. *City of S. Mia.*, 65 F.4th at 638 (no standing where members can "only speculate" (citation omitted)).  Indeed, after speculating that its members might need to travel on short notice, Plaintiff adds more speculation on top of that by suggesting that its members might not even know about their travel obligations until after SB 202's application deadline (or any other voting deadline) has passed.  Compl. ¶ 5.  Such conclusory allegations do not satisfy Plaintiff's burden to demonstrate

---

[2] *See also* O.C.G.A. § 21-2-385.1 (providing for "casting an absentee ballot in person at the registrar's office"); *id.* § 21-2-383 (discussing "casting absentee ballots in person"); Ga. Comp. R. & Regs. 183-1-12-.01 (discussing voting systems for "absentee-in-person voting"); *id.* 183-1-14-.02(1) (same); Ga. Sec'y of State, *Georgians Embrace Early Voting; Here's What You Need to Know* (Oct. 18, 2022), https://sos.ga.gov/news/georgians-embrace-early-voting-heres-what-you-need-know (discussing process for submitting applications for "In-Person Absentee Ballot[s]").

standing.  *Muransky*, 979 F.3d at 928 ("A conclusory statement that a statutory violation caused an injury is not enough, so neither is a conclusory statement that a statutory violation caused a risk of injury.").

These deficiencies are underscored by Plaintiff's failure to include any allegations that *any* member experienced such harm in an election since SB 202's enactment.  SB 202 was enacted on March 25, 2021.  Since then, the State has conducted multiple statewide elections and more than a dozen special elections.  Ga. Sec'y of State, *Election List*, *Election Night Reporting*, https://results.enr.clarityelections.com/GA/ (last visited Jan. 6, 2024).  If any of Plaintiff's members had unexpectedly been required to travel during that narrow window between eleven and seven days before Election Day, surely Plaintiff could have alleged as much in its complaint.  But Plaintiff's silence speaks volumes about the speculative nature of its allegations.  And, as the Eleventh Circuit confirms, such "highly speculative fear" is insufficient to establish standing.  *City of S. Mia.*, 65 F.4th at 637 (quotation marks and citation omitted).

Plaintiff's failure to find an injured member is not surprising, as Plaintiff's members likely vote through one of the many ways made available under Georgia law.  For instance, Plaintiff's members are no doubt aware that they work in a profession that may require travel on short notice.  And such voters may request an absentee ballot as early as 78 days before an election

8

with no reason required.  O.C.G.A. § 21-2-381(a)(1)(A).  Thus, Plaintiff's members likely avoid any risk of harm by using Georgia's robust no-excuse absentee-voting procedures.  Additionally, such members likely take advantage of Georgia's extensive in-person early absentee voting opportunities, which begin the fourth Monday immediately prior to and end the Friday before Election Day, including weekdays, the second and third Saturdays before an election, and the second and third Sundays, if the county chooses.  *Id.* § 21-2-385(d)(1).  It is likely *because* of these multiple ways for Plaintiff's members to vote that Plaintiff was unable to identify any injured member in its complaint.[3]

3.    Plaintiff's theory of harm is further undermined by its failure to give effect to the entire VRA provision on which it relies.  That portion of the VRA only applies where a voter has "returned such ballots to the appropriate election official of such State not later than the time of closing of the polls in such State on the day of such election."  52 U.S.C. § 10502(d).  If Plaintiff's members are suddenly called out of state shortly before Election Day, those members cannot reasonably expect to submit an absentee-ballot application,

---

[3] It is of no moment that Plaintiff relies on a provision of the VRA relating to Presidential elections, which have not occurred since SB 202's enactment. Rather, the eleven-day requirement has been in place in every election since SB 202's enactment.  If the timeline harmed Plaintiff's members as Plaintiff suggests, there would be examples to identify.

receive an absentee ballot in the mail, and vote and return that ballot by mail so that it is received by Election Day.  And Plaintiff does not include any allegation suggesting that its members could do so.

In short, accounting for time to mail the ballot,[4] Plaintiff cannot demonstrate that its members would actually be able to comply with the entire VRA provision on which it purports to rely.  Accordingly, Plaintiff's claim of injury is further undermined by this oversight.

Thus, Plaintiff cannot show any concrete harm to its members.  Rather, Plaintiff's theory of harm is built entirely on speculation, which does not suffice.  *See City of S. Mia.*, 65 F.4th at 638 ("Where a 'hypothetical future harm' is not 'certainly impending,' plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves.'" (quoting *Muransky*, 979 F.3d at 931)).  Plaintiff therefore fails to carry its burden of adequately alleging injury.

---

[4] The U.S. Postal Service confirms that an absentee ballot sent via "First-Class Mail only takes 2 to 5 days to be delivered, [and] the Postal Service recommends election offices send ballots to voters at least 15 days prior to an election."  Off. of Inspector Gen., U.S. Postal Serv., *No. 20-225-R20, Processing Readiness of Election and Political Mail During the 2020 General Elections* 2 (2020), https://www.uspsoig.gov/reports/audit-reports/processing-readiness-election-and-political-mail-during-2020-general.  This is in line with the approach the Georgia General Assembly took in SB 202, requiring applications to be received eleven days before an election to allow time for mailing.

## B.   Plaintiff's Allegations do not Demonstrate Traceability or Redressability.

Even if Plaintiff had sufficiently alleged an injury, Plaintiff has not alleged any facts demonstrating, as the Eleventh Circuit requires, that the injury is "fairly traceable to the challenged action of the defendant" and "likely … redressed by a favorable decision." *Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections*, 36 F.4th 1100, 1115–16 (11th Cir. 2022) (cleaned up) (considering traceability and redressability requirements together).

Plaintiff's allegation first falters because it is counties—not State Defendants—that process absentee-ballot applications.   O.C.G.A. § 21-2-384(a)(2).  Accordingly, if Plaintiff's members are harmed by not being able to submit absentee-ballot applications after SB 202's deadline, that harm is caused by the operations of county officials, not State Defendants.  *See Ga. Shift v. Gwinnett County*, No. 1:19-cv-01135-AT, 2020 WL 864938, at *5 (N.D. Ga. Feb. 12, 2020) (lack of redressability).  Thus, there is no relief the Court could order against State Defendants to redress any injuries faced by Plaintiff's members.

For instance, Plaintiff asks the Court to prevent State Defendants from refusing to accept absentee-ballot applications submitted after SB 202's eleven-day deadline but before the seven-day deadline allegedly imposed by

the VRA. But State Defendants do not accept (or refuse to accept) absentee-ballot applications. *See* O.C.G.A. § 21-2-384(a)(2); *Ga. Republican Party, Inc. v. Sec'y of State for Ga.*, No. 20-14741-RR, 2020 WL 7488181, at *2 (11th Cir. Dec. 21, 2020) (county officials process absentee ballots under prior statutory structure). And Plaintiff's alleged injuries are thus not traceable to State Defendants.

For the same reason, Plaintiff cannot establish redressability: If the Court were to issue the order sought by Plaintiff, it would have no effect. Rather, as the Eleventh Circuit confirms, where another party—such as county election officials—can continue to implement the challenged provisions, Plaintiff has not established redressability under Article III. *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020).

Georgia law is clear that county officials process absentee-ballot applications and absentee ballots. O.C.G.A. § 21-2-386. County registrars and absentee-ballot clerks receive applications for absentee ballots, determine the validity of the application, and mail ballots to voters. O.C.G.A. § 21-2-384(a)(2). Thus, Plaintiff's alleged injuries are neither traceable to State Defendants nor redressable by an injunction against these officials. *See City of S. Mia.*, 65 F.4th at 640. Plaintiff's claims against State Defendants should therefore be dismissed because Plaintiff "will allegedly be harmed in the same manner whether [State Defendants] are enjoined or not." *Id.* at 645.

12

In fact, another court in this District reached this same conclusion under very similar circumstances in addressing similar challenges to the timeline for absentee-ballot applications under SB 202. *In re Georgia Senate Bill 202*, No. 1:21-mi-55555-JPB, 2023 WL 5334582, at *6 (N.D. Ga. Aug. 18, 2023), *appeals docketed,* No. 23-13085 (11th Cir. Sept. 18, 2023) and No. 23-13245 (11th Cir. Oct. 3, 2023). In that case, when other plaintiffs challenged portions of SB 202 related to processing absentee-ballot applications, the Court concluded that they lacked standing for their claims against State Defendants because state election officials' "ability to ensure compliance with judicial orders and to inspect and audit absentee ballot envelopes does not render the rejection of absentee ballots traceable to ... State Defendants." *Id.* (citing *Jacobson*, 974 F.3d at 1254). So too here: Because the responsibility for accepting or rejecting absentee-ballot applications falls to the counties, there is no injury traceable to State Defendants, and there is no order the Court could issue against State Defendants to remedy Plaintiff's alleged harm. Rather, Plaintiff apparently only included State Defendants as named parties here in furtherance of a goal

to undermine SB 202.[5]  But that is not a basis for standing, and this Court should not allow these claims to proceed.[6]

## II.  Plaintiff Has No Right To Sue.

Even if Plaintiff had carried its burden of sufficiently alleging standing, the Court should dismiss Plaintiff's claim for lack of a private right of action. *See McDonald v. So. Farm Bureau Life Ins. Co.*, 291 F.3d 718, 726 (11th Cir. 2002).  Plaintiff relies on VRA § 202(d), one of the 1970 amendments to the VRA now codified at 52 U.S.C. § 10502.  But neither 42 U.S.C. §§ 1983, 1988, nor the VRA afford a private right to sue.

---

[5] Further, by only including a single county, Plaintiff's proposed relief is untenable, as it would set one standard for Fulton County and a different standard for the other 158 counties in Georgia.  *See Jacobson*, 974 F.3d at 1255 ("If a plaintiff sues the wrong defendant, an order enjoining the correct official who has not been joined as a defendant cannot suddenly make the plaintiff's injury redressable."); *Bush v. Gore*, 531 U.S. 98, 110 (2000) (per curiam).

[6] Declaring SB 202's eleven-day deadline unlawful would also jeopardize the voting laws of at least fifteen other states.  Georgia is not the only state with a deadline to request absentee ballots of more than seven days.  It is one of 16 states, including Alaska, Arizona, Florida, Idaho, Indiana, Iowa, Kentucky, Missouri, Nebraska, New York, Oklahoma, Rhode Island, South Carolina, Texas, and Virginia.  *See* Nat'l Conf. of State Legislatures, *Table 5: Applying for an Absentee Ballot, Including Third-Party Registration Drives*, Nat'l Conf. of State Legislatures (July 12, 2022), https://www.ncsl.org/elections-and-campaigns/table-5-applying-for-an-absentee-ballot.  Yet not a single court has considered a challenge under the "not later than seven days" language of VRA § 202(d).  A 2020 lawsuit in Alaska raised the argument in one paragraph, but plaintiffs discontinued the claim. *Disability Law Ctr. of Alaska v. Meyer*, 484 F. Supp. 3d 693, 702 n.36 (D. Alaska 2020).

Section 202 of the VRA abolished durational residency requirements to vote within 30 days of moving across state lines and established absentee balloting for presidential elections.  It states:

> For the purposes of this section, … each State shall provide by law for the casting of absentee ballots for the choice of electors for President and Vice President, or for President and Vice President, by all duly qualified residents of such State who may be absent from their election district or unit in such State on the day such election is held and who have applied therefor not later than seven days immediately prior to such election and have returned such ballots to the appropriate election official of such State not later than the time of closing of the polls in such State on the day of such election.

52 U.S.C. § 10502(d).  No private right of action is mentioned in the text of § 202(d), and this Court should not infer one.  Perhaps that is why this section of the VRA has not been invoked previously by private parties.

1.    As the Eleventh Circuit explains, the "central inquiry" in "determining whether a private remedy is implicit in a statute not expressly providing one" is "whether Congress intended to create, either expressly or by implication, a private cause of action."  *McDonald*, 291 F.3d at 722–23 (citations omitted).  When the text of a statute does not provide an enforcement mechanism, courts may look for clues in the text and structure of the statutory scheme.  *Id.*; *accord In re Wild*, 994 F.3d 1244, 1255–56 (11th Cir. 2021) ("In the two decades since [*Alexander v. Sandoval*, 532 U.S. 275 (2001)] was decided, we have faithfully heeded the Supreme Court's directives and have

demanded clear evidence of congressional intent as a prerequisite to a private right of action."). Such clues may include which parties are expressly referenced and any remedies included. *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204, 1216 (8th Cir. 2023). And the Eleventh Circuit confirms that "[t]he bar for showing legislative intent is high." *McDonald*, 291 F.3d at 722–23.

Plaintiff here cannot meet this "high" bar. The sole enforcement and remedial section of the VRA provides only the Attorney General with a cause of action to enforce § 202. *See* 52 U.S.C. § 10308(d) ("[T]he Attorney General may institute for the United States, or in the name of the United States, an action for preventive relief."). A comprehensive reading of this particular section, VRA § 12, clearly establishes that it focuses entirely on enforcement proceedings instituted by the U.S. Attorney General. *Ark. State Conf. NAACP*, 86 F.4th at 1208. As the Supreme Court confirms, "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290. Like the rest of the statutory scheme, § 202 is completely silent on remedies available for violating it. Thus, it would be wholly inappropriate for this Court to create a private remedy for § 202 violations.

2. Though private actions under other VRA sections have proceeded in the past, this line of thinking has been overruled and is under intensifying

16

scrutiny today.  Not long after the VRA's enactment, the Supreme Court permitted private actions under § 5, reasoning that it "might well prove an empty promise unless the private citizen were allowed to seek judicial enforcement of the prohibition." *Allen v. State Bd. of Elections*, 393 U.S. 544, 556–57 (1969).  But § 5 is no longer operative.  *Shelby Cnty. v. Holder*, 570 U.S. 529, 556 (2013).  And only a plurality of the Supreme Court later implied a private action to enforce another section, § 10.  *Morse v. Republican Party of Va.*, 517 U.S. 186, 234–35 (1996).

Since then, the Supreme Court has steadily chipped away at finding implied rights of action to shore up weak enforcement claims, looking instead to statutory text.  *Sandoval*, 532 U.S. at 287–88.  The Supreme Court has even called the practice of implying rights of action into the VRA an "*ancien regime*." *Ziglar v. Abbasi*, 582 U.S. 120, 131–32 (2017) (quoting *Sandoval,* 532 U.S. at 287) (citing *Allen v. State Bd. of Elections* as an example).  Addressing another VRA section, the Court recently said that "a fresh look at the statutory text is appropriate." *Brnovich*, 141 S. Ct. at 2337; *see also id.* at 2350 (Gorsuch, J., concurring) (availability of a private right of action in VRA is an "open question").

True, another court in this District previously found a private right of action to enforce another VRA section, § 2.  *See, e.g., Alpha Phi Alpha Fraternity, Inc. v. Raffensperger*, No. 1:21-cv-05337-SCJ, 2022 WL 20690354,

at \*10–11 (N.D. Ga. Jan. 28, 2022), *appeal docketed sub nom. Alpha Phi Alpha Fraternity, Inc. v. Sec'y, State of Ga.*, No. 23-13914 (11th Cir. Nov. 28, 2023); *see also Ga. State Conf. of NAACP v. Georgia*, No. 1:21-cv-5338-ELB-SCJ-SDG, 2022 WL 18780945, at \*4 (N.D. Ga. Sept. 26, 2022) (per curiam).  But since then, the Supreme Court could not have been clearer that courts should not imply private rights of action.  *Egbert v. Boule*, 596 U.S. 482, 491–92 (2022).  And consistent with that principle, the Eighth Circuit recently held that, in fact, § 2 provides *no* private right of action.  *Ark. State Conf. NAACP*, 86 F.4th at 1216; *see also Allen v. Milligan*, 599 U.S. 1, 90 n.22 (2023) (Thomas, J., dissenting) (leaving the question of private right of action in the VRA for another day because it "was not raised in this Court").  These cases certainly show "contrary direction from a higher court," *Alpha Phi Alpha,* 2022 WL 20690354, at \*11 (quotation marks and citation omitted), and this Court should not rely on outdated precedent—especially non-binding precedent—to create a § 202 enforcement mechanism out of whole cloth.

3.     Plaintiff's reliance on Section 1983 is similarly misguided.  Compl. ¶ 7.  Though § 1983 "presumptively" creates a private remedy, it does so only for individual rights secured elsewhere.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002).  Section 1983 cannot create a cause of action if the rights-creating statute—here, the VRA—contains a remedial scheme that is "sufficiently comprehensive" to suggest that Congress intended to preclude

§ 1983 suits. *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19–20 (1981); *see Sandoval*, 532 U.S. at 290. As discussed above, VRA § 12 provides a sufficiently comprehensive remedial scheme—an enforcement action by the U.S. Attorney General—to suggest that Congress intended to preclude § 1983 as a way for private citizens to enforce the VRA. *See Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 586 F. Supp. 3d 893, 906 n.76 (E.D. Ark. 2023), *aff'd*, 86 F.4th 1204 (8th Cir. 2023). Therefore, § 1983 does not provide a private remedy for private citizens or organizations to enforce § 202 of the VRA.

## CONCLUSION

This lawsuit is the next chapter in a long-running attack on SB 202. But the Court should dispose of this lawsuit quickly, as Plaintiff lacks both Article III standing and a private right of action to challenge the absentee-ballot provisions in that important Georgia law. Accordingly, the Court should dismiss Plaintiff's complaint.

Respectfully submitted this 8th day of January 2024.

Christopher M. Carr
Attorney General
Georgia Bar No. 112505
Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280

**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Gene C. Schaerr*
Gene C. Schaerr*
Special Assistant Attorney General
Brian J. Field*
Miranda Cherkas Sherrill
Georgia Bar No. 327642
**SCHAERR | JAFFE LLP**
1717 K Street NW, Suite 900
Washington, DC 20006
(202) 787-1060
gschaerr@schaerr-jaffe.com
*Admitted pro hac vice*

Bryan P. Tyson
Special Assistant Attorney General
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
(678) 336-7249

*Counsel for State Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing brief was prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).


*/s/ Gene C. Schaerr*
Gene C. Schaerr