## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

INTERNATIONAL ALLIANCE OF
THEATER STAGE EMPLOYEES
LOCAL 927,

    *Plaintiff*,

  v.

MATTHEW MASHBURN, EDWARD
LINDSEY, JANICE W. JOHNSTON,
and SARA TINDALL GHAZAL, *in
their official capacities as members of
the Georgia State Election Board*; and
PATRISE PERKINS-HOOKER,
AARON V. JOHNSON, MICHAEL
HEEKIN, and TERESA K.
CRAWFORD, *in their official capaci-
ties as members of the Fulton County
Registration and Elections Board*,

    *Defendants*.

No. 1:23-cv-04929-AT

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE

In recent challenges to Georgia's election laws, this Court has always allowed political committees—the same Movants[1] here—to intervene to protect their interests in the rules governing Georgia's elections.[2] Indeed, Movants are unaware of any ruling by this Court denying any political party intervention in a case challenging state election law. That's unsurprising, as political parties "brin[g] a unique perspective" to these cases, which is why courts routinely let them intervene "in actions challenging voting laws." *Democratic Party of Va. v. Brink*, 2022 WL 330183, at *2 (E.D. Va. Feb. 3, 2022).[3] The Court should grant the intervention motion for two independent reasons.

---

[1] Movants are the Republican National Committee and the Georgia Republican Party, Inc.

[2] *Wood v. Raffensperger*, Doc. 14, No. 1:20-cv-5155 (N.D. Ga. Dec. 28, 2020) (order granting intervention to the Democratic Party of Georgia and the DSCC); *United States v. Georgia*, Minute Order, No. 1:21-cv-2575 (N.D. Ga. July 12, 2021) (order granting intervention to the RNC, NRSC, NRCC, and Republican Party of Georgia); *Coal. for Good Governance v. Raffensperger*, Minute Order, No. 1:21-cv-2070 (N.D. Ga. June 21, 2021); *Concerned Black Clergy of Metro. Atlanta v. Raffensperger*, Minute Order, No. 1:21-cv-1728 (N.D. Ga. June 21, 2021); *Sixth District of the African Methodist Episcopal Church v. Kemp*, Minute Order, No. 1:21-cv-1284 (N.D. Ga. June 4, 2021); *Ga. State Conf. of NAACP v. Raffensperger*, Doc. 40, No. 1:21-cv-1259 (N.D. Ga. June 4, 2021); *Vote Am. v. Raffensperger*, Doc. 50, No. 1:21-cv-1390 (N.D. Ga. June 4, 2021); *New Ga. Project v. Raffensperger*, Doc. 39, No. 1:21-cv-1333 (N.D. Ga. June 4, 2021); *Asian Ams. Advancing Justice-Atlanta v. Kemp*, Doc. 39, No. 1:21-cv-1284 (N.D. Ga. June 4, 2021); *Black Voters Matter Fund v. Raffensperger*, Doc. 42, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020).

[3] *E.g.*, *Vote.org v. Byrd*, Doc. 85, No. 4:23-cv-111 (N.D. Fla. May 26, 2023); *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 309 (5th Cir. 2022) (reversing the district court's denial of the Republican committee's motion to intervene as of right); *Republican Nat'l Committee v. Chapman*, 447 M.D. 2022 (Pa. Common. Ct. Sept. 29, 2022) (order granting intervention to various Democratic political committees); *Democratic Nat'l Comm. v. Hobbs*, Doc. 18, No. 2:22-cv-1369 (D. Ariz. Aug. 24, 2022); *Mi Familia Vota v. Hobbs*, Doc. 53, No. 2:21-cv-1423 (D. Ariz. Oct. 4, 2021); *Harriet Tubman Freedom Fighters Corp. v. Lee*, Doc. 34, No. 4:21-cv-242 (N.D. Fla. July 6, 2021); *Fla. Rising Together v. Lee*, Doc. 52, No. 4:21-cv-201 (N.D. Fla. July 6, 2021); *Fla. State Conference of Branches & Youth Units of NAACP v. Lee*, Doc. 43, No. 4:21-cv-187 (N.D. Fla. June 8, 2021); *League of Women Voters of Fla. v. Lee*, Doc. 72, No. 4:21-cv-186 (N.D. Fla. June 4, 2021); *Swenson v. Bostelmann*, Doc. 38, No. 20-cv-459 (W.D. Wis. June 23, 2020); *Edwards v. Vos*, Doc. 27, No. 20-cv-340 (W.D. Wis. June 23, 2020); *Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020); *Gear v.*

*First*, Movants satisfy the criteria for intervention as of right under Rule 24(a)(2). Their motion is timely: Plaintiffs filed their complaint barely two months ago, motions to dismiss are only now being filed, and no party will be prejudiced. Movants also have a clear interest in protecting their candidates, voters, and resources from Plaintiffs' attempt to invalidate Georgia's duly enacted election rules. Finally, no other party adequately represents Movants' distinct interests in conserving their resources and helping Republican candidates and voters.

*Second*, and alternatively, the Court should grant Movants permissive intervention under Rule 24(b). Again, this motion is timely. Movants' defenses share common questions of law and fact with the existing parties, and intervention will result in no delay or prejudice. The Court's resolution of the important questions in this case will have significant implications for Movants as they work to ensure that candidates and voters can participate in fair and orderly elections.

Whether under Rule 24(a)(2) or (b), Movants should be allowed to intervene as defendants.

---

*Knudson*, Doc. 58, No. 3:20-cv-278 (W.D. Wis. Mar. 31, 2020); *Lewis v. Knudson*, Doc. 63, No. 3:20-cv-284 (W.D. Wis. Mar. 31, 2020); *Pavek v. Simon*, Doc. 96, No. 19-cv-3000 (D. Minn. July 12, 2020); *Ariz. Democratic Party v. Hobbs*, Doc. 60, No. 2:20-cv-01143 (D. Ariz. June 26, 2020); *League of Women Voters of Minn. Ed. Fund v. Simon*, Doc. 52, No. 20-cv-1205 (D. Minn. June 23, 2020); *Nielsen v. DeSantis*, Doc. 101, No. 4:20-cv-236 (N.D. Fla. May 28, 2020); *Priorities USA v. Nessel*, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020); *Thomas v. Andino*, 2020 WL 2306615, at *4 (D.S.C. May 8, 2020); *Corona v. Cegavske*, No. CV 20-OC-644-1B (Nev. 1st Jud. Dist. Ct. Apr. 30, 2020); *League of Women Voters of Va. v. Va. State Bd. of Elections*, Doc. 57, No. 6:20-cv-24 (W.D. Va. Apr. 29, 2020).

3

## INTERESTS OF PROPOSED INTERVENORS

Movants are two political committees who support Republicans in Georgia. The Republican National Committee is a national committee, as defined by 52 U.S.C. §30101, that manages the Republican Party's business at the national level, supports Republican candidates for public office at all levels, including in Georgia, and coordinates fundraising and election strategy, and develops and promotes the national Republican platform. The Georgia Republican Party is a political party that works to promote Republican values and to assist Republican candidates in obtaining election to partisan federal, state, and local office. Both Movants have interests—their own and those of their members—in the rules and procedures governing Georgia's elections. That includes Georgia's upcoming elections in 2024 for federal and state office.

## ARGUMENT

### I.    Movants are entitled to intervene as of right.

Rule 24 "should be liberally construed," *Clark v. Sandusky*, 205 F.2d 915, 919 (7th Cir. 1953), and "[a]ny doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors," *Fed. Sav. & Loan Ins. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993). Under Rule 24(a)(2), this Court "must allow" intervention as of right if four things are true: the motion is timely; movants have a legally protected interest in this action; this action may impair or impede that interest; and no existing party adequately represents Movants' interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). Movants satisfy all four elements.

### A.     The motion is timely.

This Court considers four factors in determining the timeliness of a motion to intervene: the delay after the movant knew its interest in the case; any prejudice to the existing parties from that delay; prejudice to the movant from denying intervention; and any unusual circumstances. *Id.* These factors all favor Movants.

Movants filed the motion early in the litigation. Plaintiffs filed their lawsuit in late September, and Defendants moved to dismiss just this week. A motion is timely when the Court has not yet taken "significant action," *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259-60 (11th Cir. 2002), or when "no substantive proceedings have taken place," *Ga. Aquarium, Inc. v. Pritzker*, 309 F.R.D. 680, 684 n.6 (N.D. Ga. 2014) (Totenberg, J.). And much later intervention motions have been declared timely. *See e.g.*, *id.* (motion filed over three months after complaint was filed); *U.S. Army Corps of Eng'rs*, 302 F.3d at 1259 (motion filed six months after complaint and "discovery was largely complete"); *Davis v. BancInsure, Inc.*, 2013 WL 1226491, at *2 (N.D. Ga. Mar. 18, 2013) (motion filed four and a half months after complaint and the parties had already fully briefed motions for summary judgment); *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) (motion filed one year after answer).

Moreover, Movants filed rapidly after learning their interests were at stake. An intervening defendant "knew or should have known of its interest in the action" when a party defendant files a pleading demonstrating it "will not argue" in favor of certain interests. *Reassure Am. Life Ins. Co. v. Shomers*, 265 F.R.D. 672, 675 (S.D. Fla. 2010). In their proposed motion to dismiss, Movants

raise several arguments that no Defendant has raised in this case. Indeed, no Defendant has even moved to dismiss the complaint on the merits—their arguments go only to standing. *See* Doc. 46. Some of the Defendants didn't even move to dismiss at all. *See* Doc. 24. But Movants have national interests in a dismissal on the merits. Those interests were put at stake this week, only after the Defendants responded to the complaint and demonstrated that they will not raise those arguments.

Nor will Movants' intervention prejudice the parties. This litigation has not yet begun in earnest. Movants will comply with all deadlines that govern the parties, will work to prevent duplicative briefing, and will coordinate with the parties on discovery. If Movants are not allowed to intervene, however, their interests could be irreparably harmed by an order overriding Georgia's election rules and undermining the integrity of Georgia's elections. There are no unusual circumstances. Their motion is timely.

## B.    Movants have protected interests in this action.

As this Court has held before, Movants have "a specific interest" in "promoting their chosen candidates and protecting the integrity of Georgia's elections." *Black Voters Matter Fund v. Raffensperger*, Doc. 42 at 5, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020). Specifically, Movants have at least three "direct, substantial, legally protectible interest[s] in the proceeding." *Chiles*, 865 F.2d at 1213-14 (citation omitted).

*First*, Movants have "a direct and substantial interest in the proceedings" because they "affect the [Movants'] ability to participate in and maintain the integrity of the election process in [Georgia]." *La Union del*

6

*Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022). Laws like the one Plaintiffs challenge here serve "the integrity of [the] election process," *Eu v. San Fran. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989), and the "orderly administration" of elections, *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.). When elections are safe and secure—and voters perceive them as such—voters are more likely to vote and more likely to trust the outcome of the elections. Indeed, federal courts "routinely" find that political parties have interests supporting intervention in litigation regarding election rules. *Issa*, 2020 WL 3074351, at *3; *see, also*, *Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001).

*Second*, political parties have inherent interests in the rules that govern the elections in which they participate. "[I]n cases challenging various statutory schemes as unconstitutional or as improperly interpreted and applied, the courts have recognized that the interests of those who are governed by those schemes are sufficient to support intervention." *Chiles*, 865 F.2d at 1214. In other words, because Movants' candidates will "actively seek [election or] reelection in contests governed by the challenged rules," and Movants' voters will vote in them, Movants have an interest in "demand[ing] adherence" to Georgia's rules. *Shays v. FEC*, 414 F.3d 76, 88 (D.C. Cir. 2005). Indeed, given their inherent interest in elections, usually "[n]o one disputes" that political parties "meet the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, *2 (D. Col. Sept. 15, 2014).

Election rules affect political parties most of all. Parties and their voters must comply with rules such as the application deadline Plaintiffs seek to change with this lawsuit. They must ensure their candidates, members, and voters are informed of those rules and have the resources to comply. And—a critical point for federal lawsuits—they must work quickly to respond to sudden, court-ordered changes to those rules in the lead up to an election. Where, as here, "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the … Republican Party" there is "no dispute that the … Republican Party ha[s] an interest in the subject matter of this case." *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, *2 (S.D. Ohio Aug. 26, 2005).

*Third*, all of this regulation, compliance, and education doesn't come cheap. Every election cycle, party organizations like Movants "expend significant resources" on the election process—a process that the challenged laws "unquestionably regulat[e]." *La Union del Pueblo Entero*, 29 F.4th at 305. Plaintiffs challenge Georgia's deadline to apply for absentee voting. *See* Doc. 1. Deadlines are critical to political party strategy, messaging, and turnout. Movants will issue countless mailings, emails, social media posts, and other communications informing voters how *and when* they can apply for an absentee ballot. Those campaigns cost money. When the rules of the road change, so must Movants' campaigns. That means spending more money to reinform voters, correct past messaging, and reevaluate strategy. Safeguarding Movants' coffers from costs associated with sudden court-ordered changes in election procedure is a legitimate "interest" under Rule 24(a)(2).

*E.g.*, *Issa*, 2020 WL 3074351, at \*3; *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, 2020 WL 5658703, at \*11 (S.D.N.Y. 2020). And that rule applies with special force here, where "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the … Republican Party." *Ohio Democratic Party*, 2005 WL 8162665, \*2 (S.D. Ohio Aug. 26, 2005). "[T]here is no dispute that the … Republican Party ha[s] an interest in the subject matter of this case." *Id.*

Affording Plaintiffs relief in this case would introduce significant complexities to the absentee ballot application process and thereby cause a further drain on Movants' resources. First, Movants would need to expend resources for an additional four days encouraging their voters to return their absentee ballot applications. Second, Movants would have to educate their voters about who is eligible for a later application deadline—*i.e.*, only voters "who may be absent from their election district or unit" on Election Day, 52 U.S.C. § 10502(d)—and incorporate that qualification into their get-out-the-vote operations. Third, Movants would have to educate their voters that a later application deadline applies only to the presidential election, *see id.*, and that the earlier statutory deadline applies to all other races, and account for these different deadlines in designing and executing their get-out-the-vote strategies. The dueling deadlines also would likely impact turnout in down-ballot races, thus requiring additional resources targeted there.

In short, if Plaintiffs have standing to bring this lawsuit on behalf of their members, then Movants have an interest in defending against this lawsuit on behalf of theirs. *See Chiles*, 865 F.2d at 1213 ("a party seeking to

intervene need not demonstrate that he has standing in addition to meeting the requirements of Rule 24"). For these reasons, this Court has recognized that Movants have "significant interests at stake" in cases like this one. *New Ga. Project*, Doc. 39, No. 1:21-cv-1333 (N.D. Ga.).

### C. This action threatens to impair Movants' interests.

Going forward without Movants would "impair" their interests. Fed. R. Civ. P. 24(a)(2). Movants "do not need to establish that their interests *will* be impaired." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). Instead, they must show "only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Id.* This language from Rule 24 is "obviously designed to liberalize the right to intervene in federal actions." *Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967).

Here, Movants' interests will plainly "suffer if the Government were to lose this case, or to settle it against [Movants'] interests." *Mausolf v. Babbitt*, 85 F.3d 1295, 1302-03 (8th Cir. 1996). Not only would an adverse decision undercut democratically enacted laws that protect voters and candidates (including Movants' members), *Frank v. Walker*, 768 F.3d 744, 751 (7th Cir. 2014), but it would also "change the entire election landscape for [Movants'] members and volunteers," thereby "chang[ing] what [Movants] must do to prepare for upcoming elections," *La Union*, 29 F.4th at 307; *see also Shays*, 414 F.3d at 85-86. That alone satisfies the impaired interest requirement. *La Union*, 29 F.4th at 307; *Shays*, 414 F.3d at 85-86.

More concretely, granting Plaintiffs relief before the 2024 election threatens to confuse voters and undermine confidence in the electoral process.

*See Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) ("Court orders affecting elections … can themselves result in voter confusion."). An injunction could result in two different deadlines for those requesting an absentee ballot: one for voters who are actually absent from the polling place and who are only eligible to vote for President and Vice President, and another for all other absentee voters. Movants will be forced to educate voters about these diverging deadlines and encourage those who use the seven-day deadline to quickly mark and return their ballots within that condensed period. The divergent deadlines would also harm down-ballot Republican Party candidates, who will lose votes because those applying under the seven-day deadline are only eligible to vote for President and Vice President. These harms directly injure political parties and their candidates, who could lose votes and ultimately the election due to an injunction from this Court.

To defend against those electoral harms, Movants will also be forced to spend substantial resources fighting inevitable confusion, informing Republican voters of changes in the law, and galvanizing participation in the wake of the "consequent incentive to remain away from the polls." *Id.*; *accord Pavek v. Simon*, 2020 WL 3183249, at *10 (D. Minn. June 15, 2020). They must inform voters of the new deadline, plus the different criteria and exceptions for that deadline. Those pocketbook costs are an independent injury.

Moreover, "as a practical matter," Fed. R. Civ. P. 24(a)(2), this proceeding might be the *only* time that Movants can litigate Plaintiffs' claims. This Court's decision could be the final word on the laws governing the next election. Because the "very purpose of intervention is to allow interested parties to air

11

their views … *before* making potentially adverse decisions," *Brumfield*, 749 F.3d at 345 (emphasis added), the "best" course is to give "all parties with a real stake in [the] controversy … an opportunity to be heard." *Hodgson v. UMWA*, 473 F.2d 118, 130 (D.C. Cir. 1972). That includes Movants.

### D. The existing parties do not adequately represent Movants' interests.

Finally, no party adequately represents Movants' interests. Inadequacy is not a demanding standard. Some courts outside the Eleventh Circuit presume adequate representation in cases where government defendants are charged with defending the constitutionality of statutes. But as this Court recently explained, "this Circuit" does not apply a "heightened standard to motions to intervene." *Greene v. Raffensperger*, No. 22-cv-1294, 2022 WL 1045967, at *3 (N.D. Ga. Apr. 7, 2022) (Totenberg, J.). Rather, "under binding case law in this Circuit, the burden to show inadequacy of representation is 'minimal' and only requires intervenors to show that Defendants' representation of their interests *may* be inadequate." *Id.*; *see also Chiles*, 865 F.2d at 1214 ("the burden of making that showing should be treated as minimal," and proposed intervenors "should be allowed to intervene unless it is clear that [the current parties] will provide adequate representation").

Movants satisfy this minimal standard. To begin with, the State doesn't even share Movants' interests, let alone adequately represent them. The State Defendants necessarily represent "the public interest," rather than Movants' "particular interest[s]" in protecting their resources and the rights of their candidates and voters. *Coal. of Ariz./N.M. Counties for Stable Economic Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996). While the State "may well

12

believe that what best serves the public welfare will also best serve the overall interests of [Movants], the fact remains that the [Movants] may see their own interest in a different, perhaps more parochial light." *Conservation L. Found. of New England, Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992). For that reason, courts "often conclude[] that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003).

That's especially true in election litigation. The State has no interest in the election of Movants' candidates, the mobilization of Movants' voters, or the costs associated with either. Instead, as state officials acting on behalf of all Georgia citizens and the State itself, the State Defendants must consider "a range of interests likely to diverge from those of the intervenors." *Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1478 (11th Cir. 1993). Those clashing interests include:

- the interests of Plaintiffs. *See In re Sierra Club*, 945 F.2d 776, 779-80 (4th Cir. 1991).

- "the expense of defending the current [laws] out of [state] coffers." *Clark v. Putnam Cnty.*, 168 F.3d 458, 461 (11th Cir. 1999). Movants need only consider their own costs.

- "the social and political divisiveness of the election issue" to the State. *Meek*, 985 F.2d at 1478. Movants address the issue's effect on the Republican Party and Republican voters.

- Defendants' preference to "resolve this case" on "standing grounds." *La Union*, 29 F.4th at 308. Movants prefer to win on the merits.

This Court has recognized that these differences meet the "minimal burden to show that the existing Defendants' representation of their interests, at the very least, *may* be inadequate." *Greene*, 2022 WL 1045967, at *4 (granting intervention as of right to Georgia residents challenging the eligibility of a congressional candidate).

Movants will also raise important statutory and constitutional arguments, as their accompanying motion to dismiss demonstrates. At the very least, Movants will "serve as a vigorous and helpful supplement" to Defendants and "can reasonably be expected to contribute to the informed resolutions of these questions." *NRDC v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977). Movants seek to preserve Georgia's election safeguards, including the deadline challenged here, and they bring a wealth of knowledge and experience to the table. Movants thus should be granted intervention under Rule 24(a)(2).

## II. Alternatively, Movants are entitled to permissive intervention.

Even if Movants were not entitled to intervene as of right under Rule 24(a), this Court should grant them permissive intervention under Rule 24(b). Courts grant permissive intervention when the movant has "a claim or defense that shares with the main action a common question of law or fact," Fed. R. Civ. P. 24(b), a requirement that "is generally given a liberal construction," *Ga. Aquarium*, 309 F.R.D. at 690 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 269 (5th Cir. 1977)). Courts also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see Chiles*, 865 F.2d at 1213. Inadequate representation is not a requirement, *Black Voters Matter*, Doc. 42 at 5, No. 1:20-cv-4869 (N.D.

Ga.), and Rule 24(b)(2) "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation," *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940).

The requirements of Rule 24(b) are met here. As explained in Section I, this motion is timely. And Movants will raise defenses that share common questions with the parties' claims and defenses. Plaintiffs allege that Georgia's registration deadline violates the Voting Rights Act. Movants not only reject that allegation, but also argue that Plaintiffs' claim is foreclosed by the Constitution, and that granting Plaintiffs relief before the 2024 election would violate the *Purcell* doctrine.

Unsurprisingly, this Court has held that these conditions justified permissive intervention in similar election disputes. *E.g.*, *New Ga. Project*, 2021 WL 2450647, at *2 (granting intervention to the same Movants here); *Greene*, 2022 WL 1045967, at *4. That's often the simplest path, since "the Court need not determine whether [Movants] are entitled to intervene as a matter of right under the more stringent standard in Rule 24(a)" when "Movants meet the standard for permissive intervention under Rule 24(b)." *Ga. Aquarium*, 309 F.R.D. at 690; *see also, e.g.*, *Swenson*, Doc. 38, No. 20-cv-459 (W.D. Wis.) ("[T]he [RNC and Republican Party of Wisconsin] have a defense that shares common questions of law and fact with the main action; namely, they seek to defend the challenged election laws to protect their and their members' stated interests—among other things, interest in the integrity of Wisconsin's elections."); *Priorities USA*, 2020 WL 2615504, at *5 (recognizing that the permissive-intervention criteria were met when the RNC

"demonstrate[d] that they seek to defend the constitutionality of Michigan's [election] laws, the same laws which the plaintiffs allege are unconstitutional").

Movants' intervention will not unduly delay this litigation or prejudice anyone. "[A]llowing intervention by Movants will not unduly delay or prejudice the adjudication of [Plaintiffs'] claims" when the "litigation is in a relatively nascent stage and none of the deadlines" in the Court's scheduling order have passed. *Ga. Aquarium*, 309 F.R.D. at 691. Here, the Court only just ordered Defendants to respond to by January 8. And no party has filed substantive motions. *See Greene*, 2022 WL 1045967, at *5 (granting permissive intervention and distinguishing case in which the "motions then pending before the court had already been briefed").

Responding to Movants' arguments will not "unduly delay or prejudice" the case, Fed. R. Civ. P. 24(b)(3), since Plaintiffs "can hardly be said to be prejudiced by having to prove a lawsuit [they] chose to initiate," *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). Movants also commit to submitting all filings in accordance with whatever briefing schedule the Court imposes, "which is a promise" that undermines claims of undue delay. *Emerson Hall Assocs., LP v. Travelers Casualty Ins. Co. of Am.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19, 2016). Allowing Movants to intervene will allow "the Court … to profit from a diversity of viewpoints as [Movants] illuminate the ultimate questions posed by the parties." *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017). Where a court has doubts, "the most prudent and efficient course" is to allow permissive

intervention. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 2002 WL 32350046, *3 (W.D. Wis. Nov. 20, 2002).

## CONCLUSION

Movants respectfully request that the Court grant their motion and allow them to intervene as defendants.

This 12th day of January, 2024.

Respectfully submitted,

/s/ *Alex Kaufman*
GA BAR 136097

Thomas R. McCarthy*
Gilbert C. Dickey*
Conor D. Woodfin*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

Alex B. Kaufman
CHALMERS, ADAMS, BACKER &
   KAUFMAN, LLC
11770 Haynes Bridge Road
#205-219
Alpharetta, GA 30009-1968
(404) 964-5587
akaufman@chalmersadams.com

**pro hac vice* forthcoming

*Counsel for Movants*

17

## CERTIFICATE OF COMPLIANCE

This document complies with Local Rule 5.1(B) because it uses 13-point Century Schoolbook.

*/s/ Alex Kaufman*

## CERTIFICATE OF SERVICE

On January 12, 2024, I e-filed this document on ECF, which will email everyone requiring service.

*/s/ Alex Kaufman*