IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| INTERNATIONAL ALLIANCE OF THEATER STAGE EMPLOYEES LOCAL 927,<br><br>*Plaintiff*,<br><br>v.<br><br>MATTHEW MASHBURN, in his official capacity as member of the Georgia State Election Board, *et al.*<br><br>*Defendants*. | Case No. 1:23-cv-04929 |

**STATEMENT OF INTEREST OF THE UNITED STATES**

## INTRODUCTION

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. § 517, which authorizes the Attorney General "to attend to the interests of the United States in a suit pending in a court of the United States." This case presents important questions relating to enforcement of Section 202 of the Voting Rights Act (VRA) ("Section 202"), 52 U.S.C. § 10502. Congress has given the Attorney General authority to enforce Section 202 on behalf of the United States. *See* 52 U.S.C. § 10504. Accordingly, the United States has a substantial interest in ensuring Section 202's proper interpretation. The United States submits this Statement of Interest to address that Section 202 is enforceable by private parties through 42 U.S.C. § 1983, which Defendants challenge in their Motion to Dismiss the Plaintiff's Amended Complaint. *See* Mot. Dismiss Pl.'s Am. Compl. at 20–21, ECF No. 68-1. The United States expresses no view on the merits of any claim, nor on any issues other than those set forth in this brief.[1]

---

[1] Because the Plaintiff sued under Section 1983, *see* Am. Compl. at ¶ 7, ECF No. 62, the United States does not address—and the Court need not reach for reasons of judicial economy—whether there is an implied right of action to enforce Section 202, separate and apart from any cause of action through Section 1983. That said, the United States has set forth the applicable principles in arguing that other provisions of the Voting Rights Act are privately enforceable. *See, e.g.*, U.S. Amicus Br. *Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*, 86 F.4th 1204 (8th Cir. 2022), https://perma.cc/ZQ7F-4GSR (Section 2); Statement of Interest of the U.S., *Chandler v. Allen*, No. 2:21-cv-1531 (N.D. Ala. Sept. 22, 2023), https://perma.cc/3Y97-CUK2 (Section 2); Statement of Interest of the U.S., *Coca v. City of Dodge City*, No. 6:22-cv-1274-EFM-RES, 2023 WL 2987708 (D. Kan.

## PROCEDURAL BACKGROUND

Plaintiff challenges a provision of Georgia election law that allows absentee voting only for voters who have applied for an absentee ballot by the eleventh day before an election, including for presidential elections. *See* Am. Compl. ¶ 3 (citing O.C.G.A. § 21-2-381(a)(1)(A)). The Amended Complaint alleges that this provision violates Section 202(d) of the Voting Rights Act. *Id.* at ¶¶ 29-31; *see also* 52 U.S.C. § 10502(d). In relevant part, Section 202(d) mandates that "each State shall provide by law for the casting of absentee ballots" in presidential elections "by all duly qualified residents of such State who may be absent from their election district or unit in such State" on election day, "and who have applied therefor not later than *seven days* immediately prior to such election." 52 U.S.C. § 10502(d) (emphasis added). Plaintiff brought suit under Section 1983. *See* Am. Compl. at ¶ 7. On February 12, 2024, Defendants moved to dismiss the Plaintiff's Amended Complaint, arguing, in part, that a private plaintiff cannot bring a Section 202 claim under Section 1983. Mot. to Dismiss Plf.'s Am. Compl. at 20–21, ECF No. 68-1.

---

Feb. 10, 2023), https://perma.cc/3R7T-5XS6 (Section 2); Statement of Interest of the U.S., *Colo. Mont. Wyo. State Area Conf. of the NAACP v. U.S. Election Integrity Plan*, No. 22-cv-00581 (D. Colo. Jan. 3, 2023), https://perma.cc/XV8X-Z4HC (Section 11(b)); Statement of Interest of the U.S., *Mo. Prot. & Advoc. Servs. v. Ashcroft*, No. 22-cv-04097 (W.D. Mo. Sept. 16, 2022), https://perma.cc/9RU4-KS9Q (Section 208).

## STATUTORY BACKGROUND

Congress amended the Voting Rights Act to include Section 202 in 1970. *Hershcopf v. Lomenzo*, 350 F. Supp. 156, 157–58 (E.D.N.Y. 1972). Section 202 articulates federal standards for pre-election durational residency requirements and the availability of absentee voting in presidential elections, which have been held to be constitutional. *Id.* (citing *Oregon v. Mitchell*, 400 U.S. 112 (1970)); *see also Prigmore v. Renfro*, 356 F. Supp. 427, 430 (N.D. Ala. 1972) (citing *Mitchell* to hold that Alabama must allow absentee voting by otherwise qualified absent voters).

Section 202 of the Voting Rights Act was intended to expand the right to vote. The congressional findings in the statute explain that prior to its enactment, there were a "lack of sufficient opportunities for absentee registration and absentee balloting in presidential elections," 52 U.S.C. § 10502(a), which: (1) "denies or abridges the inherent constitutional right of citizens to vote for their President and Vice President," 52 U.S.C. § 10502(a)(1); (2) "in some instances has the impermissible purpose or effect of denying citizens the right to vote for such officers because of the way they may vote," 52 U.S.C. § 10502(a)(4); and (3) "does not bear a reasonable relationship to any compelling State interest in the conduct of presidential elections." 52 U.S.C. § 10502(a)(6).

**LEGAL STANDARD**

In evaluating a facial attack to subject matter jurisdiction of a complaint under Rule 12(b)(1), courts "look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F. 2d 1525, 1529 (11th Cir. 1990) (alteration in original) (internal quotation omitted), *cert. denied*, 449 U.S. 953 (1980)).  To decide a motion to dismiss under Rule 12(b)(6), courts must "accept[] the factual allegations in the complaint as true and construe[] them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).  A complaint should not be dismissed on a Rule 12(b)(6) motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993) (internal quotation marks omitted).

**ARGUMENT**

**A. Private Plaintiffs Can Enforce Section 202 via 42 U.S.C. § 1983.**

Section 202's provisions are privately enforceable through 42 U.S.C. § 1983.  Section 1983 provides a general remedy for private plaintiffs to redress violations of federal rights committed by state actors.  *See Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) (holding that "the plain language" of Section 1983 "undoubtedly

4

embraces" suits by private plaintiffs to enforce federal statutory rights); *see also Livadas v. Bradshaw*, 512 U.S. 107, 133 (1994) (unanimous op.) (recognizing that "[Section] 1983 remains a generally and presumptively available remedy for claimed violations of federal law") (citing *Dennis v. Higgins*, 498 U.S. 439, 441 (1991)).  Under the test set forth in *Gonzaga University v. Doe*, a federal statute is "presumptively enforceable" under Section 1983 if it "unambiguously confer[s]" individual federal rights.  536 U.S. 273, 283–284 (2002).  That standard is met if the statute in question "is 'phrased in terms of the person benefited' and contains 'rights-creating,' individual-centric language with an 'unmistakable focus on the benefited class.'"  *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 183 (2023) (quoting *Gonzaga*, 536 U.S. at 284, 287).

Defendants can rebut the presumption only by "demonstrat[ing] that Congress shut the door to private enforcement either [1] expressly, through specific evidence from the statute itself" or "[2] impliedly, by creating a *comprehensive enforcement scheme that is incompatible with individual enforcement under [Section] 1983*."  *Gonzaga*, 536 U.S. at 284 n.4 (emphasis added; citations and internal quotation marks omitted).

### 1. Section 202 Contains Rights-Creating Language.

Section 202 unequivocally contains "rights-creating" language.  *Talevski*, 599 U.S. at 183 (quoting *Gonzaga*, 536 U.S. at 284, 287).  It uses "individual-

5

centric language" to vest a particular right (the right to vote absentee in presidential and vice-presidential elections) in "the benefited class" (citizens of the United States). *Id.* (quoting *Gonzaga*, 536 U.S. at 284, 287). Indeed, Section 202 *repeatedly* refers to this right and this class throughout Subsections (a) through (f). First, Subsection (a) states:

> Congress hereby finds that . . . the lack of sufficient opportunities for absentee registration and absentee balloting in presidential elections—(1) denies or abridges the inherent constitutional *right of citizens to vote* for their President and Vice President; . . . (4) in some instances has the impermissible purpose or effect of *denying citizens the right to vote* for such officers because of the way they may vote; [and] (5) has the effect of *denying to citizens the equality of civil rights*, and due process and equal protection of the laws that are guaranteed to them under the fourteenth amendment.

52 U.S.C. § 10502(a) (emphases added). Second, Subsection (b) states:

> Upon the basis of these findings, Congress declares that in order to secure and protect the . . . *rights of citizens* under the Constitution, to *enable citizens to better obtain the enjoyment of such rights*, and to enforce the guarantees of the fourteenth amendment, it is necessary . . . to establish nationwide, uniform standards relative to absentee registration and absentee balloting in presidential elections.

52 U.S.C. § 10502(b)(2) (emphases added). Third, Subsection (c) states:

> *[N]or shall any citizen of the United States be denied the right to vote* for electors for President and Vice President . . . .

52 U.S.C. § 10502(c) (emphasis added). Fourth, Subsection (d) states:

> For the purposes of this section, . . . each State shall *provide by law for the casting of absentee ballots* for the choice of electors

6

> for President and Vice President, or for President and Vice President, *by all duly qualified residents* of such State who may be absent from their election district or unit in such State on the day such election is held . . . .

52 U.S.C. § 10502(d) (emphases added).  Fifth, Subsection (e) states:

> If *any citizen of the United States* who is otherwise qualified to vote in any State or political subdivision in any election for President and Vice President has begun residence in such State or political subdivision after the thirtieth day next preceding such election and, for that reason, does not satisfy the registration requirements of such State or political subdivision he *shall be allowed to vote* for the choice of electors for President and Vice President, or for President and Vice President, in such election . . . .

52 U.S.C. § 10502(e) (emphases added).  And, sixth, Subsection (f) states:

> *No citizen of the United States* who is otherwise qualified to vote by absentee ballot in any State or political subdivision in any election for President and Vice President *shall be denied the right to vote* for the choice of electors for President and Vice President, or for President and Vice President, in such election because of any requirement of registration that does not include a provision for absentee registration.

52 U.S.C. § 10502(f) (emphases added).

The above language in Section 202 is similar to other statutory language courts have held to be rights-creating.  For example, in *Alexander v. Sandoval*, the Supreme Court held that Section 601 of Title VI, which states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 42 U.S.C.

7

§ 2000(d), is rights-creating.  532 U.S. 275, 288 (2001).  Similarly, Section 202's language is comparable to language in the Americans with Disabilities Act that the Eleventh Circuit held to be rights-creating.  *See Shotz v. City of Plantation*, 344 F.3d 1161, 1167 (11th Cir. 2003) (concluding that statutory language stating that "*[n]o person shall discriminate against any individual* because such individual has opposed any act or practice made unlawful by this chapter" contained rights-creating language) (emphasis added) (citing 42 U.S.C. § 12203(a)).  And Section 202 uses similar language to Section 2 of the Voting Rights Act, which the Northern District of Georgia concluded is rights-creating.  *See Ga. State Conf. of NAACP v. Georgia*, No. 1:21-CV-5338, 2022 WL 18780945, at *4 (N.D. Ga. Sept. 26, 2022) (three-judge court) (explaining that Section 2's language that "[n]o voting . . . standard, practice, or procedure shall be imposed or applied . . . in a manner which results in a denial or abridgement of *the right of any citizen of the United States to vote* on account of race or color" is rights-creating) (emphasis added) (citing 52 U.S.C. § 10301).  Based on this case law, this Court should conclude that Section 202 contains rights-creating language, too.

Further, Section 202's legislative history confirms Congress's rights-creating intent.  Senator Barry Goldwater, the sponsor of what later became Section 202, confirmed that the legislation would secure a specific right for a particular benefited class—namely, it would "enhance the right of U.S. citizens to

8

vote for their President." 116 Cong. Rec. 5690 (1970). He said in his testimony to the Senate Judiciary Subcommittee, "The legislation clearly is meant to secure for th[e] group of citizens [who travel or move prior to a presidential election] freedom from a discriminatory classification in the imposition of voting qualifications that Congress has found to be unnecessary and unfair." *Id.* at 4097. The Senator continued, "I want to state as firmly as I can that this hodgepodge of legal technicalities" in existing state laws governing absentee ballot requests and returns "is unfair, outmoded, and unnecessary when applied to Presidential elections." *Id.* at 4096. Courts have noted Senator Goldwater's statements on the intended purpose of what became Section 202. *See, e.g.*, *Bishop v. Lomenzo*, 350 F. Supp. 576, 585–86 (E.D.N.Y. 1972); *Hardy v. Lomenzo*, 349 F. Supp. 617, 621–622 (S.D.N.Y. 1972) ("[r]ecognizing fully [intervenor Senator Goldwater's] position that the legislative history of the Voting Rights Act Amendments of 1970, and his personal purpose show a clear intent to provide the broadest possible opportunity to citizens to register to vote in a Presidential election"). Ultimately, "Congress was attempting to insure a fully effective voice to all citizens in national elections" in "provid[ing] uniform national rules for absentee voting in presidential and vice-presidential elections" with the 1970 amendments to the Voting Rights Act. *Oregon v. Mitchell*, 400 U.S. 112, 134 (1970) (opinion of Black, J.); *see also* Presidential Statement on Signing Voting Rights Act Amendments of 1970, 1 Pub.

9

Papers 512–13 (June 22, 1970) (stating that the amendments "put[] an end to the present welter of State residency requirements for voting for President and Vice President" and that "[n]ow, for the first time, citizens who move between elections may vote without long residency requirements").

### 2. Defendants Have Not Rebutted the Presumption that Section 202 is Privately Enforceable.

Because Section 202 creates a federal right, it is presumptively enforceable using Section 1983. *See Gonzaga*, 536 U.S. at 283-284. Defendants have not rebutted this presumption because they have not shown that enforcement under Section 1983 would "distort" the enforcement scheme designed by Congress for Section 202. *Talevski*, 599 U.S. at 190 (quoting *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 127 (2005)).

First, Congress did not explicitly preclude private enforcement of Section 202. "[T]here is certainly no specific exclusion of private actions" in the Voting Rights Act. *Allen v. State Bd. of Elections*, 393 U.S. 544, 555 n.18 (1969). Nor is there a specific exclusion of private actions in Section 202. *See generally* 52 U.S.C. § 10502. The absence of an express preclusion is unsurprising because Congress understood Section 202 to be privately enforceable. *See* 116 Cong. Rec. 4096 (1970). And the text and structure of the Voting Rights Act as a whole reveal Congress's intent to create a private remedy to enforce its protections. *See Allen v. State Bd. of Elections*, 393 U.S. 544, 554–57 (1969) (VRA Section 5); *Morse v.*

10

*Republican Party*, 517 U.S. 186, 230-34 (1996) (VRA Section 10); *Fla. State Conf. of the NAACP v. Lee*, 576 F. Supp. 3d 974, 989 (N.D. Fla. 2021) (VRA Section 208); *Georgia State Conf. of NAACP*, 2022 WL 18780945, at *4 (VRA Section 2); *cf. Alabama State Conf. of NAACP v. Alabama*, 949 F.3d 647, 652 (11th Cir. 2020) ("The VRA, as amended, clearly expresses an intent to allow private parties to sue the States."), *cert. granted, opinion vacated, and case dismissed as moot*, 141 S. Ct. 2618 (2021). This is equally true of Section 202.

Second, Defendants have not shown that Section 202 is subject to an internal "comprehensive enforcement scheme that is incompatible with individual enforcement under [Section] 1983." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 120 (2005) (quoting *Blessing v. Freestone*, 520 U.S. 329, 341 (1997)). Nothing about Section 202's enforcement mechanism is incompatible with private enforcement via Section 1983. As a remedy for violation of Section 202, the statute states:

> Whenever the Attorney General has reason to believe that a State or political subdivision . . . undertakes to deny the right to vote in any election in violation of section 10502 or 10503 of this title, he may institute for the United States, or in the name of the United States, an action in a district court of the United States, in accordance with sections 1391 through 1393 of title 28, for a restraining order, a preliminary or permanent injunction, or such other order as he deems appropriate. An action under this subsection shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of title 28 and any appeal shall be to the Supreme Court.

11

52 U.S.C. § 10504 ("Section 204") (footnote omitted).[2]

This remedial scheme is far from the "unusually elaborate enforcement provisions" previously held to displace private enforcement under Section 1983. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 253 (2009) (quoting *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 13–14 (1981)). And providing for enforcement by the Attorney General is not evidence that Congress intended to preclude private enforcement under Section 1983. Indeed, the Eleventh Circuit rejected this argument in *Schwier v. Cox*, 340 F.3d 1284, 1296 (11th Cir. 2003), where the court explained that the statute's "provision for enforcement by the Attorney General" did not "require the conclusion that Congress did not intend such a [private] right [of action] to exist" under Section 1983. Other courts have also found that providing for Attorney General enforcement does not preclude private enforcement. *See, e.g.*, *People First of Ala. v. Merrill*, 467 F. Supp. 3d 1179, 1223–24 (N.D. Ala. 2020) (allowing private plaintiffs' Section 201 claim, despite the defendants' argument that such a claim

---

[2] Furthermore, enforcement provisions in Sections 12(f), 3, and 14(e) (52 U.S.C. §§ 10308(f), 10302(a)-(c), and 10310(e)) apply to the entire VRA, including Section 202, and each of them independently demonstrates Congress's intent to create a private remedy, alongside a public one. *See Allen*, 393 U.S. at 555 n.18 (Section 12(f)); *Fla. State Conf. of the NAACP v. Lee*, 576 F. Supp. 3d 974, 989 (N.D. Fla. 2021) (quoting *Ala. State Conf. of NAACP v. Alabama*, 949 F.3d 647, 652 (11th Cir. 2020), *vacated sub nom. as moot by Alabama v. Ala. State Conf. of NAACP*, 141 S. Ct. 2618 (2021)) (Section 3); *Ga. State Conf. of the NAACP*, 2022 WL 18780945, at *5 (Section 14(e)).

could only be brought by the Attorney General under Section 204); *Navajo Nation Hum. Rts. Comm'n v. San Juan Cnty.*, 215 F. Supp. 3d 1201, 1216-1219 (D. Utah 2016) (rejecting the argument that there was no implied private right of action to enforce Section 203 of the Voting Rights Act because Section 204 authorized the Attorney General to bring suit). In fact, it is "[t]he provision of an express, *private* means of redress in the statute itself" that "is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under [Section] 1983." *Rancho Palos Verdes*, 544 U.S. at 121 (emphasis added). Defendants point to no such preexisting, incompatible private means of redress in the statute.[3]

Finally, legislative history also confirms this understanding: Senator Goldwater explicitly stated that he wanted to "authorize[] the Attorney General to institute court actions to enforce compliance with the law" because "[o]therwise, the *only* way the section could be enforced would be through individual, private law suits [sic]." 116 Cong. Rec. 4096 (1970) (emphasis added). In light of the statutory text and construction, along with relevant legislative history, there can be no doubt that Congress enacted Section 202 with the understanding that private individuals could bring enforcement actions to enforce Section 202.

---

[3] At least one court within the Eleventh Circuit has adjudicated a Section 202 claim brought by private individual plaintiffs under Section 1983, and the Supreme Court subsequently affirmed. *See Prigmore v. Renfro*, 356 F. Supp. 427, 430 (N.D. Ala. 1972), *aff'd mem.*, 410 U.S. 919 (1973).

Ultimately, allowing private suits under Section 1983 does not "thwart[] Congress' intent in formulating" a remedy for the Attorney General, *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 253 (2009); "distort the scheme" of enforcement by the Attorney General, *Rancho Palos Verdes*, 544 U.S. at 127; or duplicate a private remedy already explicitly provided, *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1531 (11th Cir. 1997) (quoting *Veal v. Mem'l Hosp.*, 894 F. Supp. 448, 455 (M.D. Ga. 1995)).  This Court should reject Defendants' bare-bones assertion that the existence of a public remedy in Section 202 forecloses a private remedy under Section 1983.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court hold that Section 202 is enforceable by private plaintiffs using Section 1983.

February 27, 2024

| | |
|---|---|
| RYAN K. BUCHANAN<br>United States Attorney<br>600 U.S. Courthouse<br>75 Ted Turner Dr. SW<br>Atlanta, GA 30303 | KRISTEN CLARKE<br>Assistant Attorney General<br>Civil Rights Division |
| AILEEN BELL HUGHES<br>Assistant United States Attorney<br>Georgia Bar No. 375505<br>Aileen.bell.hughes@usdoj.gov | */s/ Holly Berlin*<br>R. TAMAR HAGLER<br>TIMOTHY F. MELLETT<br>JACKI L. ANDERSON<br>HOLLY F.B. BERLIN<br>Illinois Bar No. 6239447<br>Attorneys, Voting Section<br>Civil Rights Division<br>U.S. Department of Justice<br>950 Pennsylvania Avenue NW<br>Washington, D.C. 20530<br>(800) 253-3931<br>Holly.berlin@usdoj.gov |

## CERTIFICATE OF SERVICE

I certify that on February 27, 2024, I filed the foregoing via the CM/ECF system, which sends notice to counsel of record.

*/s/ Holly Berlin*
Holly F.B. Berlin
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530

## **CERTIFICATE OF COMPLIANCE**

  I certify that this document complies with Local Rule 5.1(C) because it is prepared in Times New Roman font at size 14.

              */s/ Holly Berlin*
              Holly F.B. Berlin
              U.S. Department of Justice
              950 Pennsylvania Avenue NW
              Washington, D.C. 20530