**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

INTERNATIONAL ALLIANCE OF
THEATER STAGE EMPLOYEES
LOCAL 927,

                *Plaintiff,*

    v.

JOHN FERVIER, et al.,

                *Defendants,*

REPUBLICAN NATIONAL
COMMITTEE; and GEORGIA
REPUBLICAN PARTY, INC.,

          *Intervenor-Defendants.*

No. 1:23-cv-04929-JPB

## INTERVENORS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

The Plaintiff's response is wrong on the law and short on the facts. The Plaintiff all but concedes that the national absentee-ballot application deadline at issue in this case was not before the Supreme Court in *Oregon v. Mitchell*, 400 U.S. 112 (1970). That the Court resolved the constitutionality of some of the absentee provisions in Section 202 of the Civil Rights Act amendments does not mean it resolved the constitutionality of the absentee-ballot application deadline that the Plaintiff relies on here. That issue is one of first impression for this Court.

The fractured plurality opinions in *Mitchell* are of no help in resolving that first-impression issue. They employ reasoning that the Supreme Court has since rejected, applying rational basis instead of the current congruance-and-proportionality standard. *See id.* at 286 (Stewart, J.). The Plaintiff makes little effort to meet the current legal standard. And the absentee-application deadline falls short: it has next to no history supporting it, and it is neither congruent nor proportional to the problems it purports to solve. *See City of Boerne v. Flores,* 521 U.S. 507, 530-32 (1997).

Congress's enumerated powers can't support the absentee-application deadline, so the Plaintiff turns to extra-constitutional theories. It argues that the Necessary and Proper Clause is a possible source of the legislation. But that clause is not an independent source of *any* legislation—the Plaintiff must still identify an enumerated power that supports the law. *See* U.S. Const. art. I, §8. The Plaintiff next suggests that Congress has an unenumerated power to pass legislation protecting the right to interstate travel. That's also wrong— Congress has no *un*enumerated powers at all. *See id.* To the extent Congress acts to "enforce" the "privileges or immunities" of citizenship—such as the right to interstate travel or the right to vote—it must do so with "appropriate legislation." U.S. Const. amend. XIV, §§1, 5. And that takes the Plaintiff back to the congruence-and-proportionality test, which it flunks.

Congress had no authority to enact the absentee-application provision. *Oregon v. Mitchell* did not reach the issue. And the approach of the plurality opinions is not consistent with current Supreme Court precedent. Under current law, the absentee-application provision is unconstitutional. That

means that the Plaintiff fails to state a claim that Georgia's absentee-application deadline violates federal law, and this Court should dismiss the complaint.

## I.    No court has resolved the constitutionality of the absentee-application deadline.

The Supreme Court did not address the national absentee-application deadline in *Oregon v. Mitchell*. As the Intervenors explained in their motion to dismiss, none of the four cases consolidated in *Mitchell* raised the constitutionality of that deadline. *See* Mot. at 6-7, 12-13 (Doc. 66). The case against Idaho was the only one of the four cases that raised Section 202's absentee-voting rules. But that complaint didn't concern the application deadline at issue here, which requires States to permit qualified voters "who may be absent from their election district or unit" to vote by absentee ballot in presidential elections "who have applied therefor not later than seven days immediately prior to such election." 52 U.S.C. §10502(d). Hence, *Mitchell* never addressed Section 202's absentee-application deadline.

The Plaintiff doesn't dispute these facts. It also doesn't dispute the basic Article III principle that courts can't issue judgments beyond the case or controversy before them. *See, e.g.*, *Oklahoma v. Texas*, 272 U.S. 21, 42-43 (1926); *City of Vicksburg v. Henson*, 231 U.S. 259, 269 (1913). Add up those concessions, and the Court is left with one conclusion: *Mitchell* does not resolve the validity of the absentee-application deadline. That's true regardless of how broadly the Plaintiff tries to frame the plurality's agreement in *Mitchell*. *Cf.* Pl. Resp. at 2, Doc. 92. The provision wasn't before the Court, so even a unanimous opinion couldn't have resolved its constitutionality.

The Plaintiff nevertheless argues that "binding precedent" requires this Court to uphold the constitutionality of the absentee-application deadline. Pl. Resp. 2. That makes no sense. *Mitchell* didn't *raise* the constitutionality of the application deadline, so the case couldn't have *resolved* the constitutionality of the application deadline. The Plaintiff urges this Court to read the opinion as broadly holding that "Section 202(d) is constitutional." Pl. Resp. (Doc. 92) at 2. But that's not how courts apply precedent. Rather, courts should read judgments "in connection with the pleadings" and construe them no "broader than is required" to resolve "the issues that have been decided" in that case. *City of Vicksburg*, 231 U.S. at 269.

The Supreme Court no more resolved *all provisions* of Section 202 in *Oregon v. Mitchell* than this Court resolved *all provisions* of S.B. 202 by upholding portions of that law against federal challenges. *E.g.*, *In re Ga. S.B. 202*, 2024 WL 150500, at *10 (N.D. Ga. Jan. 12, 2024) (denying preliminary injunction as to various provisions of S.B. 202, including the absentee-application deadline challenged here). Plaintiffs even opposed marking this case as related to the other S.B. 202 cases, arguing that the "common relevance" of election provisions "does not guarantee substantive overlap among challenges to discrete pieces of the bill." Pl. Resp. to Notice of Related Cases at 2-3, Doc. 34. Marking cases as related is discretionary, but interpreting the law is not. And that the Supreme Court upheld some parts of Section 202 does not mean it upheld all parts of Section 202.

Careful application of precedent is even more critical when interpreting a splintered opinion like *Mitchell*. That's why the Supreme Court has declined

to attribute binding precedential value to the plurality opinions in that case. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 16 n.8 (2013) (noting that the opinion of "four Justices" in *Mitchell* who "relied on the Fourteenth Amendment … is of minimal precedential value"). The Plaintiff, however, reads the plurality opinions broadly to cobble together high-level agreement about "Section 202(d)." Pl. Resp. at 2. That's exactly how *not* to read plurality opinions. *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" (citation omitted)).

The Intervenors have shown that the absentee-application deadline was not at issue in *Oregon v. Mitchell*. The Plaintiff doesn't dispute that. This Court need only observe that fact and apply standard rules of judicial interpretation. The necessary conclusion is that none of the plurality's reasoning in *Oregon v. Mitchell* is binding in this case. Nor, as the next sections show, is it persuasive.

## II.   The seven-day deadline is not a valid exercise of Congress's remedial power under the Fourteenth Amendment.

Section 5 of the Fourteenth Amendment gives Congress "power to enforce" the provisions of the Amendment "by appropriate legislation." U.S. Const. amend. XIV, §5. One of those provisions prohibits States from abridging "the privileges or immunities of citizens of the United States." *Id.*, §1. "Congress' power under §5 … is limited to adopting measures to enforce the guarantees of the Amendment." *Saenz v. Roe*, 526 U.S. 489, 508 (1999) (cleaned up). The Plaintiff offers two "privileges or immunities" that Congress purports

to protect with the absentee-application deadline: the right to vote, and the right to interstate travel. A few of the Justices in *Oregon v. Mitchell* offered both theories, but neither justify the absentee-application deadline under current Supreme Court precedent.

The Plaintiff's first error is a non-sequitur: it argues that because the Constitution protects the right to travel and the right to vote, any legislation claiming to protect those rights is valid. The Plaintiff thus cites a litany of cases addressing whether certain state laws violate the constitutional right to interstate travel. Pl. Resp. at 3-4. But as the Plaintiff later argues, those cases "say[] nothing at all about congressional *power* to protect the right to travel." Pl. Resp. at 4 (emphasis added). Pointing out that the "Constitution indisputably protects 'the right to go from one place to another,'" Pl. Resp. at 3, says nothing about whether a law is an "appropriate" exercise of Congress's power to remedy violations of that right, U.S. Const. amend. XIV, §5. To justify the absentee-application deadline, the Plaintiff must show "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997). The Plaintiff fails that test for two independent reasons.

*First*, the Plaintiff has not shown "a history of unconstitutional discrimination to support Congress's determination that prophylactic legislation was necessary." *Ass'n for Disabled Americans, Inc. v. Fla. Int'l Univ.*, 405 F.3d 954, 957 (11th Cir. 2005). The most the Plaintiff can muster is a single statement by a single Senator arguing that "some" States "impose unrealistic cutoff dates on the time when persons can apply for absentee

ballots." Pl. Resp. at 6 (quoting 116 Cong. Rec. S6991 (Mar. 11, 1970) (Statement of S. Goldwater)). That lone opinion is a far cry from the "document[ed] pattern of unequal treatment in the administration of a wide range of public services, programs, and activities" that typically support Congress's remedial power. *Tennessee v. Lane*, 541 U.S. 509, 525 (2004) (upholding the constitutionality of the Americans with Disabilities Act).

The bare evidence here is orders of magnitude less than the evidence that supported the Religious Freedom Restoration Act, which suffered from a fatal "lack of support in the legislative record." *Boerne*, 521 U.S. at 531. If a lack of support doomed RFRA, the support for the absentee-application deadline falls far short of the history required "to support Congress's determination that prophylactic legislation was necessary." *Ass'n for Disabled Americans*, 405 F.3d at 957. "Preventive measures prohibiting certain types of laws may be appropriate when there is reason to believe that many of the laws affected by the congressional enactment have a significant likelihood of being unconstitutional." *Id.* at 532. But at most, Senator Goldwater opined that "some" of the of the States' application deadlines were "unrealistic." 116 Cong. Rec. S6991. The Plaintiff provides no evidence that even a single lawmaker thought that "many" of the States' application deadlines were "unconstitutional." *Boerne*, 521 U.S. at 532.

Even if that history supported the absentee-application deadline at the time, the Plaintiff has not shown that the deadline's "current burdens" are "justified by current needs." *Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 203 (2009); *see also Boerne*, 521 U.S. at 518 (applying cases that

addressed "Congress' parallel power to enforce the provisions of the Fifteenth Amendment"). The Plaintiff's only support is "based on decades-old data and eradicated practices." *Shelby Cnty. v. Holder*, 570 U.S. 529, 550 (2013). Even if Senator Goldwater's single statement could have supported a national absentee-application deadline at the time of enactment, the Plaintiff makes no attempt to present current evidence supporting that provision today.

*Second*, even if the national absentee-application deadline were supported by history, it is "so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior." *Id.* As the motion to dismiss explains, the absentee-application deadline is both over and underinclusive. Mot. at 10-11. The deadline is overinclusive because it applies not only to *inter*state voters, but also to in-state voters who are merely "absent from their election district or unit." 52 U.S.C. §10502(d). And the deadline is underinclusive because it applies only to presidential elections, not to state and congressional elections. If Congress truly sought to protect the right to interstate travel and the right to vote, limiting its absentee balloting rules to presidential elections is not "tailored 'to remedying or preventing … conduct'" that violates those rights. *Nw. Austin*, 557 U.S. at 225. The Plaintiff had no answer to these features of the law.

The agreement of six Justices in *Oregon v. Mitchell* that durational residency requirements were "appropriate legislation" to protect the right to interstate travel only proves that the absentee-application provision is not congruent and proportional. U.S. Const. amend. XIV, §5. Justice Douglas

reasoned that "[b]y definition, the imposition of a durational residence requirement operates to penalize those persons, and only those persons, who have exercised their constitutional right of interstate migration." *Mitchell*, 400 U.S. at 215 (op. of Douglas, J.). And Justice Stewart applied a lower standard than the Supreme Court now requires, concluding that "Congress could rationally conclude that the imposition of durational residency requirements unreasonably burdens and sanctions the privilege of taking up residence in another State." *Id.* at 286 (Stewart, J.). But courts now must apply the congruence-and-proportionality test, not rational basis. *Boerne*, 521 U.S. at 520. Under that standard, a national absentee-application deadline that applies to *all residents* of *all States* regardless of their interstate travel status is neither congruent nor proportional to protecting the right to interstate travel.

That the Justices upheld absentee balloting in presidential elections also doesn't require this Court to uphold all provisions of Section 202(d). When courts scrutinize Congress's remedial power, they do so by examining the provision at issue, not the act as a whole. *E.g.*, *Shelby Cnty.*, 570 U.S. at 556-57. Even if requiring absentee balloting was supported by substantial evidence and tailored to protecting the right to interstate travel, the absentee-application deadline is not. It was an add-on that Congress did not support with legislative findings, and it is poorly tailored to securing any of the rights that absentee voting itself protects.

Finally, the Necessary and Proper Clause is not a free pass by Section 5's congruence-and-proportionality requirements. The allowance for laws that

are necessary and proper is built into Section 5's requirement that legislation be "appropriate." *See Boerne*, 521 U.S. at 525 ("The Enforcement Clause, the Court said, did not authorize Congress to pass 'general legislation upon the rights of the citizen, but corrective legislation, that is, such as may be necessary and proper for counteracting such laws as the States may adopt or enforce, and which, by the amendment, they are prohibited from making or enforcing.'" (citation omitted)). In fact, when they chose the phrase "appropriate legislation," the drafters of the Fourteenth and Fifteenth Amendments "invoked Chief Justice Marshall's formulation of the scope of Congress' powers under the Necessary and Proper Clause." *Shelby Cnty.*, 570 U.S. at 567 (Ginsburg, J., dissenting). The Necessary and Proper Clause does not enlarge Congress's remedial powers under the Fourteenth Amendment. And it does not absolve this Court from applying the congruence-and-proportionality test.

### III.   The Necessary and Proper Clause and the right to interstate travel are not freestanding sources of congressional power.

Left with no enumerated powers supporting the absentee-application deadline, the Plaintiff turns to unenumerated powers. But those don't exist. The Constitution "vest[s]" Congress with only the "legislative Powers" that are "granted" in Article I. U.S. Const. art. I, §1. Those powers are "few and defined." The Federalist No. 45, p. 328 (B. Wright ed. 1961) (J. Madison). And "[e]very law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *United States v. Morrison*, 529 U.S. 598, 607 (2000). The Plaintiff offers a few theories about which power justifies a national absentee-application deadline, but none are valid.

The Plaintiff begins by arguing that the Necessary and Proper Clause is the source of Congress's authority. But that clause is not an independent grant of power. Rather, "[i]t is a right incidental to the [enumerated] power, and conducive to its beneficial exercise." *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 418 (1819). The Necessary and Proper Clause grants Congress the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution *the foregoing Powers*, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. art. I, §8 (emphasis added). "Although the Clause gives Congress authority to 'legislate on that vast mass of incidental powers which must be involved in the constitution,' it does not license the exercise of any 'great substantive and independent power[s]' beyond those specifically enumerated." *NFIB v. Sebelius*, 567 U.S. 519, 559 (2012) (op. of Roberts, C.J.) (quoting *McCulloch*, 17 U.S. at 411, 421).

The Plaintiff argues that the absentee-application deadline is necessary and proper to provide for absentee balloting in presidential elections. Pl. Resp. at 2. But when courts analyze whether a law is valid under the Necessary and Proper Clause, they ask "whether the statute constitutes a means that is rationally related to the implementation of a *constitutionally enumerated* power." *United States v. Comstock*, 560 U.S. 126, 134 (2010) (emphasis added). The Justices in *Oregon v. Mitchell* could not agree which enumerated power authorized Congress to provide for absentee balloting in presidential elections. *See* Mot. 5-6. But the Plaintiff must identify which "enumerated power" authorizes absentee balloting in presidential elections and then prove that the

absentee-application deadline is "rationally related to the implementation" of that enumerated power. *Comstock*, 560 U.S. at 134. It has done neither.

The Plaintiff next tries to bypass Congress's enumerated powers by suggesting that Congress has an *un*enumerated authority to protect the right to interstate travel. Quoting a line out of context from *Griffin v. Breckenridge*, Pl. Resp. at 3, the Plaintiff argues that Congress doesn't need an enumerated power to pass legislation to protect the right to interstate travel because that right "is within the power of Congress to protect by appropriate legislation." *Griffin v. Breckenridge*, 403 U.S. 88, 106 (1971). But that's just a paraphrase of the Fourteenth Amendment, which grants Congress power "to enforce, by appropriate legislation" the "privileges or immunities" of citizenship—such as the right to interstate travel. U.S. Const. amend. XIV, §5. And that takes the Plaintiff back to the congruent-and-proportional test for remedial legislation.

The four cases cited in *Griffin* each prove that when Congress protects the right to interstate travel, it must do so under an enumerated power. *United States v. Guest* held that "the federal commerce power authorizes Congress to legislate for the protection of individuals from violations of civil rights that impinge on their free movement in interstate commerce." 383 U.S. 745, 759 (1966). The Plaintiff doesn't argue that voters are engaging in interstate commerce. That's because the "Commerce Clause cannot be seriously relied on to sustain the Act." *Mitchell*, 400 U.S. at 215 (Harlan, J., concurring in part and dissenting in part). Next, *United States v. Classic* discussed Congress's power to protect the right to interstate travel "by the exercise of its powers to regulate elections under [Article I, §4]." 313 U.S. 299, 315 (1941). But the

absentee-ballot provisions in the 1970 Amendments apply to presidential elections, not to congressional elections, so the Elections Clause in Article I, §4 doesn't apply. And the last two cases—*Ex parte Yarbrough* and *Oregon v. Mitchell*—discussed Congress's remedial powers under Fourteenth and Fifteenth Amendments. *See Ex parte Yarbrough*, 110 U.S. 651, 665 (1884); *Mitchell*, 400 U.S. at 150 (op. of Douglas, J.); *id.* at 237-38 (Brennan, J., concurring).

In sum, Congress does not have a freestanding power to enact legislation to protect the right to interstate travel. It has an *enumerated* power to protect the "privileges or immunities" of citizenship—such as the right to interstate travel—through "appropriate legislation." U.S. Const. amend. XIV, §§1, 5. And that legislation must be congruent and proportional to the injury addressed. *Boerne,* 521 U.S. at 519. Congress could conceivably act under one of its other powers, but none of the usual suspects apply: the Commerce Clause "cannot be seriously relied on to sustain" election laws such as this one. *Mitchell*, 400 U.S. at 215 (Harlan, J., concurring in part and dissenting in part). The congressional Elections Clause doesn't apply because the absentee provisions at issue here apply only to presidential elections. And the presidential Electors Clause gives States—not Congress—sole power over the "manner" of selecting presidential electors. *See id.* at 210-11; U.S. Const. art. II, §1. That leaves Congress's remedial powers under the Fourteenth Amendment. But for the reasons explained above, the Plaintiff hasn't shown that the absentee-application deadline is a valid exercise of that power.

## CONCLUSION

The Court should dismiss the Plaintiff's amended complaint.


Dated: May 31, 2024                          Respectfully submitted,

                                             /s/ Alex Kaufman

Thomas R. McCarthy*                          Alex B. Kaufman
Gilbert C. Dickey*                           GA BAR 13607
Conor D. Woodfin*                            CHALMERS, ADAMS, BACKER &
CONSOVOY MCCARTHY PLLC                          KAUFMAN, LLC
1600 Wilson Boulevard                        11770 Haynes Bridge Road
Suite 700                                    #205-219
Arlington, VA 22209                          Alpharetta, GA 30009-1968
(703) 243-9423                               (404) 964-5587
tom@consovoymccarthy.com                     akaufman@chalmersadams.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

*admitted *pro hac vice*

*Counsel for Intervenors*

14

## CERTIFICATE OF COMPLIANCE

This document complies with Local Rule 5.1(B) because it uses 13-point Century Schoolbook.

*/s/ Alex Kaufman*


## CERTIFICATE OF SERVICE

On May 31, 2024, I e-filed this document on ECF, which will email everyone requiring service.

*/s/ Alex Kaufman*