UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| INTERNATIONAL ALLIANCE OF THEATER STAGE EMPLOYEES LOCAL 927,<br><br>*Plaintiff*,<br><br>v.<br><br>JOHN FERVIER, et al.,<br><br>*Defendants*,<br><br>REPUBLICAN NATIONAL COMMITTEE; and GEORGIA REPUBLICAN PARTY, INC.,<br><br>*Intervenor-Defendants*. | No. 1:23-cv-04929-JPB |

**INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

The International Alliance of Theater Stage Employees could have moved for a preliminary injunction six months ago, when it filed its complaint. It could have moved for one in January when it amended its complaint and narrowed its request for relief. And the Alliance could have moved for a preliminary injunction at any time in February, March, or April. Instead, the Alliance waited until the very last day in April to move for preliminary relief. That six-month delay undermines its claim that speedy relief is necessary.

The Alliance's motion fails for other reasons as well. As the Intervenors explained in their motion to dismiss, the Alliance fails to state a claim because

this Court cannot constitutionally apply the federal deadline the Alliance relies on. Even if the Alliance had stated a claim, it has not shown that its members will suffer irreparable harm. Deadlines are a normal, necessary part of elections. Every member of the Alliance can submit an application that is timely under Georgia's rules. They can do this, moreover, even if they have been called out of the State on short notice, or if they think there is a chance that might happen. And in any event, a voter who submits a ballot late—much less an *application* for a ballot—has not suffered irreparable injury because of the deadline. She just failed to exercise the minimum diligence required to vote by absentee ballot. Finally, the State has strong interests in enforcing its laws. That is especially true when it comes to elections. Conducting elections by judicial fiat rather than legislatively enacted rules undermines public confidence and thwarts the democratic process. The Court should thus deny the preliminary injunction motion.

## ARGUMENT

A preliminary injunction is an "extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden." *Georgiacarry.org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015). That burden requires the plaintiff to show a "substantial likelihood" of success on the merits, irreparable injury absent an injunction, that the balance of the equities favors them, and that an injunction favors the public interest. *Id*. The Alliance cannot meet its burden on the merits or on the equities.

## I. The Alliance is not likely to succeed on its claim that Georgia's absentee-application deadline violates federal law.

The Intervenors have explained in their motion to dismiss why the amended complaint fails to state a claim: Congress has no power to displace state deadlines for absentee-ballot applications. Interv. Mot. to Dismiss Am. Compl. (Doc. 66). Neither the Constitution nor judicial precedent permit the preemption argument that the Alliance makes here. That motion is fully briefed, and the Intervenors incorporate those arguments here. For the same reasons the Court should dismiss the complaint, it should deny the preliminary injunction motion on the merits.

## II. The Alliance's undue delay defeats its claims of irreparable harm.

"[A] party requesting a preliminary injunction must generally show reasonable diligence." *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (per curiam). The "balance of the equities … tilt[s] against" a party who cannot show reasonable diligence. *Id.*; *see also Adventist Health Sys./Sunbelt, Inc. v. HHS*, 17 F.4th 793, 806 (8th Cir. 2021) (Delay "means that the balance of the equities favors the denial of a preliminary injunction."). This principle "is as true in election law cases as elsewhere." *Benisek*, 138 S. Ct. at 1944. Delay also "militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2021); *see also Adventist Health Sys.*, 17 F.4th at 806 (delay "refuted … allegations of irreparable harm.").

The Alliance failed to act with reasonable diligence in moving for a preliminary injunction. The Alliance filed its complaint in October of last year. It requested preliminary injunctive relief in its complaint but did not move for preliminary relief at that time. *See* Compl. (Doc. 1) at 10. The State and the

Intervenors moved to dismiss the Alliance's complaint and forced concessions from the Alliance. The Intervenors argued that the Alliance's request for relief as to all voters was improper because the federal seven-day deadline applies—if at all—only to voters who are "'absent from their election district' on election day." Interv. Mot. to Dismiss (Doc. 52) at 18-20 (quoting 52 U.S.C. §10502(d)). The Alliance conceded. Instead of filing a response, the Alliance amended its complaint to request relief only for "voters who may be absent from their voting district on election day, in elections for President and Vice President." Am. Compl. (Doc. 62) at 13. Again, the Alliance requested a preliminary injunction in its complaint. But again, the Alliance failed to move for preliminary relief.

The Alliance's repeated failure to move for a preliminary injunction over the last six months shows "that the harm would not be serious enough to justify a preliminary injunction." *Adventist Health Sys.*, 17 F.4th at 805 (quoting Wright & Miller, 11A Fed. Prac. & Proc., §2948.1 & n.13 (3d ed. 2013)). "[A] party's failure to act with speed or urgency in moving for a preliminary injunction *necessarily undermines* a finding of irreparable harm." *Wreal*, 840 F.3d at 1248 (emphasis added).

Far more modest delays have defeated requests for a preliminary injunction. *Wreal* found that a "five-month delay" supported denial of a preliminary injunction. *Id.* A delay "even of only a few months," the Eleventh Circuit explained, "militates against" a preliminary injunction. *Id.* This Court should reach the same conclusion based on the Alliance's unexplained six-month delay.

The Alliance's circumstances today are exactly the same as six months ago. Even ongoing discovery does not excuse a party for delay in seeking for a preliminary injunction. *See Benisek*, 138 S. Ct. at 1944 (privilege disputes that "delayed the completion or discovery … d[id] not change the fact that plaintiffs could have sought a preliminary injunction much earlier"). And delay is especially unjustified when "the preliminary-injunction motion relied exclusively on evidence that was available" earlier. *Wreal*, 840 F.3d at 1248-49 (rejecting preliminary-injunction motion based on evidence "available" to the moving party "at the time it filed its complaint"). The Alliance has the same evidence available today that it had six months ago. And no other circumstances have changed.

The Alliance's delay cannot be excused because the 2024 election was not impending six months ago. At most, the time until the 2024 election might support an argument that the Alliance is only now facing irreparable injury. But courts have "reject[ed] [the] implausible assertion of law" that "delay bears on irreparable harm only where the plaintiff delays despite suffering the harm." *Adventist Health Sys.*, 17 F.4th at 806 (cleaned up). More importantly, "the balance of the equities" would still "tilt[]" against the Alliance because of its delay. *Benisek*, 138 S. Ct. at 1944. In fact, the Supreme Court rejected a delayed request for preliminary relief looking only to the balance of the equities and public interest, not irreparable harm, in *Benisek*. *See id*. The same is true here. The Alliance's "unreasonable delay … means that the balance of the equities favors the denial of a preliminary injunction." *Adventist Health Sys.*, 17 F.4th at 806.

Even if the Alliance had not delayed, it still has not shown irreparable harm. Deadlines are an essential and unavoidable part of the election process. "[V]oting necessarily requires some effort and compliance with some rules" such as filling out ballots, meeting deadlines, and traveling to polls. *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2338 (2021). The Alliance speculates that "some" of its members "may be unable to comply with Georgia's earlier deadline." Doc. 83-1 at 13. And it claims that in 2017—"had 2017 been an election year"—some of its members would have been traveling "between Georgia's current 11-day deadline and the 7-day deadline." Herman Decl. (Doc. 83-3) at 6. But the Alliance has no evidence of an election in which its members failed to meet the 11-day deadline but would have met the 7-day deadline. And it has no evidence that those unprecedented events will occur this year.

Even if the Alliance had evidence that its members wouldn't meet the deadline, "Georgia has provided numerous avenues to mitigate chances that voters will be unable to cast their ballots." *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1281 (11th Cir. 2020). Some members speculate that they "may not learn of the need to vote absentee until one to two weeks prior to election day." Bailey Decl. (Doc. 83-4) at 4. But even if those speculations come to pass, those members still have plenty of time to request a ballot. Beginning in August, months before the election, they can submit the absentee-ballot application online, by email, by mail, by fax, or by delivering it in person.[1] And if those members think they "may" be out of town, Bailey Decl. at 4, nothing prevents them from requesting an absentee ballot the day the applications

---

[1] Georgia.gov, *Vote by Absentee Ballot*, georgia.gov/vote-absentee-ballot.

6

become available. Georgia does not require an excuse to vote by absentee ballot. And if the member happens to stay in town on election day, she can still vote in person so long as she has not yet submitted her absentee ballot.

These multiple options mean that ordinary voting regulations (such as "Georgia's Election Day deadline" for absentee ballots) do "not implicate the right to vote at all." *New Ga. Project*, 976 F.3d at 1281. "[I]t is just not enough to conclude that if some ballots are likely to be rejected because of a rule, 'the burden on many voters will be severe.'" *Id.* Much less is speculation that some voters might submit late absentee *applications* enough to conclude that the Alliance's members will suffer *irreparable harm* to their voting rights.

### III. The Alliance has not shown that the balance of the equities and the public interest weigh in favor of granting a preliminary injunction.

Because the State defendants oppose preliminary relief, the last two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). And those factors—equities and the public interest—strongly favor denying the motion and preserving the status quo.

The State has a strong interest in enforcing duly enacted laws. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). The State suffers "irreparable harm" when it cannot "apply its own laws." *Hand v. Scott*, 888 F.3d 1206, 1214 (11th Cir. 2018).

The State's interests are particularly strong in the election context. "A State indisputably has a compelling interest in preserving the integrity of its

7

election process." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (citation omitted). Clear deadlines enacted by the Legislature help preserve voter confidence. *See Brnovich*, 594 U.S. at 685 (discussing absentee-voting rules that "improve[] voter confidence"). In contrast, "[c]ourt orders affecting elections," can "result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4-5. The State has a strong interest in enforcing its duly enacted laws and in avoiding the public confusion that results from federal courts interfering in democratically enacted election procedures.

## CONCLUSION

The Court should deny the Alliance's motion for preliminary injunction.

Dated: June 7, 2024

Respectfully submitted,

*/s/ Alex Kaufman*

Thomas R. McCarthy\*
Gilbert C. Dickey\*
Conor D. Woodfin\*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard
Suite 700
Arlington, VA 22209
(703) 243-9423
tom@consovoymccarthy.com
gilbert@consovoymccarthy.com
conor@consovoymccarthy.com

Alex B. Kaufman
GA BAR 13607
CHALMERS, ADAMS, BACKER &
 KAUFMAN, LLC
11770 Haynes Bridge Road
#205-219
Alpharetta, GA 30009-1968
(404) 964-5587
akaufman@chalmersadams.com

\*admitted *pro hac vice*

*Counsel for Intervenors*

## CERTIFICATE OF COMPLIANCE

This document complies with Local Rule 5.1(B) because it uses 13-point Century Schoolbook.

/s/ Alex Kaufman

## CERTIFICATE OF SERVICE

On June 7, 2024, I e-filed this document on ECF, which will email everyone requiring service.

/s/ Alex Kaufman