UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

INTERNATIONAL ALLIANCE OF
THEATER STAGE EMPLOYEES
LOCAL 927,

      Plaintiff,

   v.

JOHN FERVIER, et al.,

      Defendants.

CIVIL ACTION NO.:
1:23-CV-04929-JPB

## ORDER

This matter is before the Court on John Fervier, Edward Lindsey, Janice W.

Johnston, Sara Tindall Ghazal and Rick Jeffares's (collectively, "State

Defendants")[1] Motion to Dismiss Amended Complaint [Doc. 68].  This Court finds

as follows:

## BACKGROUND

This voting case concerns the deadline for submitting an absentee ballot

application.  To vote absentee in Georgia, a voter must first submit an application.

Before 2021, Georgia law allowed a voter to submit his or her application as early

---

[1] State Defendants—all members of the Georgia State Election Board—are sued in their
official capacities.

as 180 days before an election and as late as four days before an election.  [Doc. 62, p. 9].  Senate Bill 202 ("S.B. 202"), which was passed in 2021, changed this rule.  Under S.B. 202, applications cannot be submitted earlier than seventy-eight days before the election and will not be accepted if submitted fewer than eleven days before the election.  O.C.G.A. § 21-2-381(a)(1)(A).  According to Plaintiff, this provision violates § 10502(d) of the Voting Rights Act, which provides that:

> [E]ach State shall provide by law for the casting of absentee ballots for the choice of electors for President and Vice President, or for President and Vice President, by all duly qualified residents of such State who may be absent from their election district or unit in such State on the day such election is held and who have applied therefor not later than seven days immediately prior to such election and have returned such ballots to the appropriate election official of such State not later than the time of closing of the polls in such State on the day of such election.

52 U.S.C. § 10502(d).

Plaintiff is an association of more than 190 professionals who work behind the scenes at live theater and television productions throughout Georgia and the United States.  [Doc. 62, p. 5].  Plaintiff alleges that this type of work requires frequent "travel around and outside of Georgia, often on short notice."  Id. at 3.  Plaintiff contends that "[i]t is a virtual certainty that [its members] will be called on to work outside of their voting jurisdiction during the 2024 presidential election, as evidenced by the fact that in every year dating back to at least 2016 . . . members

have been on the road touring with productions on . . . election day." Id. at 6. According to Plaintiff, its members "will be forced to travel during the election but will not know of their need to vote absentee until shortly before election day, including during the period between Georgia's absentee application deadline and the federally mandated seven-day period."[2] Id. at 3–4.  As such, Plaintiff claims that S.B. 202's "premature deadline [of eleven days] threatens to make it more difficult for [its] members to vote because it restricts their legally protected opportunities to request and cast an absentee ballot." Id. at 6.

On October 26, 2023, Plaintiff filed suit against State Defendants.[3]  [Doc. 1]. On January 29, 2024, Plaintiff filed an Amended Complaint for Declaratory and Injunctive Relief ("Amended Complaint").  [Doc. 62].  State Defendants moved to dismiss Plaintiff's Amended Complaint on February 12, 2024.  [Doc. 68].  Plaintiff filed its opposition [Doc. 69] on February 26, 2024, and the United States of

---

[2] Plaintiff alleges that in the past, its members "received their touring assignment more than seven days prior to the election—which would allow them to request an absentee ballot under the deadline imposed by the Voting Rights Act."  [Doc. 62, p. 7].  Plaintiff makes no allegations regarding the eleven-day deadline.

[3] Plaintiff also sued Patrise Perkins-Hooker, Aaron V. Johnson, Michael Heekin and Teresa K. Crawford, who are members of the Fulton County Registration and Election Board (collectively, "County Defendants").  County Defendants are not parties to the motion currently before the Court.

America filed a Statement of Interest [Doc. 70] on February 27, 2024.  The motion is now ripe for review.

## DISCUSSION

State Defendants argue that dismissal is required because Plaintiff lacks standing.[4]  Standing is jurisdictional, see Cone Corp. v. Fla. Dep't of Transp., 921 F.2d 1190, 1203 n.42 (11th Cir. 1991), and a motion to dismiss for lack of standing can rest on either a facial or factual challenge to the complaint, see Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008). In evaluating a facial challenge, a court considers only the allegations in the complaint and accepts them as true, whereas in a factual challenge, a court considers matters outside the pleadings, such as testimony and affidavits.  See Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003).  Here, the parties do not reference matters outside the pleadings.  Therefore, the Court will evaluate State Defendants' standing argument as a facial challenge and will limit its analysis to the facts alleged in the Amended Complaint.

Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  To satisfy this

---

[4] State Defendants also contend that dismissal is warranted because 52 U.S.C. § 10502(d) cannot be enforced by a private right of action.

case and controversy requirement, litigants must have standing.  <u>Lujan v. Defs. of</u>

<u>Wildlife</u>, 504 U.S. 555, 560 (1992).  The standing doctrine requires a plaintiff to

show that he:  (1) suffered an injury-in-fact (2) that is fairly traceable to the

challenged conduct of the defendant and (3) that is likely to be redressed by a

favorable judicial decision.  <u>Id.</u> at 560–61.  "These three elements 'are not mere

pleading requirements but rather an indispensable part of the plaintiff's case.'"  <u>Ga.</u>

<u>Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration &</u>

<u>Elections</u>, 36 F.4th 1100, 1113 (11th Cir. 2022) (quoting <u>Lujan</u>, 504 U.S. at 561).

In challenging Plaintiff's standing to bring suit, State Defendants assert that

the allegations in Plaintiff's Amended Complaint are not sufficient to show any of

the three elements of standing.  The resolution of the instant motion turns on

traceability and redressability.[5]

"When traceability and redressability are at stake, the key questions are who

caused the injury and how it can be remedied."  <u>City of S. Miami v. Governor</u>, 65

F.4th 631, 640 (11th Cir. 2023).  For traceability, the Eleventh Circuit Court of

Appeals has held that "[t]he injury must be 'fairly traceable to the challenged

action of the defendant, and not the result of the independent action of some third

party not before the court.'"  <u>Ga. Ass'n of Latino Elected Offs.</u>, 36 F.4th at 1115–

---

[5] In deciding this motion, the Court assumes that Plaintiff has satisfied the injury-in-fact
requirement.

16 (quoting <u>Lujan</u>, 504 U.S. at 560–61).  Stated another way, traceability requires that the injury must have been caused by the defendant's actions.  <u>Finn v. Cobb Cnty. Bd. of Elections & Registration</u>, 682 F. Supp. 3d 1331, 1339 (N.D. Ga. 2023).  Redressability is a closely related concept.  To show redressability, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision'" of the court.  <u>Lujan</u>, 504 U.S. at 561 (quoting <u>Simon v. E. Ky. Welfare Rts. Org.</u>, 426 U.S. 26, 38 (1976)).  The Court will discuss traceability first.

### I.  Traceability

As explained above, to satisfy the causation requirement of standing, a plaintiff's injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court."  <u>Id.</u> at 560.  In this case, Plaintiff contends that its members are injured because their absentee ballot applications may be rejected as untimely.  Thus, for Plaintiff to have standing, the rejection of the application must be traceable to State Defendants.  Significantly, Plaintiff does not dispute that the immediate responsibility for processing absentee ballot applications rests with county election officials—the registrar or the absentee ballot clerk.  [Doc. 69, p. 15].  Indeed, O.C.G.A. § 21-2-381(b)(1) states that "[u]pon receipt of a timely

application for an absentee ballot, a registrar or absentee ballot clerk shall enter

thereon the date received.  The registrar or absentee ballot clerk shall verify the

identity of the applicant and determine . . . if the applicant is eligible to vote."  If

found eligible, the registrar or absentee ballot clerk mails the ballot to the voter.

O.C.G.A. § 21-2-381(b)(2)(A).  Notably, "[i]f found ineligible or if the application

is not timely received, the clerk or the board of registrars shall deny the application

by writing the reason for rejection in the proper space on the application and shall

promptly notify the applicant in writing of the ground of ineligibility."  O.C.G.A. §

21-2-381(b)(3).

Even though Plaintiff concedes that the primary responsibility for processing

absentee ballot applications rests with county election officials (i.e., the registrar or

absentee ballot clerk), Plaintiff argues that it has established traceability because

State Defendants oversee and enforce Georgia election law.  [Doc. 69, p. 15–16].

Specifically, Plaintiff argues that the injury is traceable to State Defendants

because they have rulemaking authority in that they are authorized by the state

legislature "to formulate, adopt, and promulgate such rules and regulations,

consistent with law, as will be conducive to the fair, legal, and orderly conduct of .

. . elections."  Id. at 16.  According to Plaintiff, State Defendants also have a

statutory duty to promulgate rules and regulations so as to obtain uniformity in the practices and proceedings of county election officials.  Id.

The Court is not convinced that this general rulemaking authority is sufficient to establish traceability.  In Jacobson v. Florida Secretary of State, the Eleventh Circuit considered a constitutional challenge to the order in which the names of candidates appeared on the Florida election ballot.  974 F.3d 1236, 1253 (11th Cir. 2020).  In that case, the plaintiffs sued the Florida Secretary of State.  Id. at 1242.  At trial, the district court acknowledged that nonparty supervisors—not the Secretary—were charged under Florida law with placing candidates on the ballot in the correct order.  Id. at 1244.  Nevertheless, the district court determined that the plaintiffs had standing to sue the Secretary because she was Florida's chief election officer.  Id. at 1243–44.

On appeal, the Eleventh Circuit reversed the district court and held that the plaintiffs lacked standing because no injury could be traced to the Secretary.  Id. at 1253.  The Eleventh Circuit noted that "[t]he problem for the voters and organizations is that Florida law tasks the Supervisors, independently of the Secretary, with printing the names of candidates on ballots in the order prescribed by the ballot statute."  Id.  Ultimately, the Eleventh Circuit determined that the

plaintiffs could not rely on general election authority to establish traceability.  Id. at 1254.

The Eleventh Circuit reached the same conclusion in Georgia Republican Party, Inc. v. Secretary of State for Georgia.  No. 20-14741, 2020 WL 7488181, at *3 (11th Cir. Dec. 21, 2020).  In Georgia Republican Party, the plaintiffs filed a complaint against the Georgia Secretary of State regarding Georgia's processing of absentee ballots for the United States Senate runoff elections.  Id. at *1. Specifically, the plaintiffs challenged the signature-matching process and asked the district court to direct "Georgia election officials to conduct a meaningful signature matching process."  Id.  The plaintiffs asserted that they had standing to maintain the action because the Secretary is the state's chief election officer and has the authority and responsibility to manage Georgia's electoral system.  Id. at *2.  The plaintiffs also argued that the Secretary, "along with the election board members, has the duty to promulgate rules and regulations to obtain uniformity in the practices of election officials and to ensure a fair, legal, and orderly conduction of elections."  Id.  Without a written order, the district court dismissed the plaintiffs' action for lack of standing.  Id. at *1.

In denying an emergency stay of the dismissal and an injunction pending appeal, the Eleventh Circuit determined that the plaintiffs "failed to make a strong

showing that they have standing to bring their constitutional claims" because "the absentee ballot statute puts the duty to 'compare the signature' and accept or reject a ballot on the local 'registrar or clerk'—not the Secretary of State." Id. at *2–3. The court emphasized that other than being the chief election officer responsible for the election laws, "there is no allegation that the Secretary controls the local supervisors or has control over the signature verification process." Id. at *2. The court also noted that while the Secretary has rulemaking authority, the power is limited to rules and regulations that are consistent with law, and the law gives the authority to conduct the signature-verification process to local supervisors. Id. Ultimately, in denying the plaintiffs' request for relief, the court made clear that it does not have the authority to order a nonparty county official to do something contrary to state law. Id. ("The [plaintiffs'] motion for injunction asks us to do what we said could not be done in Jacobson:  order a nonparty county official to do something contrary to state law.").

As stated previously, Plaintiff argues that it has established traceability because State Defendants have general rulemaking authority.  This argument fails for at least two reasons.  First, State Defendants are wholly removed from the process of accepting or rejecting absentee ballot applications.  In Georgia, the registrar or absentee ballot clerk is tasked by statute with processing absentee

ballot applications.  In fact, the statute is clear that it is the duty of the registrar or absentee ballot clerk to reject an application if it is untimely.  Importantly, the statute does not contemplate a role for State Defendants in the processing of absentee ballot applications.

Second, State Defendants' ability to prescribe rules and regulations does not make this issue traceable to State Defendants because "this power is limited to rules and regulations that are 'consistent with law,'" and the law mandates a deadline of eleven days and expressly gives the authority to accept or reject absentee ballot applications to the registrar or absentee ballot clerk.  See id. at *2. As recognized by the Eleventh Circuit, "[i]f rulemaking authority were sufficient to establish traceability, [Plaintiff] could presumably challenge a law by suing the legislators who enacted it instead of the officials who execute it." Jacobson, 974 F.3d at 1257.  For the two reasons identified above, Plaintiff's allegations concerning State Defendants' general rulemaking authority are not sufficient to show that the rejection of an absentee ballot application is traceable to State Defendants.  See Ga. Republican Party, 2020 WL 7488181, at *2–3 (holding that a "duty to promulgate rules and regulations to obtain uniformity in the practices of election officials" was not sufficient to confer standing); Fair Fight Action, Inc. v. Raffensperger, No. 1:18-CV-5391, 2021 WL 9553855, at *12 (N.D. Ga. Feb. 16,

2021) (dismissing claims against the Georgia Secretary of State and the State Election Board despite general rulemaking authority because state law specifically assigned responsibility for determining and changing precincts and polling places to the county superintendents).[6]

Plaintiff also argues that the traceability element is satisfied because State Defendants have enforcement authority (i.e., they can levy fines and suspend superintendents for failure to comply with rules). As an initial matter, this Court recognizes that unlike the Florida Secretary of State, State Defendants have enforcement authority over county election officials.[7] For instance, O.C.G.A. § 21-2-33.1, titled "Civil penalties for violations; suspension of county or municipal superintendents," states that "[t]he State Election Board is vested with the power to issue orders . . . directing compliance with this chapter." Such orders may include

---

[6] The Court also finds that allegations concerning general rulemaking authority fall short of showing that the injury would be redressed by an order directed to State Defendants. See Jacobson, 974 F.3d at 1258 ("Because the Secretary will not cause any injury the voters and organizations might suffer, relief against her will not redress that injury— either 'directly or indirectly.'" (quoting Lewis v. Governor of Ala., 944 F.3d 1287, 1301 (11th Cir. 2019))).

[7] Under Florida law, "[o]nly the Governor of Florida, not the Secretary, may suspend county officials . . . and only the state senate may remove them from office." Jacobson, 974 F.3d at 1253. The Eleventh Circuit in Jacobson found it significant that the Secretary did not have the ability to punish or remove county officials from office. Id. ("Our conclusion that any injury from ballot order is not traceable to the Secretary rests on the reality that the Supervisors are independent officials under Florida law who are not subject to the Secretary's control.").

suspension or a "civil penalty not to exceed $5,000.00 for each violation of this chapter or for each failure to comply with any provision of this chapter or of any rule or regulation promulgated under this chapter."  O.C.G.A. § 21-2-33.1(a)(2). The Court remains skeptical, however, that this enforcement authority is sufficient to confer standing when state law explicitly assigns the responsibility for processing absentee ballot applications to the registrar or absentee ballot clerk. Notably, there are no allegations in the Amended Complaint that State Defendants control the processing of absentee ballot applications.  Moreover, the Court cannot ignore that State Defendants' enforcement authority is limited to directing compliance with Georgia law, which requires an eleven-day deadline.  The Court need not decide whether this enforcement authority is sufficient to satisfy the traceability requirement because, for the reasons explained in the analysis below, redressability is lacking.

## II.  Redressability

In the Amended Complaint, Plaintiff asks the Court to enter an order enjoining State Defendants from enforcing the eleven-day application deadline. Although not in the Amended Complaint, in the response in opposition to the Motion to Dismiss, Plaintiff suggests that this Court could also order State Defendants to issue a regulation contrary to state law that binds county officials.

According to Plaintiff, "county election officials could not simply continue to enforce the eleven-day deadline if directed not to by [State Defendants] because [State Defendants] can discipline county officials who fail to follow" directives by fining or removing them.  [Doc. 69, p. 19].  Neither of these requested orders would redress Plaintiff's purported injury.

As stated above, Plaintiff seeks an order enjoining State Defendants from enforcing the eleven-day deadline.  Problematically for Plaintiff, this particular relief would not eliminate the registrar or absentee ballot clerk's ultimate statutory authority and responsibility regarding the processing of absentee ballot applications, for "federal courts have no authority to erase a duly enacted law from the statute books." Jacobson, 974 F.3d at 1255.  Simply put, an order against State Defendants that prevents them from enforcing the statute does not bind the county election officials, who are not parties to this action.  Indeed, the county election officials remain lawfully required to accept or reject absentee ballot applications as prescribed by Georgia law "unless and until they are made parties to a judicial proceeding that determines otherwise." Id. at 1254.  As a result, this Court finds that Plaintiff's contention that the injury would be redressed by an order enjoining State Defendants from enforcing the eleven-day deadline is pure speculation.

The Court is also not convinced that it should require State Defendants to issue a regulation that is inconsistent with state law.  First, Plaintiff does not request this relief in its Amended Complaint.  It is well established that a party cannot amend his or her complaint via legal argument in a response brief.  See Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) ("[T]he proper procedure for plaintiffs to assert a new claim is to amend the complaint . . . . A plaintiff may not amend her complaint through argument in a brief opposing [a motion for summary judgment].").

Second, relief in the form of an order requiring State Defendants to issue a regulation that is inconsistent with state law would be "extraordinary" and would raise "serious federalism concerns."  Jacobson, 974 F.3d at 1257.  Indeed, "it is doubtful that a federal court would have authority to order it."  Id.; see also Fair Fight Action, 2021 WL 9553855, at *13 ("And an injunction ordering Defendants to promulgate rules and regulations that override or take that statutory authority and responsibility away from the county superintendents would raise 'serious federalism concerns.'").

To summarize, Plaintiff has failed to show that an order from this Court would redress the injury.  Thus, dismissal is required for lack of standing.

**CONCLUSION**

For the reasons stated above, State Defendants' Motion to Dismiss Amended Complaint [Doc. 68] is **GRANTED**.[8]  **IT IS HEREBY ORDERED** that the claim against State Defendants is **DISMISSED** without prejudice.[9]

**SO ORDERED** this 13th day of June, 2024.

J. P. BOULEE
United States District Judge

---

[8] As stated previously, State Defendants also argue that dismissal is required because Plaintiff has no right to bring a private right of action.  This argument will not be addressed because "[i]n the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims . . . and the court is powerless to continue."  CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (internal citation omitted).

[9] A dismissal for lack of standing is without prejudice.  Stalley, 524 F.3d at 1232.