UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| INTERNATIONAL ALLIANCE OF THEATER STAGE EMPLOYEES LOCAL 927,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN FERVIER, et al.,<br><br>    Defendants. | CIVIL ACTION NO.:<br>1:23-CV-04929-JPB |

# ORDER

This matter is before the Court on International Alliance of Theater Stage Employees Local 927's ("Plaintiff") Motion for Preliminary Injunction [Doc. 83] and Motion for Leave to File Supplemental Declarations [Doc. 98]. This Court finds as follows:

## BACKGROUND

Plaintiff is a labor union comprised of approximately 200 members who work behind the scenes running the lights, sound, sets and props for live and recorded productions throughout Georgia and the world. [Doc. 83-3, p. 3]. Specifically, Plaintiff's members work on television shows, touring Broadway productions, live theater, operas and ballets. Id.

Plaintiff's mission is to protect its "members' physical, social, and economic well-being by working for the passage and enforcement of laws which strengthen [the] rights to collectively bargain, defend pension and healthcare benefits, enforce strong copyright protections, promote safe working conditions, and seek funding for the arts." Id.  Stated another way, Plaintiff is "dedicated to protecting the dignity and both the financial and physical well-being of its members," and Plaintiff accomplishes that mission by "advocating for safe working conditions, fair wages, and [the] just treatment of all of its members." [Doc. 62, p. 5].

Based on the limited record before the Court, Plaintiff has some involvement in politics.  Indeed, at least once a year, Plaintiff visits with the legislature during its lawmaking session to discuss the needs of its members.  [Doc. 83-3, p. 4].  For example, in 2022, Plaintiff "spoke with lawmakers to encourage them to vote" for a bill that helped "clearly define the differences between employees and contract workers, a distinction that is critical to ensuring [that] members get their due pay, benefits, and workplace safety protections." Id.  In addition to communicating with lawmakers, Plaintiff distributes a "monthly newsletter to encourage [its] members to vote for pro-labor candidates and to cast votes on other important issues that appear on the ballot." Id.; see also [Doc. 62, p. 5–6] (Plaintiff "advocates for the election of candidates at all levels of government who support

2

both the rights of workers and the cultural traditions and institutions that have brought Atlanta international renown.").

Plaintiff brought this case against State Defendants[1] and County Defendants[2] on October 26, 2023. [Doc. 1]. Plaintiff filed an Amended Complaint for Declaratory and Injunctive Relief ("Amended Complaint") on January 29, 2024. [Doc. 62]. In the Amended Complaint, Plaintiff seeks to protect its members' voting rights by challenging the provision of Senate Bill 202 ("S.B. 202") which states that absentee ballot applications cannot be submitted earlier than seventy-eight days before the election and will not be accepted if submitted fewer than eleven days before the election. O.C.G.A. § 21-2-381(a)(1)(A). According to Plaintiff, this provision violates § 10502(d) of the Voting Rights Act ("VRA"), which provides that:

> [E]ach State shall provide by law for the casting of absentee ballots for the choice of electors for President and Vice President, or for President and Vice President, by all duly qualified residents of such State who may be absent from their election district or unit in such State on the day such election is held and who have applied therefor

---

[1] State Defendants include John Fervier, Edward Lindsey, Janice W. Johnston, Sara Tindall Ghazal and Rick Jeffares. These defendants are members of the Georgia State Election Board and were sued in their official capacities. The Court dismissed State Defendants from this action on June 13, 2024. [Doc. 97].

[2] County Defendants are Patrise Perkins-Hooker, Aaron V. Johnson, Michael Heekin and Teresa K. Crawford. County Defendants are members of the Fulton County Registration and Election Board.

> not later than seven days immediately prior to such election and have returned such ballots to the appropriate election official of such State not later than the time of closing of the polls in such State on the day of such election.

52 U.S.C. § 10502(d).  In short, Plaintiff contends that Georgia's eleven-day deadline for submitting absentee ballot applications violates the seven-day period found in the VRA.

On April 30, 2024, Plaintiff filed the instant Motion for Preliminary Injunction.  [Doc. 83].[3]  In the motion, Plaintiff argues that its members, who are often required to travel for work on short notice, will be irreparably harmed by S.B. 202 because they have less time to apply for an absentee ballot.  The motion is now ripe for review.

## LEGAL STANDARD

A plaintiff seeking preliminary injunctive relief must show (1) a substantial likelihood of success on the merits; (2) irreparable injury absent an injunction; (3) that the balance of equities is in its favor; and (4) that an injunction would not be adverse to the public interest.  Sofarelli v. Pinellas County, 931 F.2d 718, 723–24 (11th Cir. 1991).  Because a preliminary injunction "is an extraordinary and drastic remedy," the Court may not issue such relief "unless the movant clearly

---

[3] On June 21, 2024, Plaintiff filed a Motion for Leave to File Supplemental Declarations. [Doc. 98].  The motion, which is unopposed, is **GRANTED**.

4

establish[es] the burden of persuasion as to each of the four prerequisites." Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal punctuation omitted) (quoting McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998)). Granting a preliminary injunction is thus the exception rather than the rule. See id.

## DISCUSSION

Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. To satisfy this case and controversy requirement, litigants must have standing. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). The standing doctrine requires a plaintiff to show that it: (1) suffered an injury-in-fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable judicial decision. Id. at 560–61. "These three elements 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case.'" Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections, 36 F.4th 1100, 1113 (11th Cir. 2022) (quoting Lujan, 504 U.S. at 561).

Plaintiff in this case is a labor organization and asserts that it has associational standing. An organization has associational standing (1) "when its members would otherwise have standing to sue in their own right"; (2) "the interests at stake are germane to the organization's purpose"; and (3) "neither the

5

claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Fla. State Conf. of NAACP v. Browning, 522 F.3d 1153,1160 (11th Cir. 2008) (quoting Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 181 (2000)).  In the analysis that follows, the Court focuses on the second prong.

As stated above, as part of the standing determination, Plaintiff must demonstrate that the interests it seeks to protect are germane to the organization's purpose.  "The germaneness requirement is 'undemanding' and requires 'mere pertinence' between the litigation at issue and the organization's purpose." Schalamar Creek Mobile Homeowner's Ass'n, Inc. v. Alder, 855 F. App'x 546, 553 (11th Cir. 2021).  At the pleading stage, "[a] court must determine whether [an organization's] lawsuit would, if successful, reasonably tend to further the general interests that individual members sought to vindicate in joining the association and whether the lawsuit bears a reasonable connection to the association's knowledge and experience." Bldg. & Const. Trades Council of Buffalo v. Downtown Dev., Inc., 448 F.3d 138, 149 (2d Cir. 2006).[4]

While the germaneness requirement is not demanding, it exists "for 'the modest yet important' purpose of 'preventing litigious organizations from forcing

---

[4] In adopting the "mere pertinence" standard, this case was cited by the Eleventh Circuit in Schalamar.  855 F. App'x at 553.

the federal courts to resolve numerous issues as to which the organizations themselves enjoy little expertise and about which few of their members demonstrably care.'" Ctr. for Sustainable Econ. v. Jewell, 779 F.3d 588, 597 (D.C. Cir. 2015).[5]  The germaneness prong thus "serves as a backstop" against suits where members of an organization claim a cognizable injury despite the "wholesale mismatch between litigation topics and organizational expertise."[6] Humane Soc'y of the U.S. v. Hodel, 840 F.2d 45, 57 (D.C. Cir. 1988).[7]  Because of the germaneness requirement, an organization does not have free rein to bring suit each time one of its members suffers an injury.  See McKinney v. U.S. Dep't of Treasury, 614 F. Supp. 1226, 1239 (Ct. Int'l Trade 1985) ("The Court does not interpret the rule that 'an association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged

---

[5] This case was also cited by the Eleventh Circuit in Schalamar.  855 F. App'x at 553.

[6] The court gave two examples of a mismatch between litigation topics and organizational expertise:  (1) a labor union challenging a school-aid program on establishment clause grounds; or (2) a civil libertarian organization challenging a trade policy on commerce clause grounds.  Humane Soc'y of the U.S. v. Hodel, 840 F.2d 45, 57 (D.C. Cir. 1988).  In these hypothetical examples, germaneness would be lacking.  A labor union attempting to bring an establishment clause case is similar to what has happened here.

[7] In Humane Society, the court explained that germaneness is required to prevent organizations from claiming constitutionally cognizable injuries when the injuries have "nothing whatsoever to do with the association's area of competence or reason for existence."  840 F.2d at 57.

action' . . . to mean that any rights of an individual may be asserted by an organization to which he belongs regardless of the relationship between that organization and the injury alleged.").

In this case, the record on the standing issue consists only of the Amended Complaint and the affidavits[8] submitted in support of the Motion for Preliminary Injunction.  In the Amended Complaint, Plaintiff asserts that it is an organization "dedicated to protecting the dignity and both the financial and physical well-being of its members." [Doc. 62, p. 5].  Plaintiff accomplishes this mission by "advocating for safe working conditions, fair wages, and [the] just treatment of all its members."  Id.  Plaintiff also "advocates for the election of candidates at all levels of government who support both the rights of workers and the cultural traditions and institutions that have brought Atlanta international renown."  Id. at 6.  To support its Motion for Preliminary Injunction, Plaintiff submitted two affidavits of its Political Director, Allan Herman, to describe Plaintiff's purpose and activities.  [Doc. 83-3]; [Doc. 98-1].  Herman confirmed that Plaintiff's purpose is to protect its "members' physical, social, and economic well-being by working for

---

[8] Plaintiff submitted six affidavits in total.  Two were submitted by Allan Herman, the Political Director of Plaintiff.  Herman's affidavits are relevant to the standing inquiry because they address, albeit in a very limited manner, Plaintiff's mission and purpose.  The remaining four affidavits were submitted by members.  None of these four affidavits contain evidence regarding the mission of Plaintiff.

the passage and enforcement of laws which strengthen [the] right to collectively bargain, defend pension and healthcare benefits, enforce strong copyright protections, promote safe working conditions, and seek funding for the arts." [Doc. 83-3, p. 3]. Herman also asserted that Plaintiff sends a monthly newsletter to encourage members to vote for "pro-labor candidates and to cast votes on other important issues that appear on the ballot." Id. at 4.

Plaintiff contends that the germaneness requirement is satisfied because its "core mission is to advance the interests of its members, including by supporting their participation in democracy and advocating for politicians who support trade unions." [Doc. 83-1, p. 25]. By "participation in democracy," the Amended Complaint and the affidavits show that Plaintiff means lobbying for certain candidates and particular issues. In the Court's view, however, germaneness requires more than advocating for candidates and issues—otherwise, every organization[9] would have standing to bring claims under the VRA. While the germaneness requirement is undemanding, it certainly has some limit.

The record in this case lacks, at least at this stage of the proceedings, indicators that the germaneness requirement is satisfied. Specifically, neither the Amended Complaint nor the supporting affidavits suggest that one of Plaintiff's

---

[9] Most organizations have preferred candidates or issues that they support.

purposes is to protect its members' voting rights. Similarly, completely missing from the record is any allegation or evidence that any part of Plaintiff's mission is related to enforcing the voting rights of its members or evidence that Plaintiff's members joined the organization to "vindicate" their voting rights. See Bldg. & Const. Trades Council, 448 F.3d at 149. Moreover, nothing in the record exists which would show that the enforcement of voting rights or election law has a reasonable connection to Plaintiff's knowledge and experience, which appears to be limited to advocating for better pay and working conditions. In other words, Plaintiff failed to provide evidence that it has any expertise or special competence in voting litigation.

After consideration of the entire record, this Court finds that Plaintiff has failed to clearly establish[10] that it is substantially likely to show standing, thus making any preliminary injunction improper. Stated differently, Plaintiff has failed to clearly establish even mere pertinence between the subject matter of this litigation and its organizational purpose. Here, Plaintiff's specific goal in this litigation—to ensure the voting rights of its members under the VRA—is not pertinent to its stated purposes of advocating for safe working conditions, fair wages or pro-labor candidates. Crucially, Plaintiff has not shown how

---

[10] To obtain preliminary injunctive relief, a plaintiff must "clearly establish the burden of persuasion as to each of the four prerequisites." Siegel, 234 F.3d at 1176.

strengthening the right to collective bargaining is pertinent to voting rights. Plaintiff also has not demonstrated how defending pension and healthcare benefits, enforcing strong copyright protections, promoting safe working conditions or seeking funding for the arts pertains to voting rights.  In addition to the pertinence issue, Plaintiff's evidence falls short of demonstrating that its members joined to protect their voting rights or that it has any expertise in voting litigation, leading the Court to believe that this case presents a "wholesale mismatch" between the litigation topic and Plaintiff's organizational expertise.  See Humane Soc'y, 840 F.2d at 57.

As stated previously, the record is devoid of any evidence that Plaintiff's mission—or even part of Plaintiff's mission—is the enforcement of voting rights. Cf. Greater Birmingham Ministries v. Sec'y of State for Ala., 992 F.3d 1299, 1316 (11th Cir. 2021) (holding that the germaneness requirement was satisfied in a voting case because the organizations' purposes focused on voter rights and equal opportunity for minority voters).  As such, Plaintiff has failed to demonstrate, at least on this limited record, that the interests it seeks to vindicate here (voting rights) bear a reasonable connection to its knowledge and experience (workers' rights) or that election law is germane to its organizational purpose.  The Court thus has "substantial questions about whether the interests at stake here are

11

germane to the [organization's] purposes, which clearly are not primarily related to election or voters' rights issues."  Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1010 (6th Cir. 2006) (noting that a labor union's standing allegations[11] raised substantial questions regarding the germaneness prong); see also Am. Fed'n of State, Cnty. & Mun. Emps., Council 25 v. Land, 583 F. Supp. 2d 840, 844 n.3 (E.D. Mich. 2008) (finding that a labor union failed to demonstrate that the interests at stake in the litigation—the rights of its members to wear campaign buttons at polling places—were germane to its organizational purpose).  Ultimately, "[t]he weakness of [Plaintiff's] showing of standing" leads the Court to conclude that its "likelihood of success on the merits

---

[11] The Court notes that the labor union's allegations in that case were even stronger than what is present here.  Indeed, that labor union alleged that "it is a labor union that engages in voter registration and other election activities on behalf of its members."  Ne. Ohio Coal., 467 F.3d at 1010.  There are no allegations in this case that Plaintiff helps its members register to vote or works with its members to overcome any perceived barriers in voting.

is not strong." Ne. Ohio Coal., 467 F.3d at 1010.[12]  For this reason, Plaintiff's Motion for Preliminary Injunction is **DENIED**.[13]

---

[12] Other courts have declined to find germaneness when there was a disconnect between an entity's stated purpose and the issue being challenged.  For example, the Ninth Circuit Court of Appeals found that the plaintiff failed to show germaneness and reversed a lower court's order granting a motion for preliminary injunction.  Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v. U.S. Dep't of Agric., 415 F.3d 1078, 1104 (9th Cir. 2005).  In that case, the plaintiff was a "non-profit cattle association representing over 12,000 United States cattle producers on issues concerning international trade and marketing" and sued to prevent the enforcement of a regulation that relaxed the importation of cows from Canada despite the existence of Mad Cow Disease.  Id.  The Ninth Circuit determined that the plaintiff failed to satisfy the germaneness requirement because the plaintiff's complaint made clear that economic issues were highly relevant to its purpose—not environmental issues.  Id.  The court stated that "[w]e do not see the connection . . . between the purported environmental interest that [the plaintiff] attempts to raise here and the 'trade and marketing' interests it is organized to protect."  Id.  Similarly, the Eighth Circuit Court of Appeals also concluded that the germaneness requirement was not satisfied in a case brought by a teacher's union.  Minn. Fed'n of Teachers v. Randall, 891 F.2d 1354, 1359 (8th Cir. 1989).  In that case, the teacher's union challenged the use of taxpayer money to support sectarian schools.  Id.  The court ultimately held that the union failed to show standing because there was "an insufficient nexus" between the purposes and activities of the teacher's union and the tax money concerns expressed in the complaint.  Id.

[13] Plaintiff cites two cases to support its argument that protecting the voting rights of its members is germane to its core mission: Diaz v. Cobb, 541 F. Supp. 2d 1319 (S.D. Fla. 2008) and Sandusky Cnty. Democratic Party v. Blackwell, 387 F.3d 565 (6th Cir. 2004).  [Doc. 69, p. 20].  Neither case changes the outcome here.  Before ruling on the merits of a dispute, the court in Diaz noted that three individuals and several labor organizations had standing to sue to enforce voting rights.  541 F. Supp. 2d at 1319.  The opinion, however, contains no analysis of the germaneness prong and the issue was never raised by the parties or addressed by the court.  Id.

In Sandusky, the County and Ohio Democratic Party along with three labor unions sued to enforce voting rights under the Help America Vote Act.  387 F.3d at 565.  Without any analysis of the germaneness requirement, the court determined that the plaintiffs had standing to sue.  Id. at 574.  Importantly, in a later case decided by the Sixth Circuit, the Sixth Circuit specifically mentioned the germaneness requirement and

Even if Plaintiff has standing, there is another reason to deny preliminary injunctive relief. The Purcell principle, first enunciated in Purcell v. Gonzalez, 549 U.S. 1 (2006), is the proposition that "lower federal courts should ordinarily not alter the election rules on the eve of an election." Republican Nat'l Comm. v. Democratic Nat'l Comm., 140 S. Ct. 1205, 1207 (2020). This general rule recognizes that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls." Purcell, 549 U.S. at 4–5. When a court is asked to enter an injunction on the eve of an election, that court must "weigh, in addition to the harms attendant upon issuance or nonissuance of an injunction, considerations specific to election cases and its own institutional procedures." Id. at 4. When Purcell applies to a request for an injunction, "the party seeking injunctive relief has a 'heightened' burden." League of Women Voters of Fla., Inc. v. Fla. Sec'y of State, 32 F.4th 1363, 1372 (11th Cir. 2022).

The Purcell principle applies only when an election is "sufficiently 'close at hand.'" Id. (quoting Merrill v. Milligan, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurring)). Although the Supreme Court of the United States has not squarely addressed precisely when Purcell applies, it has stayed an injunction for an election

---

expressed doubt that a labor union could satisfy the requirement in a voting case. Ne. Ohio Coal., 467 F.3d at 1010.

14

that was four months away.  See id. (citing Merrill, 142 S. Ct. at 879).  In other words, under the facts of that case, the Supreme Court determined that an election in four months was sufficiently "close at hand" that Purcell applied.

Similarly, the Eleventh Circuit Court of Appeals stayed an injunction pertaining to an election that was "set to begin in *less* than four months."  Id.  Like the Supreme Court, the Eleventh Circuit found that the election was sufficiently "close at hand" and determined that the case "easily" fell within the time period that triggered Purcell.  Id.  The Eleventh Circuit noted that "in marginal cases," "'[h]ow close to an election is too close' will depend on a number of factors."  Id. at 1371 n.6.  These factors, which were set forth in Merrill, require a plaintiff to show the following:  (1) "the underlying merits are entirely clearcut in favor of the plaintiff;" (2) "the plaintiff would suffer irreparable harm absent the injunction;" (3) "the plaintiff has not unduly delayed bringing the complaint to court;" and (4) "the changes in question are at least feasible before the election without significant cost, confusion, or hardship."  142 S. Ct. at 881 (Kavanaugh, J., concurring).

Currently, the Presidential Election is less than four months away and early voting begins in two months.[14]  Given that early voting begins in October, the

---

[14] Even though this case has been pending since October 26, 2023, Plaintiff did not bring its Motion for Preliminary Injunction until April 30, 2024.  The motion did not become ripe until July 22, 2024, when the United States filed its Brief on the Constitutionality and Interpretation of Section 202 of the VRA.

Court finds that the election is sufficiently close at hand to preclude the issuance of an injunction at this time.[15]  Even though the Court does not believe that this is a "marginal case" which requires analysis of the Merrill factors, the Court nonetheless addresses some of them in an abundance of caution.  Here, Plaintiff has failed to show at least two of the factors.  See Merrill, 142 S. Ct. at 881 (Kavanaugh, J., concurring) (stating that a plaintiff would need to show "at least" all four factors to overcome a Purcell bar).  Indeed, as to the first Merrill factor, Plaintiff's case and likelihood of success is not "entirely clearcut," especially since Plaintiff failed to show that it was substantially likely to demonstrate standing.  The third factor—whether a plaintiff unduly delayed bringing the complaint to the court—also weighs against Plaintiff.  S.B. 202 was passed in March 2021, and Plaintiff brought this action more than two years later.  Moreover, Plaintiff waited an additional six months to file its Motion for Preliminary Injunction.  Because Plaintiff cannot satisfy, at a minimum, either the first or third factors of the Merrill analysis, the Court finds that the Merrill concurrence provides additional support

---

[15] The Court recognizes that Fulton County indicated that it could implement an election change if given notice by August 1, 2024.  The Court, however, cannot ignore that "'[e]ven seemingly innocuous late-in-the-day judicial alterations to state election laws can interfere with administration of an election and cause unanticipated consequences.'" League of Women Voters, 32 F.4th at 1371.

for the conclusion that the <u>Purcell</u> doctrine bars relief here. For this additional reason, Plaintiff is not entitled to relief.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Leave to File Supplemental Declarations [Doc. 98] is **GRANTED** and Plaintiff's Motion for Preliminary Injunction [Doc. 83] is **DENIED**.

**SO ORDERED** this 31st day of July, 2024.

_____
J. P. BOULEE
United States District Judge