FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

JUL 29 2024

KEVIN P WEIMER, Clerk
By Emily Ross Deputy Clerk

SAI ROSE, an
individual, Plaintiff, v.

v.

INTERNATIONAL ALLIANCE OF
THEATER STAGE EMPLOYEES LOCAL 927,
PLAINTIFFS

UNITED STATES OF AMERICA,
acting through the DAPARTMENT OF JUSTICE et al.,
PLAINTIFFS

AARON JOHNSON, in his official
capacity as member of the Fulton
County Registration and Elections
Board, et al.,
DEFENDANTS.

Case No:   1:23-cv-4929

Judge:

_____/

## MOTION TO INTERVENE AND REQUEST FOR SANCTIONS

### INTRODUCTION

1.   Sai Rose respectfully moves this Honorable Court for leave to intervene

in the above-captioned case pursuant to Rule 24(a)(2) of the Federal Rules of

1

Civil Procedure. In support of this Motion. Plaintiff Sai Rose, an individual, hereby moves this Court for an Order granting his Motion to Intervene and Request for Sanctions. Sai Rose's comprehensive submissions, provide all parties with the necessary information to adequately represent their interests, ensuring a fair and informed adjudication process for all. All 3 parties were notified by before filing this motion. Sai Rose states as follows:

## INTEREST OF THE INTERVENOR

2.     Sai Rose is a registered voter whose voting rights and the integrity of all votes throughout the country are directly impacted by the outcome of this case. Furthermore, the Court's decision to allow the federal government to join this case underscores its significance beyond the State's jurisdiction.

3.     Courts recognize the challenges faced by pro se litigants and often afford them a certain degree of leniency. As noted in *Haines v. Kerner*, 404 U.S. 519 (1972), pro se filings should be held "to less stringent standards than formal pleadings drafted by lawyers." All parties have been made aware of this motion, my submission addresses key issues, including, the specific provisions of Georgia Senate Bill 202, the implications of the recent overturning of the Chevron doctrine, and the DOJ's challenges. The points are made directly and clearly.

4.     Mr. Rose's submission ensures that all parties have access to the critical information necessary for their representation. This thorough approach not only

2

aids in understanding the case but also facilitates effective representation for all parties involved, reducing further extensive submissions from other parties.

5.  Sai Rose has had a judge publicly censured and barred (EXHIBIT A) as part of his background in restoring law and order through proper legal channels.

## GROUNDS FOR INTERVENTION

6.  Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that, upon timely application, anyone shall be permitted to intervene in an action, and the applicant is so situated that disposing of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless existing parties adequately represent that interest. Which clearly they are not.

7.  Mr. Rose' filing focuses on the DOJ's recent filing 1:23-cv-4929, July 8th 2024 (EXHIBIT B) and the parties mentioned in their filing, I request that the Court allows my motion to proceed promptly in light of their ongoing involvement, and that Mr. Rose was able mail this by the DOJ's time 7/22/24.

## ARGUMENT

8.  I agree with the DOJ, private parties have the right to file a lawsuit & protect their fundamental rights, including under the 202 Act in this situation. Anyone challenging this I feel needs to be better educated on fundamental rights.

9.     Sai Rose's interests are not being adequately represented by the current parties. The plaintiffs may not be qualified or be fully addressing the potential for increased voter fraud and the harm it causes.

10.    The integrity of the electoral process is paramount. Legislative bodies, not courts, should be tasked with considering and enacting changes to voting laws.

11.    The plaintiff, IATSE and their attorneys, has grossly misrepresented the statutory language and legislative intent of Section 202 of the Voting Rights Act. Specifically, IATSE's assertion that the Act extends its protections to the application process for absentee ballots is a deliberate distortion designed to mislead this Honorable Court and Judge.

12.    The Plaintiff is claiming that the 11-day rule for applying for an absentee ballot harms people, but the country expects people to get vaccine IDs just to shop and eat. Which is a fundamental right. It is also racially discriminatory to suggest that people of color are harmed by this rule, implying that these communities are made up of mostly ignorant individuals. Furthermore, people with disabilities have access to services that can assist. We don't live in 1883 where people are so remote. This argument clouds the actual issues we face today, high levels of voter fraud. Individuals trying to figure out new ways each day.

13.    The Georgia law (SB 202) created a time frame during which voters can apply for absentee ballots, a total of 169 days, not the deadline for when the

absentee ballots themselves must be cast, it remains 7-days as the law requires. The absence of such specific language about the application process shows that Congress only intended the 7-day rule to guarantee the **right to cast a ballot.**

14. It tasks the states to setup procedures before the casting of absentee ballots.

15. **O.C.G.A. § 21-2-381(a)(1)**: "An application for an absentee ballot may be made at any time during the period beginning 180 days prior to the election. Giving 169 days to apply. There is no group that requires more than 169 days.

16. Therefore, any claims seeking to extend protections to the **application** process are also unsupported by the statute's text and Congressional intent.

17. **Application Process:** Refers to the act of requesting an absentee ballot.

18. **Submission Process:** The act of casting the completed absentee ballot by the deadline. Casting of the ballot must be allowed 7-days before an election.

19. Each State shall provide by law for the '*casting of absentee ballots*', (52 U.S.C. § 10502(d)). *Alexander v. Sandoval, Courts will only enforce rights or obligations explicitly stated in the text of a statute.*

20. The plaintiffs and the DOJ, who have joined the opposing party, are not representing the law as it is written, as they are required to. This specific legal language has its own process. This matter should be addressed by lawmakers who represent the public, rather than through a court case representing a single side's interests, where Sai Rose's voting rights would be interfered with by a lawyer

5

and a judge trying to make laws. Sai Rose and the American public rely on lawmakers to make laws, thereby having standing to protect their rights to laws being made by lawmakers.

21.     Upon the Court's careful review of (EXHIBIT B) what prompted Mr. Rose on July 11th, 'EPOCH TIMES', it's glaringly evident that the Plaintiffs are deliberately attempting to deceive both the Court and the national media. Initially addressed applying for absentee ballots but then strategically changed the narrative. The case that has been brought to this court hinges on the assertion that people are losing right to apply for an absentee ballot—a claim for which there is no legal protection to violate. The Plaintiff's narrative seeks to frame Georgia's voter laws as Violating Federal Law, using general terms to evoke emotional and legal responses. Well they got a response, emotion and a challenge. This is part of the basis for sanctions. It appears they have used this language to falsely sustain their position before the Court today. The Plaintiffs adept manipulation of language is a calculated effort to evade lawmakers, based on their filings.

22.     The last presidential election in Georgia was decided by only a 11,000 votes. That means Absentee ballot fraud could change the outcome of an election.

23.     The precedent set here could not only influence election laws nationwide but also lead other federal courts in my jurisdiction to make errors in similar

6

cases. This could affect not just the state of Georgia but also the integrity of the electoral process across the entire country. Making Mr. Rose necessary here.

24.    Additionally, it is essential to recognize that casting absentee ballots and applying for an absentee ballot are entirely different entities, each governed by its own set of rules and procedures for many reasons. For instance;

25.    **Separate Legal Frameworks**: Voting ballots used at polling stations on election day are subject to different legal frameworks and oversight compared to absentee ballots, which are mailed in. This separation ensures that each type of ballot has specific regulations designed to maintain their integrity and security.

26.    **Unique Procedures**: The procedures for handling, verifying, and counting absentee ballots are distinct from issuing absentee ballots by the state. Absentee ballots require additional steps, such as verification of voter identity through signatures or other means, which are not applicable to the casting of an absentee ballot process by the state. These processes must stay independent as intended.

27.    **Different Risks and Challenges**: Such as potential fraud or loss in transit.

28.    **Legislative Intent**: The legislative intent behind the rules governing absentee ballots was to provide a secure and reliable means for voters who cannot be present at polling stations to participate in elections. Treating applying for absentee ballots as equivalent to casting ballots ignores the careful considerations and regulations established by many lawmakers.

29.   Georgia is moving forward by advancing its laws to address the current environment, recognizing the increased potential for fraud as the community grows. The absentee voting process, which originated in the 1800s when many individuals lived in remote areas or were at war, is no longer constrained by the same issues. Today, with widespread access to free internet phones, computers, and public resources like libraries with internet access and computers/printers etc., there is far less justification for claims of disproportionate access or discrimination. Modern technology ensures that nearly everyone, even in remote areas can access voting information and resources, making it easier than ever for all citizens to participate in the electoral process throughout the country.

30.   The Voting Rights Act of 1965, particularly Section 202, was enacted in a different era with the primary goal of overcoming barriers to voting for minority communities. It is serving its goal to this day, undisturbed by Georgia's laws.

31.   The DOJ in this case have not only overlooked the specific legal language of Section 202 but also failed to present arguments that fully address the potential for increased voter fraud and the impact on votes across the country

32.   In conclusion, the Court should recognize and respect the differences between applying for absentee ballots and the casting of absentee ballots. Any changes or interpretations of the laws governing absentee ballots should be made with these distinctions in mind to ensure the integrity of the electoral process.

8

33.   Sai Rose respectfully requests that the Court consider removing the DOJ from the case, unless the DOJ can file a memorandum demonstrating the merit and necessity of their involvement;

34.   **Misuse of Tax Dollars**: The involvement of the DOJ in this case potentially represents a misuse of taxpayer dollars, including both Sai Rose's taxes and those of citizens across the country collectively.   The attorneys could be utilized on other serious cases that have merit, and actual danger involved.

35.   The Chevron doctrine, now overturned, had established in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), that granted federal agencies deference in interpreting ambiguous statutes they administer. This two-step framework allowed agencies like the DOJ to provide reasonable interpretations of laws, provided Congress had not directly addressed the precise issue and the agency's interpretation was reasonable. This deference was based on the understanding that agencies possess expertise and are better equipped to handle complex regulatory matters. Which we see they are not.

36.   Without Chevron deference, courts now assess the factual basis for their claims. This scrutiny ensures that the DOJ's claims are based on evidence not interpretations that unjustifiably restrict state legislative authority. Courts no longer defer to the Federal agencies interpretations of ambiguous statutes. This shift significantly impacts the DOJ's ability to enforce its interpretation of laws,

including the 202 Voting Rights Act and Georgia's laws. Additional basis for sanctions.

37. Under the new framework without Chevron deference, states like Georgia benefit from heightened judicial scrutiny of federal agency actions. This scrutiny ensures that the DOJ's interpretations do not encroach on state sovereignty or impose unwarranted federal mandates, such as the CDC.

38. The DOJ argues that banning unsolicited absentee ballot applications restricts access to voting and disproportionately affects certain groups. If the Plaintiffs intends to invoke the hearsay exception referenced by the judge, they must demonstrate its proper applicability. The DOJ also argues that restricting government entities from distributing unsolicited absentee ballot applications harms marginalized groups by limiting their access to voting. Many churches are located in remote areas where marginalized groups would normally have difficulties. Fining churches and civic organizations for similar activities also restricts access for marginalized groups. This inconsistency suggests a discriminatory application of the law that unfairly targets religious organizations and is a form of religious discrimination without the proper defense by the DOJ.

39. **Religious Freedom:** By law churches can assist voters, following regulations designed to prevent fraud. The role as a church member in assisting with absentee ballots aligns with religious freedoms and community service.

10

40.   **Historical Role of Churches:** If the DOJ wants to use Historically and Textually, churches have played a significant role in civic engagement and voter assistance. The law ensures that this help is provided legally and effectively

41.   The DOJ argues that banning unsolicited absentee ballot applications restricts access to voting and disproportionately affects certain groups.

42.   **Preventing Voter Fraud:** The law's provision to ban unsolicited absentee ballot applications is designed to prevent potential voter fraud. Allowing such applications could lead to ballot requests from individuals who do not actually intend to vote, which would undermine the integrity of the electoral process. Given that government resources are already stretched thin, particularly with many employees working from home due to budget cuts, it is reasonable for the community to handle these activities in accordance with Georgia and Federal election laws. This approach ensures that the burden of managing absentee ballot requests is balanced and does not place undue strain on government agencies. This court upholding this would allow all states to enforce this safety practice.

43.   **Alternative Outreach Methods:** There are many other ways for voters to receive absentee ballot information, such as through mail, online resources, or community outreach by non-governmental organizations.

44.   The DOJ argues that imposing fines on organizations for distributing absentee ballot applications is a form of voter suppression.

45. However, this stance contradicts their support for fining churches and civic groups for similar activities under Georgia Senate Bill 202. If imposing fines on organizations is deemed voter suppression, then advocating for fines on churches should also be considered voter suppression, highlighting another inconsistency in the DOJ's position. Sanctions are warranted.

46. Georgia lawmakers know that organizations come and go and often lack a fixed address, whereas churches can be held legally responsible, so the DOJ seems to be intentionally discriminating against religious groups by advocating for fines on churches for distributing absentee ballot applications, but not unknowing organization that are often filled with fraud in the dark.

47. **Ensuring Accurate Information:** Fines are intended to ensure that organizations distributing ballot applications do so accurately and without misleading voters. This provision helps maintain the integrity of the election process and ensures that all voters receive correct and timely information.

48. The DOJ argues that prohibiting the distribution of food or water to voters waiting in line is a discriminatory practice that disproportionately affects minority voters. Voters are capable of bringing their own food/drinks if they're able to vote. **Maintaining Order:** The prohibition on distributing food and water at polling stations is intended to prevent potential disruptions and ensure that lines are orderly and efficiently managed. This regulation applies equally to all voters,

12

regardless of race or background. It eliminates problems that would require law enforcement. There is a lot of political tension at any political event. **Alternative Solutions:** There are other ways to address long wait times, such as increasing polling station staff.

49. The DOJ argues that prohibiting the counting of out-of-precinct provisional ballots cast before 5 p.m. on Election Day is a form of disenfranchisement. Maintaining Precinct Integrity: This provision helps to ensure that ballots are counted in the correct precinct, which is crucial for maintaining the integrity of the voting process. Voters are provided with ample information about their designated polling places and have the opportunity to correct mistakes. Furthermore, other states have different laws and rules that could interfere with this process. It assures consistency for Georgia laws.

50. The DOJ contends that Requiring Voters Without Georgia Department of Driver Services ID, Photocopy Another Form of Identification to Request an Absentee Ballot creates an additional burden, especially for marginalized groups who may have less access to photocopying facilities. The DOJ has no victims to testify as this being a fact or a guess by the DOJ. But people were forced to have a vaccine ID's to shop and eat food all over the country, a basic right along with voting, but more important. Where was the DOJ then? Or is it because vaccine ID's aligned with their political views? Another contradiction. The requirement

13

to provide a photocopy of another form of identification is a reasonable measure to ensure voter integrity, and doesn't not target any specific group. Local government offices can offer free or inexpensive ID's. Georgia could have a fee waiver for an election ID if it is done within 30 days of a major election. Georgia isn't the only state, Similar voter ID requirements are present in various states, and the need to provide a photocopy of identification for absentee ballots is a standard procedure rather than an exceptional or unusual imposition. Has the DOJ filed against them? Safeguarding the voting process from fraud is a critical responsibility for election officials. Courts have upheld various forms of voter ID requirements as valid and necessary for maintaining election integrity. The DOJ's argument that this requirement is an undue burden overlooks the legal precedent supporting similar measures. It also implies a negative image of certain groups ability to do common tasks or that the federal government hasn't been doing their job to advance these groups.

51. The DOJ asserts that reducing the availability of drop boxes makes it harder for marginalized groups to return absentee ballots. The DOJ has no victims to testify to it being a fact or guess by the DOJ. However, this reduction does not eliminate other methods of ballot return, such as mailing ballots or delivering them in person to election offices. Furthermore, managing fewer drop boxes allows for better security and oversight, which helps maintain the integrity of the

14

voting process. Historically, fewer drop boxes have been used effectively in many elections, and the reduction can be balanced with increased voter education efforts about alternative return methods. The DOJ could request funding for educational programs for these groups they claim exist.

52. There has been no case presented for this being unreasonable.

53. The DOJ's arguments for expanded enforcement capabilities under Section 202 lack legal foundation and violate the principles established by the recent overturning of the Chevron Doctrine. The statutory language is clear and unambiguous in assigning enforcement responsibilities to the Attorney General. The DOJ's attempt to reinterpret or add to this language constitutes judicial overreach, effectively creating new legislation from the bench, which is impermissible. Additional reason for sanctions.

54. Instead of expanding powers or increasing funding, the DOJ should direct resources to support the Attorney General's existing enforcement responsibilities as outlined by Congress. Historical precedents show that addressing concerns through legislative updates and appropriate funding mechanisms, rather than judicial reinterpretation, is the accepted method for resolving such issues. The attorney general has not expressed any concerns that I know of.

55. The DOJ's claim that they require additional enforcement authority and funding misleads the court and undermines the explicit enforcement standards set by legislation.

56. Furthermore, the DOJ's reliance on historical and textual evidence to justify expanded powers is flawed and irrelevant. While gun owners frequently invoke historical and textual evidence to assert their rights, the courts have consistently prioritized safety and practical considerations when updating gun laws. The DOJ has failed to present any evidence of actual victims of the alleged issues with 'Georgia's law', whereas past cases that have altered gun laws were supported by substantive evidence of evolving circumstances. The DOJ's argument that unprecedented voter fraud necessitates expanded enforcement powers lacks consistent and substantial evidence, failing to justify deviation from established legislative provisions. Sai Rose has demonstrated that, if the DOJ were successful in its challenge, it would diminish safety and increase fraud. This inconsistency further supports the need for sanctions to ensure the DOJ is more careful & presents a coherent argument in future cases.

57. The DOJ's actions in this case reflect a deliberate attempt to bypass the legislative process by challenging Georgia Senate Bill 202's provisions through litigation rather than advocating for legislative change. As legal professionals, DOJ attorneys are aware of the importance of following appropriate legal

16

channels, yet they are pursuing contradictory arguments to push their agenda. For example, the DOJ claims that fining organizations harms marginalized groups, while simultaneously supporting fines against churches, a protected group Mr. Rose is a part of. This contradiction reveals a lack of merit in their claims and constitutes a misuse of federal resources. As such bad faith litigation undermines the integrity of the legal process and contravenes established legal principles. Legal precedents support sanctions for claims lacking merit, and in this case, the DOJ's conduct warrants a judicial review and the imposition of sanctions to uphold the proper use of federal resources and ensure the integrity of the DOJ & electoral process.

58.    I, Sai Rose, prepared this Motion to Intervene and Request for Sanctions without the assistance of any attorneys. It took well over 80 hours for Mr. Rose to draft this document, including the legal arguments & supporting evidence. This effort demonstrates his capability to represent himself effectively in court and handle legal matters independently. In respect for the court, limited to 25 pages.

59.    Given these points, Sai Rose's request to intervene and represent himself should be granted. He is the most qualified party to address these issues effectively and to ensure that the legal proceedings are conducted in a manner that upholds the integrity of the electoral process for all voters. His involvement in this case is motivated by a genuine concern for the integrity of the electoral

17

process and the protection of everyone's voting rights. He has shown that he is not aligned with any political party or agenda, but rather seeks to ensure that the legal process addresses the core issues in a fair and just manner for all.

60. The DOJ's filing from July 8th indicates that they need more time, but Mr. Rose does not require any additional filings to proceed. Mr. Rose's case is prepared, and is ready to present his arguments and evidence to the Court. Mr. Rose feels he has shown the court that his representation and interests are for all American's under God including this judge, not just his own interests.

## REQUEST FOR SANCTIONS

61. IATSE clearly knew that 'applying for absentee ballots' is not protected under Section 202 of the Voting Rights Act, by the extent of their arguments. This Court is not the appropriate venue for addressing their grievances. Consequently, Sai Rose requests that the Court impose sanctions on IATSE and their attorneys in the amount of $20,000, or an amount the Court deems appropriate. This sanction aims to deter others from bringing similarly meritless cases in the future. Which there are many now.

62. In light of the DOJ's severe misconduct, abuse of the judicial process, discriminatory actions, having a personal agenda, appearing not to have any merit to their claims, over reaching their judicial authority. I respectfully

18

request that the Court consider imposing sanctions on the DOJ attorneys personally or the DOJ in the amount of $50,000, or an amount the Court deems appropriate. Inconsistent stance on the distribution of absentee ballot applications, especially their targeting of religious organizations that has offended Mr. Rose and makes him fear for his religious rights in the future actions of the DOJ, warrants judicial scrutiny and appropriate penalties to ensure fairness and uphold the integrity of the legal process in the future.

63. Their actions demonstrate a clear intent to evade accountability and manipulate legal arguments. Holding these attorneys personally liable is essential for ensuring justice and upholding ethical standards in the legal profession in future cases. This measure will be more cost-effective than the continued waste of taxpayer resources due to their misconduct. The American taxpayers shouldn't foot the bill for what appears to be a DOJ personal agenda.

64. It appears the DOJ did not prepare this case to defend and protect American taxpayers; this shows a personal agenda by the DOJ staff. It is important to note that there are good men and women at the DOJ, but the department is run in a manner akin to Hollywood, where they are not allowed to speak about certain matters or show they are Republican conservatives. It is very strange that they run in unison, as if they were directed by the same party, often showing bias.

65. Furthermore, the DOJ's actions highlight a fundamental disregard for the recent overturning of the Chevron doctrine, which underscores the necessity for federal agencies to adhere strictly to legislative intent rather than broad, self-serving interpretations. Their behavior in this case exemplifies why the Chevron doctrine needed to be overturned, as it enabled such overreach and misapplication of authority. Thus, imposing sanctions would not only address the immediate issues but also reinforce the importance of these legal standards moving forward. The DOJ and other federal agencies are giving the appearance to the entire country, that they are in support of an agenda, based on the facts and evidence we see as a country each news cycle.

66. Mr. Rose has spent well over 80 hours preparing this motion, working it down to 25 pages for the courts convenience, contacting the other parties, printing & completing service. It took a long time to figure out all the accompanying documents, making many mistakes to correct. Additionally, Mr. Rose has further work to complete both in and out of court thereafter. Beyond seeking sanctions for improper conduct, this request also addresses the significant time Mr. Rose has invested in this case, reflecting his 15 years of legal experience. Mr. Rose only learned about the 202 Act and Georgia laws on July 11 2024 (EXHIBIT B), so all the Plaintiffs could have done a better job at researching their case if it was meant to be both sincere and legitimate.

67. This request is consistent with the ongoing case 1:23-cv-4929, where the DOJ and plaintiffs have presented arguments that lack merit and misinterpret the Voting Rights Act, resulting in an unnecessary burden on the courts and misuse of taxpayer dollars. This decision has the ability to end other cases.

68. In 2023 the DOJ challenged Georgia law as discriminating against 'Black People', exactly what the DOJ is doing here. The judge ruled against the DOJ.

69. This reveals the DOJ has a personal agenda and is attacking Georgia lawmakers through the court, knowingly filing without any merit. It may be accurate to say we could find more instances of abuse like this by the DOJ.

70. With the vexatious behavior of the DOJ attorneys, sanctions are necessary.

71. In support of sanctions are Rule 11 of the Federal Rules of Civil Procedures and Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980). Sanctions ensures everyone acts more responsibly going forward. A judge can further justify imposing sanctions if they will have a broader impact. The sanctions awarded by the Court should be ordered to be paid by the Plaintiffs within seven (7) days from the date they are served with the Court's order.

72. Anything additionally filed without merit should warrant sanctions.

## CONCLUSION

73. The overturning of the Chevron doctrine fundamentally alters the landscape of federal agency influence, requiring rigorous judicial scrutiny of

21

federal agencies in future cases. This shift promotes fairness, accountability, and a balanced application of federal law, safeguarding state sovereignty and preventing federal overreach. In the context of Georgia Senate Bill 202, this heightened judicial scrutiny ensures that state legislative choices are respected unless they clearly violate federal law, fostering a more equitable and just legal framework.

74. The court should acknowledge these limitations and issue an order to notify the DOJ of its dismissed from the case, of its reduced authority and mandate all DOJ attorneys/staff undergo training to ensure they understand the implications of the Chevron doctrine's overturning and adhere strictly to the textual and legislative intent of the laws they are charged with enforcing. Rather than something ineffective like word of mouth or a memo. It will prevent future misinterpretations of federal statutes, uphold the principles of lawful and effective enforcement. Reeducation of DOJ attorneys will be far more cost-effective than the expenses incurred from numerous mistaken filings like this one, which will collectively cost taxpayers much more in just a few cases. What are the total billable hours incurred for this case, hours to come if I didn't get involved & current similar cases, compared to reeducation? Reeducation will also help in the field when the DOJ is enforcing the law.

75.   Under **O.C.G.A. § 21-2-384**, Georgia has established clear procedures for applying for an absentee ballot, which include deadlines that are designed to ensure election integrity, efficiency and reduce the growing fraud. The state's authority to regulate these procedures is well-supported by the **Tenth Amendment** and affirmed by the Supreme Court in **Timmons v. Twin Cities Area New Party**, which recognizes that states have broad powers to manage elections, especially for election safety in applying for absentee ballots.

76.   For the foregoing reasons, Sai Rose respectfully requests that this Court grant the Motion to Intervene, impose sanctions as requested, and allow Sai Rose to participate in the proceedings to protect his and his fellow Americans voting rights and ensure that changes to absentee ballot and other procedures are made through appropriate legislative processes.

Under the penalty of perjury, I declare that the facts alleged therein are true and correct to the best of my knowledge and belief.

Respectfully submitted,

Date: 7-27-2024

Sai Rose
1629 Chanterelle Dr. A
Mckinleyville, CA 95519

23

EXHIBIT A – CJP Letter
EXHIBIT B – DOJ Article, Epoch Times
EXHIBIT C – Absentee Ballot Fraud Article, Epoch Times



State of California
Commission on Judicial Performance
455 Golden Gate Avenue, Suite 14400
San Francisco, CA 94102-3660
(415) 557-1200
Fax (415) 557-1266
Website  http //cjp ca gov

May 30, 2024

Sai Stephen Rose
1629 Chanterelle Drive, Unit A
McKinleyville, CA  95519

Dear Sai Rose:

I am writing to inform you about the commission's action following your letter of complaint received January 22, 2019. On May 28, 2024, the commission issued a public censure and bar, a copy of which is enclosed.

The commission has asked me to express its appreciation for your advising us about this matter. Bringing this to our attention has served a useful purpose. Thank you for taking the time to write.

Very truly yours,

Jessica Tankersley
Staff Counsel

JT:ams/L053024Rose

Enclosure

Confidential under California Constitution, Article VI, Section 18, and Commission Rule 102

EXHIBIT A

The Department of Justice (DOJ) confirmed on July 8 that it will intervene in a lawsuit that challenges a Georgia state deadline for absentee ballot applications and whether it is illegal under the Voting Rights Act.

In 2023, a group of theater workers challenged a provision of Georgia state law SB 202, which was passed in 2021 and requires a voter to apply for an absentee ballot 11 days before a presidential election. Their lawsuit argues that Section 202 of the Voting Rights Act mandates that voters be able to cast ballots in presidential elections if they applied seven days before an election, arguing that the Georgia law violates federal law, and requests that a court block the law's enforcement.

EXHIBIT B

CONNECTICUT—A Bridgeport city councilman and a Democratic Party operative were criminally charged on June 11 for allegedly unlawfully possessing another person's absentee ballot.

Alfredo Castillo, 52, who represents Bridgeport City Council's 136th District, and Bridgeport Democratic Party Vice Chairwoman Wanda Geter-Pataky, 67, were arrested this week following allegations they mishandled absentee ballots in the 2019 Democratic Party mayoral primary.

"Integrity of our voting process is vital to our democracy," Chief State's Attorney Patrick Griffin said in a statement.

EXHIBIT C