# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| INTERNATIONAL ALLIANCE OF THEATER STAGE EMPLOYEES LOCAL 927,<br><br>    Plaintiff,<br> v.<br><br>SHERRI ALLEN, AARON V. JOHNSON, MICHAEL HEEKIN, TERESA K. CRAWFORD, and JULIE ADAMS in their official capacities as members of the Fulton County Registration and Elections Board,<br><br>    Defendants. | Case No. 1:23-cv-04929-JPB |

**MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

On July 31, 2024, this Court denied Plaintiff International Alliance of Theatrical Stage Employees Local 927's ("IATSE") motion for a preliminary injunction on two grounds: first, the Court found that IATSE had "failed to clearly establish that it is substantially likely to show [associational] standing" based on the germaneness requirement, Order Denying Plaintiffs Motion for Preliminary Injunction at 5–13, ECF No. 106 ("Order"); second, the Court found that the *Purcell* doctrine bars relief, *id.* at 14-17.

IATSE respectfully asks this Court to reconsider both conclusions, because neither is consistent with governing precedent. IATSE exceeds the standards in this circuit and other courts for establishing germaneness because the organization's primary purpose is to ensure the "just treatment of all its members," particularly when engaged in the work that forms the basis of their membership in IATSE. Critical to this mission are efforts to engage its members in the political process. And the evidence submitted shows that the challenged absentee ballot application deadline affects IATSE's traveling members precisely *because* of the work they obtained through the organization. Moreover, because the only Defendants from whom IATSE seeks relief stated that they had adequate time to administer the requested changes, under Supreme Court precedent *Purcell* does not apply.

# ARGUMENT

**I.      This litigation is germane to IATSE's purpose of protecting the rights of its traveling members who vote absentee because of their work.**

As this Court recognized, "the germaneness requirement is undemanding and requires mere pertinence between the litigation at issue and the organization's purpose." Order at 6 (quoting *Schalamar Creek Mobile Homeowner's Ass'n, Inc. v. Adler*, 855 F. App'x 546 (11th Cir. 2021)). There does not need to be a "substantial overlap" between the legal issue and the organization's interests, and the issue need not be "central" to the organization's purpose; a "connection" is enough. *Humane Soc. of the U.S. v. Hodel*, 840 F.2d 45, 56-57 (D.C. Cir. 1988). The standard is so forgiving that the Eleventh Circuit has only once found that an association lacked standing because it could not establish germaneness—and that was more than 20 years ago. *See Schalamar Creek*, 855 F. App'x at 553 (discussing *White's Place, Inc. v. Glover*, 222 F.3d 1327, 1328 (11th Cir. 2000)). Here, there is more than a sufficient connection between this litigation and IATSE's core purpose of ensuring the "just treatment" of its members who are traveling on assignment, Am. Compl. ¶ 13, ECF No. 62, and ensuring that those members can cast votes for candidates and measures that advance the physical, social, and economic wellbeing of theater stage workers, Decl. of Allan Herman ¶ 5, ECF No. 83–3.

When assessing the germaneness requirement, this Court focused on whether "one of Plaintiff's purposes is to protect its members' voting rights" in the abstract

3

rather than on the specific subject matter of this action. Order at 9-10; *see also id.* at 10 (finding no "evidence that any part of Plaintiff's mission is related to enforcing the voting rights of its members"). But IATSE through this litigation does not simply seek to protect its members' voting rights as a general matter; this is not, for example, a challenge to a voter identification requirement. Instead, IATSE specifically seeks to protect its members' statutory right to sufficient time to apply for an absentee ballot *while traveling for work*. Mem. of Law in Supp. of Pl.'s Mot. for Prelim. Inj. at 20, ECF No. 83-1. As evidenced in the IATSE members' declarations, the need to cast an absentee ballot arises directly from the work that is the basis for their IATSE membership, and Georgia's early deadline imposes costs upon IATSE's members due to the particular demands of their profession. Decl. of Allan Herman at ¶¶ 9–19, ECF No. 83–3; Decl. of Kelsey Bailey at ¶¶ 4–9, ECF No. 83–4; Decl. of Justin Michel at ¶¶ 4–11, ECF No. 83–5; Decl. of Justin Gamerl at ¶¶ 4–10, ECF No. 83–6. In sum, members joined the organization to vindicate their work-related rights and to ensure "just treatment" when engaged in their work. Am. Compl. ¶ 13, ECF No. 62. This litigation does just that.

The Court also observed that IATSE's members may not have specifically "joined to protect their voting rights," Order at 11, but courts have not required an exact match between the purpose of the organization and the interests advanced through litigation. In *Schalamar Creek Mobile Homeowner's Association v. Adler*,

4

a homeowner's association sued the owners and operators of a mobile home park, alleging that some of the common areas of the park were not accessible to disabled residents in violation of the Americans with Disabilities Act. 855 Fed. App'x at 548. Applying similar reasoning to this Court, the district court there found that enforcement of the Americans with Disabilities Act was not germane to the HOA's purpose because the organization "is not a disability advocacy group." *Id.* at 553. The Eleventh Circuit disagreed, recognizing that "the district court's understanding of what is germane was too limited." *Id.* at 553. Emphasizing the "undemanding" nature of the germaneness requirement, the Eleventh Circuit looked more broadly to the HOA's purpose, concluding that the germaneness requirement was satisfied because the HOA's members had "an interest in making sure that the clubhouse is accessible." *Id.* Likewise, IATSE has an interest in ensuring its members have access to the franchise while traveling for work, so that they may exercise their right to vote and collectively support candidates and policies that are critical to protecting members' pay, benefits, and workplace safety. Decl. of Allan Herman ¶ 6, ECF No. 83-3.

Other courts have adopted a similar approach to the germaneness inquiry. In *Building & Construction Trades Council of Buffalo, New York & Vicinity v. Downtown Development, Inc.*, a trade union sued various defendants alleging violations of environmental laws. 448 F.3d 138 (2d Cir. 2006). The district court

5

found that the germaneness requirement was not met, because "as a labor organization, the Council was not established for the purpose of enforcing environmental laws." *Id.* at 147. The Second Circuit rejected that finding. Rather than seeking specific expertise in environmental law, the Second Circuit explained that it was enough that the lawsuit, if successful, would result in safer working conditions for the union's members, consistent with its purposes of "improv[ing] working conditions and the occupational safety and health of its members." *Id.* at 149. Here, too, IATSE's success in this suit will protect its members' right to vote absentee when traveling for work, consistent with its purpose to ensure "just treatment of all members" and support aligned candidates and measures that will advance the members' physical, social, and economic wellbeing.

The Eleventh Circuit has only once found a wholesale mismatch between an organization's interests and the claim it asserted—and there, the legal challenge and the organization's purpose had no relationship at all. *See White's Place, Inc. v. Glover*, 222 F.3d at 1328. At issue in *White's Place* was a local ordinance that made it a misdemeanor to "resist or oppose a police officer" who was discharging his duties. *See id*. The plaintiff was a strip club and its primary purpose was to "present erotic dancing for profit." *Id*. at 1330. But erotic dancing bore no relationship to the restricted activity: verbally opposing police officers. *Id*. And there was no suggestion that the "normal conduct of the [organization's] affairs [would] involve

6

opposition to police officers." *Id.* at 1329–1330. Under those circumstances, the organization could not maintain suit. Here, by contrast, the infringement on the voting rights of IATSE's members directly flows from their membership. IATSE's responsibility to protect the rights of traveling members arises from one of IATSE's most basic functions—connecting members to work, much of which takes place in distant locations and demands long, unpredictable hours. Allowing members to be deprived of voting rights solely *because* of their attendance at work would be a dereliction of the union's purpose and an abandonment of those members' interests.

The other cases cited in the Order provide little support for the conclusion that this litigation is not germane to IATSE's purposes. In *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S.D.A.*, 415 F.3d 1078 (9th Cir. 2005), the Ninth Circuit's germaneness finding was limited to a single issue—the cattle association's assertion of a procedural claim under the National Environmental Policy Act. *See* 415 F.3d at 1104 ("We therefore hold that R-CALF lacks standing *to bring a NEPA challenge* to the Final Rule." (emphasis added)). While NEPA claims must allege "injury to the physical environment," the cattle organization merely alleged that its members would "be adversely affected by the increased risk of disease they face when Canadian beef enters the U.S. meat supply." *Id.* at 1103. The court concluded that this claimed interest had "no connection to the physical environment; rather, it is solely a matter of human health." *Id.* But the court

7

did *not* extend this reasoning to the association's Administrative Procedure Act and Regulatory Flexibility Act claims. *Id.* at 1093-1102. It simply found that the organization lacked standing to challenge the regulation on grounds that it would injure the physical environment when the complaint contained no allegations whatsoever that the organization had any purpose related to the preservation of the physical environment. *See id.* at 1103–1104.

Meanwhile, the cursory analysis in *Minnesota Federation of Teachers v. Randall*, 891 F.2d 1354 (8th Cir. 1989), is far afield from this case. There, a teachers' union challenged a law that allowed the diversion of taxpayer funds away from public schools and to private schools. *Id.* at 1358. The court found that the union did not have standing to represent its "members' interests in the use of their tax money to support sectarian schools," because "taxpayer interests" were not germane to the union. *Id.* at 1359. IATSE here does not assert injuries on its members' behalf as taxpayers or members of the general public; it asserts injuries arising directly from its members' work. The Eight Circuit's taxpayer standing determination therefore is irrelevant. And the court simply ignored the teachers' union's asserted interest in preventing deterioration in the teacher's working conditions, potential terminations, and reductions in compensation. *Id.* at 1365 (Heaney, S.J., dissenting). The majority provided no explanation whatsoever for why these injuries did not satisfy the germaneness requirement; clearly, the working conditions and compensation of

8

teachers are germane to a teachers' union. Notably, in the 35 years since this decision, the Eighth Circuit has never cited *Minnesota Federation of Teachers* to support a finding that an organization lacked associational standing.

Just like the HOA in *Schalamar* and the Council in *Building and Construction Trades Council of Buffalo*, IATSE's lawsuit advances the work-related interests of its members and thus satisfies the germaneness requirement. And IATSE's interest in ensuring that its members can travel *for work* without sacrificing their voting rights due to a discrete provision of state law is particularly pertinent because IATSE's normal activities include advocating for candidates and policies that promote workers' rights and educating members about the importance of voting to achieve these goals. Decl. of Allan Herman at ¶ 7, ECF No. 83-3. Respectfully, this Court should reconsider its finding that this litigation is not germane to IATSE's organizational purpose.

## II. *Purcell* does not apply where the defendant represented that it has sufficient time to implement the requested relief.

As the Court acknowledged, Defendants previously represented to the parties in this case that a ruling by August 2024 would be "ideal" in order to implement relief. *See* Order at 16 n.15; Mem. of Law in Supp. of Pl.'s Mot. for Prelim. Inj. at 15, ECF No. 83-1. Thus, applying *Purcell* under these circumstances is contrary to Supreme Court and Eleventh Circuit case law. In *Rose v. Raffensperger*, the Supreme Court observed that when a defendant makes "representations to the

district court that the schedule on which the district court proceeded was sufficient to enable effectual relief," then the court must apply "the traditional stay factors" and not *Purcell.* 143 S. Ct. 58, 59 (2022). On remand, the Eleventh Circuit acknowledged the Supreme Court's determination that the circuit "erred in failing to analyze the request under the traditional stay factors" and instead applied *Purcell.* *Rose v. Sec'y, State of Georgia*, 87 F.4th 469, 478 (11th Cir. 2023), *cert. denied sub nom. Rose v. Raffensperger*, No. 23-1060, 2024 WL 3089563 (U.S. June 24, 2024); *see also Jacksonville Branch of NAACP v. City of Jacksonville*, No. 22-13544, 2022 WL 16754389, at *2 (11th Cir. Nov. 7, 2022) ("Given Appellants' position that the election can be conducted on the schedule they made collaboratively with the district court and Appellees, we do not believe *Purcell* applies here.").

Here, IATSE submitted its motion for a preliminary injunction on April 30, 2024, several months before the date Defendants represented would be "ideal" for administrative purposes. ECF No. 83-7. Under the circumstances, this Court's *Purcell* analysis was inapplicable. And although the August 1 date now has passed, sufficient time remains to implement relief; the absentee application window will not open until August 19, and the close of that period, which is the date implicated by the relief, remains months away.

**III.    *Purcell* does not bar relief in this case because IATSE seeks only enforcement of federal requirements in a manner that is already required by existing Georgia law.**

*Purcell* also does not foreclose relief because this action satisfies the *Merrill* factors—and, in light of the points made above, this Court should reassess its finding to the contrary. *See Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022). The four relevant factors are: (1) whether "the underlying merits are entirely clearcut in favor of the plaintiff;" (2) whether "the plaintiff would suffer irreparable harm absent the injunction;" (3) whether the "plaintiff has [] unduly delayed bringing the complaint to court;" and (4) whether "the changes in question are at least feasible before the election without significant cost, confusion, or hardship." Order at 15 (quoting *Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring)). The Court addressed only the first and third factors, finding neither satisfied. Properly considered, however, the *Merrill* factors show that *Purcell* does not bar relief.

With respect to the first factor, the only basis on which this Court determined that the merits are not clearcut was its conclusion that IATSE had not demonstrated standing. *See* Order at 16. For the reasons discussed above, that determination is inconsistent with precedent. On the actual merits themselves, the entitlement to relief is clear: Georgia's 11-day deadline plainly does not comply with Section 202 of the Voting Rights Act. *See* Mem. of Law in Supp. of Pl.'s Mot. for Prelim. Inj., ECF No. 83-1.

11

With respect to the second factor, IATSE respectfully refers this Court to its prior briefing. *See id.* at 13–15. Plainly put, in the absence of an injunction, IATSE's members will be deprived of time to apply for an absentee ballot that is guaranteed to them by federal law.

As for the third factor, IATSE did not unduly delay in bringing its complaint. Although S.B. 202 was passed in March 2021, the relief provided by Section 202 of the Voting Rights Act applies only to presidential elections; a challenge at that point very well may not have been ripe. Instead, this action was brought in October 2023, more than a year before the 2024 presidential election. After Defendants moved to dismiss, the predecessor court ordered Defendants to provide information regarding implementation timeframes. Defendants represented that a decision rendered by August 1, 2024 would be "ideal." ECF No. 83-7. With the motion to dismiss still pending and the case consequently on hold, IATSE moved for preliminary relief more than three months before the date provided—and more than seven months before Georgia's 11-day deadline.

As this Court has noted, defendants in election cases have argued that "irreparable harm would not be shown for an election so far in advance" when plaintiffs seek a preliminary injunction well before election day. *In re Georgia Senate Bill 202*, 688 F. Supp. 3d 1300, 1318 n.18 (N.D. Ga. 2023). In this case, rather than file for an injunction in the year prior to the election, IATSE relied on

Defendants' representations and filed more than three months before the date by which Defendants themselves stated a resolution would be ideal. Moreover, as this Court has noted, undue delay "militates against" preliminary injunctive relief; it does not preclude it entirely—a court must still weigh that against the remaining equitable factors. *Id* at 1318.

Finally, regarding the fourth factor, the changes in question are feasible before the election (and were even more clearly feasible at the time the motion for preliminary injunction was filed). Although the Court noted concerns about "late-in-the-day judicial alterations to state election laws," Order at 16 n.15, to extend this principle to activities which even Defendants deem feasible sets the bar impossibly low—particularly where the changes sought are relatively minor.

Here, both Georgia and federal law already require the state to provide a president-only voting process. O.C.G.A. 21-2-216(e) (providing in-person or absentee presidential-only voting for any voter who moves from Georgia within 30 days before the election); 52 U.S.C. § 10502(e) (requiring that anyone qualified to vote who has moved to a new state within 30 days before an election be allowed to cast a presidential-only vote in-person or by absentee ballot in the state from which they moved). The only change necessary is that applications would be accepted up to seven days before the election. In other words, there are few if any *additional*

13

burdens beyond those already established by Georgia law that would be imposed were the Court to grant relief.

## CONCLUSION

This Court should reconsider its decision denying IATSE's motion for a preliminary injunction because absentee voting is germane to IATSE's central goal of protecting members' work-related rights and the only Defendants from whom relief is sought indicated that they had adequate time to administer that relief. For the reasons stated in Plaintiff's motion, ECF No. 83, this Court should grant the requested preliminary injunction.

Dated: August 9, 2024

Respectfully submitted,

Adam M. Sparks
Georgia Bar No. 341578
Anré D. Washington
Georgia Bar No. 351623
KREVOLIN & HORST, LLC
1201 W. Peachtree St., NW
3250 One Atlantic Center
Atlanta, GA 30309
Tel: (404) 888-9700
Fax: (404) 888-9577
sparks@khlawfirm.com
washington@khlawfirm.com

/s/ Uzoma N. Nkwonta
Uzoma N. Nkwonta*
Justin Baxenberg*
William K. Hancock*
Marcos Mocine-McQueen*
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Ste 400
Washington, D.C. 20001
Tel: (202) 968-4490
Fax: (202) 968-4498
unkwonta@elias.law
jbaxenberg@elias.law
whancock@elias.law
mmcqueen@elias.law

*Counsel for Plaintiff*

*Admitted *Pro Hac Vice*

## CERTIFICATE OF COMPLIANCE

  I hereby certify that this document complies with Local Rule 5.1(C) because it is prepared in Times New Roman font at size 14.


Dated: August 9, 2024            */s/ Uzoma N. Nkwonta*
                      *Counsel for Plaintiff*