UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

INTERNATIONAL ALLIANCE OF
THEATER STAGE EMPLOYEES
LOCAL 927,

    Plaintiff,

  v.

JOHN FERVIER, et al.,

    Defendants.

CIVIL ACTION NO.:
1:23-CV-04929-JPB

## ORDER

This matter is before the Court on the Republican National Committee and the Georgia Republican Party, Inc.'s ("Intervenors") Motion to Dismiss Amended Complaint [Doc. 66]. This Court finds as follows:

## BACKGROUND

International Alliance of Theater Stage Employees Local 927 ("Plaintiff") is a labor union comprised of approximately 190 members who work behind the scenes at live theater and television productions throughout Georgia and the United States. [Doc. 62, p. 5]. In their work, these members build sets and operate advanced computerized sound and lighting technology. Id.

Plaintiff alleges that it is "dedicated to protecting the dignity and both the financial and physical well-being of its members." Id.  To accomplish this mission, Plaintiff contends that it "advocat[es] for safe working conditions, fair wages, and [the] just treatment of all its members." Id.  Plaintiff also negotiates contracts on behalf of its members and advocates for the "election of candidates at all levels of government who support both the rights of workers and the cultural traditions and institutions that have brought Atlanta international renown." Id. at 5–6.

Plaintiff brought this case against State Defendants[1] and County Defendants[2] on October 26, 2023.  [Doc. 1].  Plaintiff filed an Amended Complaint for Declaratory and Injunctive Relief ("Amended Complaint") on January 29, 2024.  [Doc. 62].  In the Amended Complaint, Plaintiff alleges that its members must frequently "travel around and outside of Georgia, often on short notice" because of their jobs.  Id. at 3.  Plaintiff thus contends that "[i]t is a virtual certainty that [its

---

[1] State Defendants include John Fervier, Edward Lindsey, Janice W. Johnston, Sara Tindall Ghazal and Rick Jeffares.  These defendants are members of the Georgia State Election Board and were sued in their official capacities.  The Court dismissed State Defendants from this action on June 13, 2024.  [Doc. 97].

[2] County Defendants are Patrise Perkins-Hooker, Aaron V. Johnson, Michael Heekin and Teresa K. Crawford.  County Defendants are members of the Fulton County Registration and Election Board.

members] will be called on to work outside of their voting jurisdiction during . . . election[s], as evidenced by the fact that in every year dating back to at least 2016 . . . members have been on the road touring with productions on . . . election day." Id. at 6.

In this action, Plaintiff seeks to protect its members' voting rights by challenging the provision of Senate Bill 202 ("S.B. 202") which states that absentee ballot applications cannot be submitted earlier than seventy-eight days before the election and will not be accepted if submitted fewer than eleven days before the election. O.C.G.A. § 21-2-381(a)(1)(A). According to Plaintiff, this provision harms its members because they "will be forced to travel during the election but will not know of their need to vote absentee until shortly before election day." Id. at 3–4.

Plaintiff asserts that S.B. 202 violates section 10502(d) of the Voting Rights Act ("VRA"), which provides that:

> [E]ach State shall provide by law for the casting of absentee ballots for the choice of electors for President and Vice President, or for President and Vice President, by all duly qualified residents of such State who may be absent from their election district or unit in such State on the day such election is held and who have applied therefor not later than seven days immediately prior to such election and have returned such ballots to the appropriate election official of such State not later than the time of closing of the polls in such State on the day of such election.

3

52 U.S.C. § 10502(d).  In Plaintiff's view, S.B. 202's "premature deadline [of eleven days] threatens to make it more difficult for [its] members to vote because it restricts their legally protected opportunities to request and cast an absentee ballot."  Id. at 6.  Ultimately, Plaintiff contends that Georgia's eleven-day deadline for submitting absentee ballot applications violates the seven-day period found in the VRA.  Id. at 11.

On May 3, 2024, Intervenors filed the instant Motion to Dismiss Plaintiff's Amended Complaint.  [Doc. 66].  The motion is now ripe for review.

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts must "accept the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff."  Traylor v. P'ship Title Co., 491 F. App'x 988, 989 (11th Cir. 2012).  Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement.

Id.  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (citation omitted). At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011), a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, Iqbal, 556 U.S. at 678.

Accordingly, evaluation of a motion to dismiss requires two steps:  first, a court must eliminate any allegations in the pleading that are merely legal conclusions; and second, where there are remaining well-pleaded factual allegations, a court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## DISCUSSION

Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies."  U.S. Const. art. III, § 2.  To satisfy this case and controversy requirement, litigants must have standing. Lujan v. Defs. of

Wildlife, 504 U.S. 555, 560 (1992).  The standing doctrine requires a plaintiff to show that it:  (1) suffered an injury-in-fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable judicial decision.  Id. at 560–61.  "These three elements 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case.'"  Ga. Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. of Registration & Elections, 36 F.4th 1100, 1113 (11th Cir. 2022) (quoting Lujan, 504 U.S. at 561).

    Plaintiff in this case is a labor organization and asserts that it has associational standing.  An organization has associational standing (1) "when its members would otherwise have standing to sue in their own right"; (2) "the interests at stake are germane to the organization's purpose"; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Fla. State Conf. of NAACP v. Browning, 522 F.3d 1153,1160 (11th Cir. 2008) (quoting Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 181 (2000)).

    Intervenors did not move to dismiss Plaintiffs' Amended Complaint for lack of standing.[3]  A court, however, can *sua sponte* dismiss a case on standing grounds so long as the court provides both notice of its concern regarding the jurisdictional

---

[3] Intervenors asserted that Plaintiffs' Amended Complaint is subject to dismissal because section 10502(d) of the VRA is unconstitutional.

6

deficiency and an opportunity for the plaintiff to respond.  See Bischoff v. Osceola County, 222 F.3d 874, 878 (11th Cir. 2000) (explaining that the "federal courts are under an independent obligation to examine their own jurisdiction").  On July 31, 2024, the Court first signaled its reservations about standing when it denied Plaintiff's Motion for Preliminary Injunction.  In that order, the Court determined that Plaintiff was not substantially likely to show the second element of associational standing—*i.e.*, that the interests at stake are germane to the organization's purpose.  [Doc. 106, p. 10].[4]  Then, on October 15, 2024, the Court entered an order requiring Plaintiff to show cause as to why standing exists in this case.  [Doc. 121, p. 2].  The Court specifically instructed Plaintiff to focus on the germaneness prong.  Id.  The Court has thus provided Plaintiff with notice of its concerns about jurisdiction as well as an opportunity to respond.

As stated above, Plaintiff must demonstrate that the interests it seeks to protect are germane to the organization's purpose.  The Eleventh Circuit Court of Appeals has held that "[t]he germaneness requirement is 'undemanding' and requires 'mere pertinence' between the litigation at issue and the organization's purpose."  Schalamar Creek Mobile Homeowner's Ass'n, Inc. v. Alder, 855 F. App'x 546, 553 (11th Cir. 2021).  In conducting this inquiry, courts thus look to

---

[4] The preliminary injunction order contains analysis regarding the germaneness prong.  As such, the preliminary injunction order is fully incorporated herein.

"whether [an organization's] lawsuit would, if successful, reasonably tend to further the general interests that individual members sought to vindicate in joining the association and whether the lawsuit bears a reasonable connection to the association's knowledge and experience."  Bldg. & Const. Trades Council of Buffalo v. Downtown Dev., Inc., 448 F.3d 138, 149 (2d Cir. 2006).

While the germaneness requirement is not demanding, it exists "for 'the modest yet important' purpose of 'preventing litigious organizations from forcing the federal courts to resolve numerous issues as to which the organizations themselves enjoy little expertise and about which few of their members demonstrably care.'"  Ctr. for Sustainable Econ. v. Jewell, 779 F.3d 588, 597 (D.C. Cir. 2015).  The germaneness prong therefore "serves as a backstop" against suits where members of an organization claim a cognizable injury despite the "wholesale mismatch between litigation topics and organizational expertise."[5]

---

[5] The following are two examples of a mismatch between litigation topics and organizational expertise:  (1) a labor union challenging a school-aid program on establishment clause grounds; or (2) a civil libertarian organization challenging a trade policy on commerce clause grounds.  Humane Soc'y of the U.S. v. Hodel, 840 F.2d 45, 57 (D.C. Cir. 1988).  Another case used this illustration:  "A local PTA, for example, cannot be expected to represent its members in matters not relating to education."  Boyce v. Rizzo, 78 F.R.D. 698, 704 (E.D. Pa. 1978).  In these hypotheticals, the interests at stake are not germane to the organization's purpose.  A labor union asserting an establishment clause case or bringing claims unrelated to labor matters is similar to what has happened here.

Humane Soc'y of the U.S. v. Hodel, 840 F.2d 45, 57 (D.C. Cir. 1988).  Simply put, the germaneness prong prevents organizations from asserting claims based on injuries that have "nothing whatsoever to do with the association's area of competence or reason for existence."  Id.

In response to this Court's show cause order, Plaintiff asserts that the germaneness requirement is satisfied because its primary purpose is to ensure the "'just treatment of all its members,' particularly when engaged in the work that forms the basis of their membership."  [Doc. 122, p. 2].[6]  According to Plaintiff, "there is more than a sufficient connection between this litigation and [its] core purpose of ensuring the 'just treatment' of its members who are traveling on assignment by ensuring that those members can cast votes for candidates that advance the physical, social, and economic wellbeing of theater stage workers."

---

[6] This is not the first time that Plaintiff has addressed the germaneness requirement.  In its Motion for Preliminary Injunction, Plaintiff never claimed that the germaneness requirement was satisfied because its primary purpose was the "just treatment of all its members."  Instead, Plaintiff argued that "[i]ts core mission is to advance the interest of its members, including by supporting their participation in democracy and advocating for the election of politicians who support trade unions."  [Doc. 83-1, p. 25].  Similarly, in its Response in Opposition to State Defendants' Motion to Dismiss Amended Complaint, Plaintiff claimed "that its members' voting rights are germane to its purposes, which include 'advocating for the election of candidates at all levels of government who support both the rights of workers and the cultural traditions and institutions that have brought Atlanta international renown."  [Doc. 69, p. 22].  The Court notes that the allegations in the Amended Complaint say nothing about "participation in democracy."

9

Id. at 4 (internal citations omitted). In Plaintiff's view, the relevant question is whether the subject matter of this action—the absentee ballot deadline—bears some connection to Plaintiff's purposes. Id. Ultimately, Plaintiff contends that it has an interest in ensuring that its members have access to the elective franchise while traveling for work "so that they may exercise their right to vote and collectively support candidates and policies that are critical to protecting members' pay, benefits, and workplace safety." Id. at 6. In other words, Plaintiff claims that its

> interest in ensuring that its members can travel *for work* without sacrificing their voting rights due to a discrete provision of state law is particularly pertinent because [Plaintiff's] normal activities include advocating for candidates and policies that promote workers' rights and educating members about the importance of voting to achieve these goals.

Id. at 10.

As an initial matter, the Court cannot ignore the scarcity of the allegations in Plaintiff's Amended Complaint. Indeed, Plaintiff only alleges that its purpose or mission is advocating for safe working conditions, fair wages and the just treatment of all its members. The Amended Complaint contains no additional allegations or details describing what the just treatment of all its members means. For instance, the Amended Complaint never alleges that "just treatment" encompasses protecting those who are traveling on assignment by ensuring that

they can vote for Plaintiff's preferred candidates. It also never specifies that just treatment applies in some special way when members are engaged in the work that forms the basis of their membership. It is well settled that a plaintiff cannot amend a complaint through arguments in briefs. Miccosukee Tribe of Indians v. United States, 716 F.3d 535, 559 (11th Cir. 2013).

The Court is not persuaded that Plaintiff has standing to challenge Georgia's election laws based on the broadly stated interest of ensuring the "just treatment of all its members," which is all that is alleged here. The Court agrees with Intervenors that if this type of general interest is sufficient to satisfy the germaneness prong, "then every organization whose membership includes adult . . . citizens has standing to file the same lawsuit." [Doc. 125, p. 2]. Indeed, the "just treatment of all its members" interest is a catchall that would essentially render the germaneness requirement a nullity.[7] In sum, the Court finds that a plaintiff must do more than allege an interest at a high level of generality.[8]

---

[7] Surely Plaintiff would not have standing to assert claims challenging an abortion or a firearms law in another state by alleging in its complaint that its members might travel to those other states for work and that its mission is the just treatment of all its members. In the Court's view, these hypothetical claims would fail because Plaintiff is a labor union that represents the interests of its members as laborers in a particular industry.

[8] Plaintiff claims that Guilford College v. McAleenan, 389 F. Supp. 3d 377 (M.D.N.C. 2019), supports its standing argument. In that case, however, the plaintiff labor union pled that its mission included "supporting commonsense policies that promote immigration opportunities for individuals who wish to serve as teachers" and that one of

11

The Court recognizes that Plaintiff additionally argues that it has standing because it encourages its members to vote for candidates who support particular issues. In the Court's view, however, germaneness requires more than advocating for candidates and issues—otherwise, every organization[9] would have standing to bring claims under the VRA. In Republican National Committee v. Burgess, the Trump Campaign challenged a Nevada law that changed the deadlines for mail-in ballots. No. 3:24-cv-00198, 2024 WL 3445254, at *6 (D. Nev. July 17, 2024). Relevant here, the court found that "the purpose of the Trump Campaign—electing Donald J. Trump to public office—[was] not 'germane' to vindicating individual voting rights." Id. The court explained that while the voters may be a means through which the Trump Campaign achieves its purpose, the voters' "individual interests in their voting rights are 'wholly distinct' from the interests of the Campaign." Id. After careful consideration, this Court finds that the individual interests in voting rights that Plaintiff seeks to protect here are wholly distinct from Plaintiff's purpose, which includes advocating and supporting pro-labor

---

its purposes was "advocating for the civil rights of its members." Id. at 389. Plaintiff never pled that advocating for civil rights was one of its purposes. This case is thus not analogous.

[9] Most organizations have preferred candidates or issues that they support.

candidates. As such, the interests at stake here are not germane to Plaintiff's purpose.

In its response to the show cause order, Plaintiff argues that the "mere pertinence" standard is "so forgiving that the Eleventh Circuit has only once found that an association lacked standing because it could not establish germaneness." [Doc. 122, p. 3]. While this may be true, Plaintiff overlooks that in other voting cases, the claims are brought by voting organizations whose missions include registering voters or running vote drives. See Arcia v. Fla. Sec'y of State, 772 F.3d 1335, 1342 (11th Cir. 2014) (voting rights organizations had associational standing because the interests at stake were germane to the purposes and goals of the organizations); Greater Birmingham Ministries v. Sec'y of State for State of Ala., 992 F.3d 1299, 1316 (11th Cir. 2021) (civil rights organizations "whose purposes focus[ed] on voting rights and equal opportunity for minority voters" satisfied the germaneness requirement in suit challenging voting law); Fla. State Conf. of NAACP v. Lee, 576 F. Supp. 3d 966, 970–71 (N.D. Fla. 2021) (holding that an organization's mission whose "core purposes involve[d] registering voters, voter education, encouraging electoral participation, and advocating for accessibility for Florida" was germane to the interests at stake in a voting rights suit).

As stated above, Plaintiff seems to assert that because the Eleventh Circuit has only one published opinion concerning this issue, not enough legal authority exists to dismiss this case on standing grounds. The Court disagrees. Cases have been dismissed, in both this jurisdiction and others, for failure to satisfy the germaneness prong. In other words, organizations do not have limitless standing to challenge laws that fall outside the scope of their mission.

For example, in Idaho Farm Bureau Federation v. Babbitt, two organizations brought suit to contest a classification that four species of mollusks in the Snake River were endangered. 900 F. Supp. 1349, 1351 (D. Idaho 1995). The organizations' members were farmers and ranchers, and the organizations argued that the endangered mollusks threatened to harm their members' "aesthetic and recreational enjoyment" of their land. Id. at 1355. Problematically for the organizations, however, the organizations had only alleged that their purpose was representing "the economic, education and social interest" of their members. Id. at 1357. Indeed, the organizations failed to allege or produce any evidence that the protection of the members' aesthetic or recreational interests were germane to their organizations' purpose. Id. In granting summary judgment in favor of the defendants on germaneness grounds, the court determined that the organizations had "failed to carry their burden of establishing standing as organizations

established to represent the aesthetic/recreational interests of their members." Id. Because there were no facts in the record which would establish or indicate that the organizations represented anything more than the "economic, educational and social interests" of their members, the court found that the organizations were "not protecting an interest germane to their organizations' purpose." Id.

Medical Association of State of Alabama v. Schweiker, which was affirmed by the Eleventh Circuit, is also instructive. 554 F. Supp. 955 (M.D. Ala. 1983) aff'd, 714 F.2d 107 (11th Cir. 1983).[10] There, a medical association comprised of more than 2,000 physicians challenged a law which sought to increase the availability of and access to primary health services for residents of medically underserved areas. Id. at 957. The medical association claimed that the law was financially hurting the medical practices of its members. Id. at 958. In deciding that the medical association did not have standing, the court stated that standing requirements exist, in part, "to limit access to the federal courts to those litigants best suited to assert a particular claim." Id. at 960. Notably, the court stated:

> Members of the association joined the association because they were physicians, not because they were taxpayers. Although it is well established that an organization whose members are injured may represent those members in judicial proceedings, reason dictates that the organization may do so only when the injury to its members has some reasonable connection with the reasons the

---

[10] The Court acknowledges that this case did not use the term "germane." The analysis is nevertheless applicable.

> members joined the organization and with the objectives of the organization. This is not the case with the Alabama Medical Association to the extent that it is seeking to represent its members simply as taxpayers.

Id. at 965 (internal citations omitted).

Northeast Ohio Coalition for Homeless and Service Employees International Union, Local 1199 v. Blackwell, also provides some helpful analysis. In that case, two organizations filed suit alleging that a voter identification law was unconstitutional. 467 F.3d 999, 1002 (6th Cir. 2006). One of the organizations was a labor union. Id. Notably, that labor union alleged that it "engages in voter registration and other election activities on behalf of its members." Id. at 1010. Although decided on other grounds, the court stated that "[t]he scanty information about the plaintiff organizations in the complaint also raises substantial questions about whether the interests at stake here are germane to the organizations' purposes, which clearly are not primarily related to election or voters' rights issues."[11]

American Federation of State, County and Municipal Employees, Council 25 v. Land also involves a labor union. 583 F. Supp. 2d 840 (E.D. Mich. 2008). In that case, the labor union had over 64,000 members, and the members of the labor

---

[11] The labor union's allegations were even stronger than what is present here. Indeed, there are no allegations in this case that Plaintiff has ever helped its members register to vote or has worked with its members to overcome any perceived barriers in voting.

16

union planned to wear buttons and shirts evidencing issues of concern, support for various issues and admiration for various candidates when they went to vote in the upcoming election.  Id. at 843.  The labor union sued challenging a directive that election inspectors had the right to ask voters entering the polls to remove campaign buttons or cover up clothing bearing a campaign slogan or a candidate's name.  Id.  Particularly relevant here, the court determined that the labor union could not show associational standing because it failed to allege sufficient facts in its complaint to demonstrate that the interests at stake—the voting rights of its members—were germane to its purpose.  Id. at 844 n.3.

Turning back to the case at hand, this Court finds that Plaintiff has failed to show that the germaneness requirement is satisfied.  The Amended Complaint does not demonstrate that Plaintiff's mission or purpose is to protect its members' individual voting rights.  Completely missing from the Complaint is any allegation that any part of Plaintiff's mission is related to enforcing the voting rights of its members or evidence that Plaintiff's members joined the organization to "vindicate" their voting rights.  See Bldg. & Const. Trades Council, 448 F.3d at 149.[12]  For instance, no allegations exist that Plaintiff assists its members in

---

[12] This Court's ruling should not be construed to mean that a plaintiff must show an exact match between litigation goals and organizational purpose.  Indeed, in the Eleventh Circuit, a plaintiff need only show a mere pertinence.  That standard has not been satisfied in this case.

17

requesting absentee ballots or provides information about the absentee voting process.  Notably, nothing in the record exists which would show that the enforcement of voting rights or election law has a reasonable connection to Plaintiff's knowledge and experience, which appears to be limited to advocating for better pay and working conditions.  Moreover, Plaintiff's specific goal in this litigation—to ensure the voting rights of its members under the VRA—is not pertinent to its stated purposes of advocating for safe working conditions, fair wages or pro-labor candidates.  In short, Plaintiff is a labor union and not a voting organization.  It represents the interests of its members as laborers in a particular industry and not as voters in the State of Georgia.  As such, the Court finds that this case presents a "wholesale mismatch" between the litigation topic and Plaintiff's organizational expertise.  See Humane Soc'y, 840 F.2d at 57.

As stated previously, the pleadings do not show that Plaintiff's mission—or even part of Plaintiff's mission—is pertinent to the enforcement of its members' voting rights.  Cf. Greater Birmingham Ministries v. Sec'y of State for Ala., 992 F.3d 1299, 1316 (11th Cir. 2021) (holding that the germaneness requirement was satisfied in a voting case because the organizations' purposes focused on voter rights and equal opportunity for minority voters).  As such, Plaintiff has failed to demonstrate that the interests it seeks to vindicate here (voting rights) bear a

reasonable connection to its knowledge and experience (workers' rights) or that election law is germane to its organizational purpose.  Consequently, the Court finds that Plaintiff has failed to demonstrate standing.

## CONCLUSION

For the reasons stated above, this matter is **DISMISSED WITHOUT PREJUDICE** for lack of standing.[13]  Intervenors' Motion to Dismiss [Doc. 66] is thus **DENIED** as moot.  The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 7th day of March, 2025.

_____
J. P. BOULEE
United States District Judge

---

[13] A dismissal for lack of standing is without prejudice.  Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1232 (11th Cir. 2008).